Sean Simpson, Esq. (SBN: 145514)
Jayme Simpson, Esq. (SBN: 290595)
Rich Mackie, Esq. (SBN: 314196)
**SIMPSON LAW GROUP, LLP**
*The Historic "Spreckels" Building*
121 Broadway, Sixth Floor
San Diego, California 92101
Telephone: (619) 236-9696
Facsimile: (619) 236-9697

Attorneys for Plaintiff LA JOLLA SPA MD, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA JOLLA SPA MD, INC., a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AVIDAS PHARMACEUTICALS, LLC, a limited liability company, and DOES 1 through 10 inclusive,<br><br>Defendants. | CASE NO. 3:17-cv-01124-MMA-WVG<br><br>**PLAINTIFF' SECOND AMENDED COMPLAINT**<br><br>The Hon. Michael M. Anello |

COMES NOW Plaintiff, LA JOLLA SPA MD, INC., ("Plaintiff") and for causes of action against defendants, and each of them, complain and allege as follows:

## CERTIFICATION OF PROPER VENUE

Plaintiff certifies that the United States District Court, Southern District of California is the proper venue for this action by virtue of: (1) Plaintiff LA JOLLA SPA MD, INC., was a corporation incorporated, located, and licensed in San Diego County, California at the time the causes of action alleged herein took place; (2) Plaintiff's owner and key officer DIANNE YORK-GOLDMAN is a resident of San Diego County, California; (3) the contract entered into by Plaintiff and Defendant

was entered into in San Diego, California; (4) the acts and/or omissions upon which the causes of action herein alleged are based took place in the County of San Diego, California; (5) pursuant to paragraph 11(e) the contract states "this Agreement shall be construed, interpreted, administered and governed in accordance with the laws of California."

## GENERAL ALLEGATIONS

1. Plaintiff LA JOLLA SPA MD, INC., was a medical spa incorporated, created, and existing under California law, and at all times relevant in this Complaint had its primary place of business in the County of San Diego, State of California.

2. Defendants AVIDAS PHARMACEUTICALS, LLC, (hereinafter "Avidas") is a limited liability company, who on or about August 19, 2008, entered into a contract with Plaintiff. As alleged below, Plaintiff and Defendant entered into a contract for royalty payments from Defendant to Plaintiff for Defendant's sale and eventual ownership of the Vitaphenol product line, and for a license to Plaintiff's trademark, which Defendant intentionally breached. (See Exhibit "1" attached to First Amended Complaint previous filed and served: "Sales and Distribution Agreement").

3. Plaintiff is unaware of the true names and capacities of the Defendants named as DOES 1-10, and therefore sues these Defendants as fictitious parties. Plaintiff will, upon learning the true names and capacities of the DOE Defendants, seek leave to amend the Complaint so that the true names and capacities and addresses of these individuals may be added to the Complaint. At this time, Plaintiff states on information and belief that each of the fictitiously named defendants is and/or acted as the agent of the other defendants and is responsible for the occurrences herein alleged, and is liable to Plaintiff for the damages proximately caused thereby.

4. On September 29, 2008, Avidas signed a contract separate from but

related to the Sales and Distribution Agreement that is Exhibit 1 hereto, titled "Know-How and Trademark License and Purchase Agreement" (hereinafter "Contract"). The Contract (Exhibit #1) expressly provided that Plaintiff agreed to grant Avidas licenses to the "Know-How" and trademark related to Vitaphenol. The Contract further provided that Plaintiff would transfer ownership of the "know-how" and trademark for Vitaphenol to Avidas upon payment by Avidas of one million five-hundred thousand dollars, ($1,500,000) in royalty payments. After the payment of one million five-hundred thousand dollars, ($1,500,000) in royalty payments, Avidas would continue to pay Plaintiff a five percent (5%) royalty.

5. The Contract specifically provides for a royalty of eight percent (8%) on Avidas' Profit on its sales of Vitaphenol Products until the total royalty paid by Avidas shall reach one million five-hundred thousand dollars, ($1,500,000.) The Contract further provides: "In consideration of the continuing right to use the La Jolla Spa MD trademark as well as the endorsements of La Jolla Spa and/or Mitchel Goldman, MD on Vitaphenol Product labeling and/or in promotion, following payment of one million five-hundred thousand dollars, ($1,500,000.) in royalties as provided above, Avidas shall discontinue paying an eight percent (8%) royalty and agrees to pay a royalty of five percent (5%) of Avidas's Profit on Vitaphenol Products, calculated as above, on all subsequent sales of each Products. In the event Avidas subsequently transfers ownership of, or licenses, the Know-How and Vitaphenol trademark to a third party, Avidas agrees to obligate the purchaser or licensee to continue paying such five percent (5%) royalty."

6. The provision titled "Cooperation" in the Contract states: "a. Following execution of this Agreement, Mitchel Goldman agrees to cooperate with Avidas as reasonably requested to provide Avidas with all the relevant information relating to the Vitaphenol Products. Mitchel Goldman agrees to cooperate with Avidas as reasonably requested to facilitate Avidas' development of its business utilizing the Know-How and Vitaphenol trademark. Compensation for Mitchel

Goldman's time for consultancy not related to this Agreement shall be provided pursuant to a consulting agreement between Mitchel Goldman and Avidas."

7.  Further, the Contract states: "During the Term of this Agreement, [plaintiff] agrees to promptly furnish Avidas all additional information and data York-Goldman may develop or acquire relating to the Know-How, processes for making the Vitaphenol Products, and their use, including all information in the nature of improvement of modification to the Products."

8.  Mitchell Goldman and Plaintiff fully complied with the stated "cooperation" requirements.  Pursuant to the Contract, Avidas paid royalties until around mid-2014.  On May 8, 2014, Avidas wrote a letter terminating the agreement effective July 11, 2014, because of the death of the "lead person" for Vitaphenol.  Avidas indicated that it did not intend to replace the "lead person" and would instead be electing to discontinue promoting and selling Vitaphenol. Avidas' letter noted Avida's election to sell the remaining stock on hand and pay appropriate royalties.  Thereafter, additional product was sold, but the royalties were not paid.  Avidas did not return the remaining inventory pursuant to Paragraph 4 of the Sales and Distribution Agreement. Avidas was to return all unsold inventory to York-Goldman, or the unsold inventory of remaining product (SKUs) if the Agreement was terminated in respect of fewer than all products.

9.  However, Avidas continued and/or is continuing to market and sell Vitaphenol, inconsistent with Avidas' representations made in their letter of May 8, 2014 to Plaintiff and is also inconsistent with the Contract, which states that upon termination of the agreement "Avidas shall discontinue its use of the Vitaphenol trademark and the Know-How and all rights in respect of the Know-How and Vitaphenol trademark shall revert to York-Goldman."

10.  Avidas has knowingly continued exercising its licensing rights without honoring its obligation to pay royalties or return the inventory. Avidas has also intentionally deceived Plaintiff by secretly marketing and selling the

Vitaphenol product line after telling Plaintiff that Avidas was terminating its handling of the Vitaphenol product.

## FIRST CAUSE OF ACTION

### **Breach of Contract** (against all Defendants)

11. On May 8, 2014, Avidas wrote a letter terminating the Contract, effective July 11, 2014, because of the death of the "lead person" for Vitaphenol. Avidas materially breached the Contract by terminating the Contract and indicating that it did not intend to replace the "lead person" and would instead be electing to discontinue promoting and selling Vitaphenol.

12. Avidas does not deny terminating the Contract with Plaintiff on July 11, 2014 and Avidas does have an ostensibly valid reason for terminating the Contract, pursuant to the terms of the Contract. However, Avidas has done otherwise than indicated in the proffered "termination" letter in that Avidas has continued to market and sell the product.

13. Avidas materially changed its position and failed to continue performance as obligated under the Contract.

14. By changing its position, Avidas breached the Contract and deprived Plaintiff of money earned under the contract. Specific dollar amounts are known to Avidas, and cannot be alleged here with specificity here because only Avidas has knowledge and records of the amounts gained by the unlawful using of Plaintiff trademark and exactly how much Vitaphenol was unlawfully sold without Plaintiff' knowledge or royalty payment. Plaintiff seek to recover the damages resulting from Defendants' breach. Plaintiff requested an accounting in 2012. Avidas has not provided an accounting in violation of its Sales and Distribution Agreement dated August 19, 2008.

///

///

## PRAYER

WHEREFORE, Plaintiff LA JOLLA SPA MD, INC., prays for judgment as follows:

1. For compensatory damages and equitable remedies according to proof at trial, and for prejudgment and post-judgment interest thereon according to law.

2. For restitution and/or disgorgement of profits (restitutionary only).

3. For costs of suit and for such other and further relief as the court deems just and proper.

**SIMPSON LAW GROUP, LLP**

Dated: November 14, 2017        By:    __/s/ Sean Simpson_____
                                       Sean Simpson, Esq.
                                       Attorneys for Plaintiff