1                   UNITED STATES DISTRICT COURT

2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3    LA JOLLA SPA MD, INC., a        )
     corporation, et al.,            )
4                                    )   No. 17-CV-1124-MMA-WVG
              Plaintiffs,            )
5                                    )
     v.                              )   January 9, 2019
6                                    )
     AVIDAS PHARMACEUTICALS, LLC, a  )
7    limited liability company, et al.,)
                                     )
8             Defendants.            )
     _____)   San Diego, California
9

10          TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

11                     (Telephonic Conference)

12

13      BEFORE THE HONORABLE WILLIAM V. GALLO, MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23   COURT REPORTER:          AMANDA M. LeGORE
                              RDR, CRR, CRC, FCRR, CACSR
24                            U.S. District Court
                              333 West Broadway, Suite 420
25                            San Diego, CA 92101
                              amanda_legore@casd.uscourts.gov

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFFS:       JAMES RYAN
                                James Ryan, P.C.
 3                              1110 Glenville Drive, Suite 307
                                Los Angeles, CA  90035
 4                              (310)990-2889

 5


 6
      FOR THE DEFENDANTS:       JULIE CHOVANES
 7                              Chovanes Law, LLC
                                25 Springfield Avenue
 8                              Philadelphia, PA  19118
                                (267)235-4570
 9


10
                                JENNIFER McGRATH
11                              Theodora Oringher PC
                                1840 Century Park East, Suite 500
12                              Los Angeles, CA  90067
                                (310)557-2009
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Wednesday, January 9, 2019)

2

3                P R O C E E D I N G S

4

5          THE COURT:  Good morning, Counsel.  This is Bill

6    Gallo.  We are on the record.  La Jolla Spa versus Avidas

7    Pharmaceuticals, 17-CV-1124.

8          If I may have counsel state your appearance for the

9    record, please.  We'll begin with plaintiff.

10          MR. RYAN:  James Ryan for plaintiff.

11          THE COURT:  Morning.

12          And for defendant?

13          MS. McGRATH:  Good morning, your Honor.  Jennifer

14    McGrath for Avidas.

15          MS. CHOVANES:  Julie Chovanes, pro hac, for Avidas.

16          THE COURT:  Good morning.

17          MS. CHOVANES:  Good morning, your Honor.

18          THE COURT:  All right.  Let me direct a couple of my

19    opening comments to Mr. Ryan.

20          Mr. Ryan, we started this case long before you got

21    involved.  Long before any of these attorneys on the phone got

22    involved.

23          Mr. -- the La Jolla Spa was represented by counsel at

24    the outset.  And our very first interaction was on January 22nd

25    of 2018, so almost a year ago.

1        And plaintiff, at that time, was represented by -- on

2   my pre-ENE calls, represented by Sean Simpson.  And Defendant

3   Avidas was represented by Gary Brucker.  That was almost a year

4   ago.

5        And then after that, Mr. Pfund kind of got involved

6   for plaintiff.  Not kind of, but did get involved with

7   plaintiff.  Mr. Brucker is still on the case.

8        We went through a series of meetings.  Had an ENE.

9   Status calls back and forth.  There appeared to be optimism

10  that the case might even settle way back in -- in April of last

11  year -- April, May of last year.  We had, as I said, a number

12  of status calls continuing out the actual ENE.  And then

13  eventually we had our ENE in -- in February.

14       So some discovery was done.  An order was issued in

15  April of last year, setting a discovery deadline.  Fact

16  discovery deadline of June 18th.  Some discovery was propounded

17  by both sides.  I see that both sides were unhappy with the way

18  that discovery went.  But it was -- it was done.

19       There was no effort to bring to my attention any

20  discovery disputes.  And in the -- in your ex parte application

21  to amend the scheduling order, which is document No. 38, filed

22  on November the 9th, one of the -- attached was a declaration

23  signed by Mr. Pfund.  And the declaration is dated November

24  8th.

25       And in the second paragraph, Mr. Pfund declares that

1   he served discovery on defendant on May 16th.  Now, bearing in

2   mind that that was almost a full month after the -- the case

3   management conference had occurred and the scheduling order had

4   issued setting June the 19th as the -- as the deadline for fact

5   discovery.

6          So Mr. Pfund waited nearly 30 days to propound any

7   discovery and then just -- then propounded it at -- at almost

8   the very last moment, to get discovery returned to him before

9   the discovery deadline concluded, allowing 30 days for the

10  defendant to respond to any of the discovery requests.  So

11  discovery ended on June the 19th.

12         The next day, on the 20th, Ms. Chovanes, who's now,

13  apparently, pro hac viced in, who was claiming at that time

14  would be the attorney of record for Avidas, overlapping

15  Mr. Bruckner [sic], who was in the process of trying to get out

16  of representing Avidas, served some untimely responses.  So

17  they're a day late.

18         And according to Mr. Pfund's declaration there were

19  mostly objections and, for the most part, completely

20  nonresponsive.  That's a quote.  That's June 20th.

21         It wasn't until July 29th, a full five weeks later,

22  that Mr. Pfund even attempted to begin the meet-and-confer

23  process about resolving whatever issues he had with the

24  discovery.  A full five weeks later.  And he did that not by

25  picking up the phone, not by sending an e-mail, but according

1    to his declaration, he sent a letter to Mr. Bruckner and

2    Ms. Chovanes.

3           By this time, July 29th, Bruckner was out of the

4    case.  He had been allowed to withdraw by Judge Anello on July

5    the 5th.  And Ms. Chovanes wasn't even in the case.  She had

6    not filed any notice of appearance.

7           The point is, nonetheless, that Mr. Pfund, the

8    attorney for the plaintiff, waited five weeks to even begin

9    this process of trying to resolve whatever the disputes were.

10          And customarily and specifically for me and my

11   chambers rules, any disputes must be brought to the attention

12   of the Court within 30 days of the dispute arising.

13          No dispute was brought to the Court's attention

14   within 30 days, and for good reason.  Mr. Pfund waited, you

15   know, some 39 -- or 40 days before even initiating the process

16   to resolve the dispute, which is a necessary prerequisite of

17   meeting and conferring before the parties can even bring the

18   dispute to the Court's attention.

19          Now, I recognize, come July 5th, there's really no

20   attorney that Mr. Pfund could have corresponded with, talked to

21   to resolve the dispute.  Bruckner was out and Chovanes wasn't

22   in, and she wasn't in until yesterday.

23          Notwithstanding, the court, Judge Anello, having to

24   issue an OSC for Avidas -- to Avidas to get moving, to get an

25   attorney to represent them, it wasn't until November that

1    Ms. McGrath came on board.

2           Judge Anello, in his order of December 12th -- that's

3    document 49 -- denied your leave to file a third amended

4    complaint.  States -- states at page 6:

5                "The arrival of new counsel, typically does not

6                entitle parties to conduct additional discovery or

7                otherwise set aside valid and binding orders of

8                the Court, regardless of the efficacy of any new

9                strategy counsel seeks to follow."

10          So this is a long preamble, Mr. Ryan, to my next

11   question.  Why should I even allow any discovery to take place?

12          Mr. Pfund had the opportunity to do discovery.  He

13   delayed in getting it going.  Once the discovery was propounded

14   and returned -- which admittedly was a day late, he sat on his

15   hands and did nothing to either advise the Court or to

16   initiate -- expeditiously initiate the meet-and-confer process

17   with Mr. Bruckner, who was still on the case between June 20th

18   and July 5th, before Mr. Bruckner was ultimately allowed to

19   withdraw.  And at no time did Mr. Pfund notify the Court that

20   there were any disputes.

21          So why should I allow plaintiff to have a second bite

22   at the apple, after having been represented by counsel at the

23   beginning, at the outset, when discovery should have been done

24   and completed.  And now you're on board.  You came -- you came

25   on board in November.  Why should I give you and plaintiff the

1    opportunity to do all of the discovery you're requesting?

2    Which, by the way, the request that you've made to do -- to

3    propound 39 interrogatories and RFAs and conduct a host of

4    depositions, in light of the miserable past and dereliction of

5    duty by prior plaintiffs' counsel -- why should I allow any

6    discovery, let alone the excessive discovery that you're

7    seeking?

8            Okay.  That's the question.  I've teed it up for you,

9    Mr. Ryan.  Have at it, buddy.

10           MR. RYAN:  You certainly have.  Well, let me -- let

11   me try to start with a couple parts of that, and see if we can

12   come to an answer.

13           THE COURT:  Okay.  Obviously I haven't had the

14   history in the case your Honor had.  And I appreciate you

15   detailing it.  I think I do have an understanding of everything

16   that has happened, at least with what your Honor has recounted.

17   And there are a series of unfortunate events, I guess, that

18   have led us to this point.

19           Just to put things in context in terms of the

20   discovery that's sought and your Honor's comment that it's

21   excessive, I do want to indicate that in defendants' initial

22   disclosures, they identified 17 witnesses who have information

23   in this case.  And we are seeking to take eight depositions,

24   five of which overlap with the 17 people that are identified in

25   the initial disclosures.

1          So I think that in the context of what defendants
2    believe is the scope of this case, we're only seeking a narrow
3    portion of that.
4          With respect to written discovery, I recognize that
5    in terms of the timing and the delayed efforts to meet and
6    confer and serve discovery, it may be that the ability to move
7    to compel those -- initial set, it has been waived.  And to
8    that extent, I'm not sure that there was much work in seeking
9    those requests.  But that's why the additional requests for
10   interrogatories have been made.
11         And, frankly, for both interrogatories and document
12   requests, I think it's possible to narrow the scope of maybe
13   even the depositions, if I could get some information that I
14   haven't yet received, in particular documents.
15         One -- one of the documents that -- that plaintiff
16   has not seen and I don't believe any prior counsel have seen
17   was submitted in connection with defendants' opposition to the
18   motion for leave.  It was before Judge Anello.  And that is the
19   license agreement between Avidas and Sky Derma.  Obviously,
20   that's an important agreement because it appears as though
21   Avidas sublicensed all of the rights that it received to a
22   third party, and it appears as though that third party ran with
23   everything.
24         Now, that document -- document wasn't specifically
25   identified in the initial disclosures.  Maybe in the context of

1    just the general rubric of, you know, documents involving third

2    parties, which was identified in the defense initial

3    disclosures.  But these are the things that we're learning.

4    And, unfortunately, we have to learn them in the context of

5    motion practice.  But, nonetheless, it's information that's

6    been discovered, and we think that it should be pursued.

7              As far as the timing of everything and as indicated

8    in the ex parte application, you know, I think we've met the

9    standard under Rule 16 to ask for an extension of the

10   discovery.  And while the parties have attempted to put

11   together a schedule with your Honor and have apparently had

12   numerous conversations about how the case should be shaped,

13   things didn't go according to plan.

14             And whether it was Mr. Bruckner's decision to get out

15   of the case and all of the things that he put in his

16   declaration about how he wasn't receiving cooperation from his

17   client or Mr. Pfund's delay, what we have is that discovery

18   wasn't conducted.  And I don't see anything from the

19   defendants' side that said, you know, had -- had things been

20   done otherwise, you know, we would have complied with

21   everything, or we would have turned over all of the documents

22   that we identified in our initial disclosures, or any of the

23   things that we're now faced with.

24             So, you know, I -- I -- I recognize that it's beyond

25   sort of -- left with a situation of I'm trying to make the best

1    out of what has happened.

2          But I think that in terms of discovery and what's

3    allowed in discovery, I think that plaintiff should be entitled

4    to conduct the necessary discovery in order to not only support

5    its claims but also address defendants' defenses.  And if this

6    case had gone according to plan, it probably would have all

7    been done and we probably would be looking at having to call

8    regarding a trial date as opposed to discovery.  But it didn't

9    happen that way.  And I think that plaintiff should be entitled

10   to conduct the necessary discovery to be able to do that.  And

11   my hope would be to send the first round of written discovery

12   in order to narrow the focus on the depositions because

13   obviously it is expensive to fly all over the place and take

14   these depositions.

15         But when it's witnesses that are identified in

16   defendants' initial disclosures as people who have information

17   either relevant to the claims or defenses, I think that

18   plaintiff should be entitled to take those depositions in

19   advance of trial.

20         And also, as I indicated in the joint discovery plan,

21   you know, one -- one of the major issues that has popped up in

22   defendants' opposition to the motion for Judge Anello was this

23   notion that there -- all of the payments were made.  And I

24   think that that might have been something that -- that came up

25   at the ENE.  At least that's what I've been told.

1          But if it's true that $90,000 worth of payments were

2    made, then we should be entitled to see evidence that shows

3    that that actually occurred, rather than rely on an Excel

4    spreadsheet that identifies payments.  And we haven't been able

5    to conduct discovery to get behind that information.  That's

6    the first that we've seen that information, I believe, outside

7    the context of the ENE.

8          So if we're able to at least focus on that issue, for

9    example, we would be able to determine, well, were more than

10   $90,000 worth of checks cashed or were they not cashed?  My

11   client's saying that they weren't.  My client's saying that --

12   that those checks were not received.  Only about $4,000 worth

13   were received.

14         And I think that might have been -- if there's an

15   issue or a sticking point at the last ENE.  But that's

16   certainly one category that seems -- seems like the parties

17   should be able to resolve fairly easily with -- with the

18   benefit of some discovery.

19         So I don't know if that's an answer to your question

20   but that would be plaintiffs' position on the issues.

21         THE COURT:  All right.  Thank you, Mr. Ryan.

22         Ms. McGrath or Ms. Chovanes, who is going to speak

23   for Avidas in response?

24         MS. CHOVANES:  Your Honor -- your Honor, I'll speak.

25   This is Julie Chovanes.  I'm not -- I'm not quite sure what

1    Mr. Ryan's statements mean in the context of the actual facts

2    of the case.  Mr. Ryan speaks hypothetically.  Well, discovery

3    was taken.  There is no hypothetical about it.  And his clients

4    certainly know about all of these people.  They got e-mails

5    with regard to Sky Derma.  I mean, he's just speaking and

6    making stuff up, honestly.  This is a nuisance suit.

7            As we pointed out in our opposition to the motion to

8    amend the -- the -- or to their motion to -- to amend -- to

9    present a third amended complaint, as we pointed out in their

10   discovery, their responses to our discovery were complete.

11           We asked them, "Give us all of your documents in

12   support of your allegations."  I was in the case when Mr. Pfund

13   finally responded to that.  He presented ten bottles of product

14   at issue.  Not 10,000 bottles.  10 bottles, as we pointed out

15   in our motion.  All of which were authorized.

16           That was Mr. Pfund's total presentation.  No

17   websites.  Nothing.  Just ten bottles and ten things labeled as

18   invoices.  But we have no idea where these documents -- where

19   these things came from.

20           So this entire case, in the least -- and, by the way,

21   it's on the record that plaintiff had sued other people 40 to

22   41 times in San Diego and the courts.  So they had --

23           THE COURT:  What relevance -- what relevance does

24   that have to this case?  Her litigious behavior?

25           MS. CHOVANES:  Her litigious behavior has relevance

1   to malicious prosecution, which we fully believe is at issue

2   here once the case gets resolved.  But we fully understand we

3   need a favorable decision now.

4           And discovery, by their admission -- by plaintiffs'

5   admission is in sum total (indiscernible) the bottles of these,

6   which came from authorized inventory.  It's impossible for them

7   to have infringed or breached -- or breached the contract

8   (indiscernible).

9           And we pointed that out in length in our motion -- in

10  our opposition to their -- to their motion to amend.  And the

11  Court denied their motion to amend for the third time.  Now,

12  this discovery makes no sense.

13          And, by the way, your Honor, we -- we're on timely

14  discovery.  Mr. Pfund's statements in his declaration, as well

15  as Mr. Brucker's statements -- first of all, Mr. Brucker may

16  have entered into attorney-client privilege, so he couldn't

17  respond to that without possibly waiving the privilege.  So we

18  just had to leave all of that lie.  So that's with regard to

19  their declarations.

20          Now, the discovery was on time back to them.

21  Mr. Pfund -- as you pointed out -- very, you know, precisely,

22  was incredibly diligent.

23          Mr. Ryan, just now admitted we need discovery.  We

24  may have waived those nine interrogatories.  Well, because you

25  waived nine interrogatories doesn't mean we get to come back

1   with any more, much less 39, covering the same ground.

2           And as far as his statement that all of this was new

3   in the initial disclosure -- or was pointed out in the initial

4   disclosures and they have to follow up on it, well, it was also

5   pointed out in e-mails back and forth to his client and from

6   defendants through the year.

7           But the -- the plaintiff knew about Sky Derma.  The

8   plaintiff knew exactly what the arrangement is.  For him to

9   suggest right now that plaintiff didn't know that is just

10  wrong.

11          Again, if look at the facts of the case -- which as

12  your Honor pointed out, have been going on (indiscernible) for

13  nearly a year, we do agree on one thing with the plaintiff.  We

14  agree on one thing.

15          First -- and, lastly, this renewal would prejudice --

16  prejudice us immensely.

17          I mean, Mr. Ryan is pushing for a settlement.  I

18  don't know of what.  There is no website.  There are no sales.

19  There is just nothing.  They haven't produced anything.

20          To keep bothering us with discovery when they already

21  waived all those rights (indiscernible) litigation.  And we

22  will pursue that if necessary.  But I don't want to.  My client

23  isn't in the habit of suing people just because they may have

24  certain views of the world and how to use their justice system.

25  But besides that, your Honor, we do agree on one thing.  That

1   the time for dispositive motions -- and specifically we would

2   like to file a summary judgment motion based on the fact that

3   we have everything the plaintiff has produced and will produce.

4          And we have nothing to produce because there is

5   nothing here, and we would like to reopen that time period for

6   dispositive motions.

7          And, oddly enough, plaintiff disagreed with our

8   request but wants to open the time for dispositive motions

9   anyway.  But they disagree with our request to do so, which

10  makes no sense.

11         So, anyway, we would like to -- we haven't had

12  time -- we have a summary judgment motion we can file by

13  month's end.  That -- which we would submit that would be the

14  most efficient way of dealing with this.  And this discovery

15  that Mr. Ryan wants to prejudice us with this -- it's been

16  waived more than once already.  That it's taking something

17  that's not there and stuff that they -- every other

18  (indiscernible) is there.  It's simply further harassment.

19         Thank you.

20         THE COURT:  All right.  Mr. Ryan, any other comments

21  you would like to make?

22         MR. RYAN:  Yes.  Thank you, your Honor.

23         So with respect to the summary judgment motion,

24  defendant has not -- other than in the conference of this call,

25  sought leave to extend the deadlines to do that, which is what

1   I identified it by, the joint discovery plan.  If they wanted

2   to file a summary judgment motion, they could have done it at

3   any time.  Or if they wanted to ask for relief, they could have

4   done that as well.

5          But the notion that plaintiff would be required to

6   respond to a summary judgment motion without having the benefit

7   of discovery, I think, is not supported under the federal

8   rules.  I think that if they are pushing to do this, they want

9   us to be able to respond to the motion and not have the ability

10  to conduct discovery, I just think that's not permitted.

11  There's a mechanism to deal with that.

12         Then also briefly with respect to the --

13  Ms. Chovanes's statement about the ten products -- you know,

14  this case began because my client discovered the products were

15  being sold after the agreement was purportedly terminated.

16         And, yes, while I believe only ten or 15 products

17  were purchased online, that is the indication that something

18  was wrong.  And my client shouldn't be required to go out and

19  purchase every product on the market to -- to determine what

20  her damages are.  I think that in this situation that was the

21  indication that would lead my client to file a lawsuit.

22         And now, because all of the information is housed

23  with the defendant in terms of the money that was received, the

24  agreements that were made, the royalties paid if any, this is

25  why we need to conduct discovery.

```
 1          We don't otherwise have that information in our
 2   possession, as to the sales.  We don't otherwise understand
 3   why, when the agreement was terminated, why the inventory
 4   wasn't returned as required by the contract.  And that is why
 5   we are here to conduct discovery.  So I just want to address
 6   those two points, your Honor.
 7          THE COURT:  All right.  Thank you.
 8          My feeling and thoughts about this case are as
 9   follows:
10          One, that Judge Anello's denial of plaintiffs' motion
11   to file a third amended complaint is certainly not a decision
12   on the merits of the allegations that were -- that were alleged
13   in that proposed third amended complaint.  And everyone has his
14   order and can read it and interpret it for themselves.  I
15   interpret it not as a decision on the merits.
16          The -- a party has to make a decision -- a plaintiff
17   has to make a decision if a plaintiff feels that -- that it's
18   been wronged in some way and thinks they need an attorney.  And
19   they go out and hire an attorney and retain an attorney.
20          and I assume, in this case, that careful
21   consideration was made by Ms. Goldman -- or Ms. York when she
22   initially hired and retained counsel, whether it was counsel
23   that first appeared on the phone way back in January of last
24   year for a pre-ENE call, Mr. Simpson, or whether it was
25   Mr. Pfund.  She -- she made that -- that very -- I'm
```

1   assuming -- careful, deliberative decision to retain those

2   attorneys.  And then she should be more or less stuck with the

3   decisions and actions of those attorneys.  They're her agents.

4         I know Ms. York.  I've had her in a prior case, and I

5   have had her here at the ENE.  She is no -- no shrinking

6   violet.  She speaks her mind.  She asks probing questions.  She

7   is challenging.  She challenged me in the prior case and here

8   at the ENE in February of last year, and made no bones about

9   her views.  She is a strong-willed individual.  And I have got

10  to believe that when she retained Simpson and/or Mr. Pfund,

11  that she made it clear to them what she expected.  And I have

12  to also believe that she just did not say, "Here, you're

13  retained.  Let me know how it goes in the end."

14        I -- knowing her the way I do, I believe she had her

15  finger on the pulse every step of the way and was actively and

16  intimately involved in the litigation in the -- the opening

17  months back in 2018.  I have to believe that

18        And, Mr. Ryan, I'm not going to ask you for your

19  thoughts or impressions.  So I'm going to rely solely upon

20  mine.

21        And so having understood what the requirements are

22  and were back then and the deadlines that were imposed back

23  then and either choosing, or not, to spur her attorneys on to

24  get moving and to get the work done, to seek the discovery, to

25  make appropriate inquiries, to insist that the defendant

1  respond appropriately when and if they think that there was

2  unjustified objections or nonresponsive responses to the

3  discovery, she is -- is stuck with the consequences of that.

4          Discovery was open.  Discovery was closed.  No effort

5  to bring to the Court's attention any disputes was -- was

6  attempted by Mr. Pfund, nor by Mr. Bruckner, if he was unhappy

7  with the plaintiff's discovery.

8          And I'm reading the joint discovery plan.  And this

9  defendant now, Avidas, is contending that no discovery needs to

10 be done.  And I certainly understand that because, you know,

11 the plaintiff has the burden.  And if the plaintiff doesn't

12 have any evidence, then, you know, it's going to be a tough

13 uphill battle for the plaintiff.

14         I'm also very mindful of what you said, Mr. Ryan, in

15 your -- your rebuttal remarks.

16         Should the defendant Avidas file a summary judgment

17 motion under Rule 56(d), if you can't respond to that motion

18 because you don't have the discovery, you would move with Judge

19 Anello to get the discovery.

20         I don't know what Judge Anello would do.  He may say,

21 "Hey, you had your chance way back in 2018.  You blew it,

22 Mr. Ryan.  Not you personally, but prior counsel.  And, too

23 bad.  There's rules in place.  There's schedules in place to

24 get the parties moving forward, to get this -- to get the case

25 resolved and that didn't happen."

21

1        Now, that's not to say that the defendant isn't

2   without fault here.  When -- when Bruckner pulled out -- or was

3   allowed to pull out because of disagreements with Avidas's

4   principal on July the 5th, it was made clear that the

5   corporation couldn't represent itself and needed an attorney,

6   and it took four months and the threat of a sanction for Avidas

7   finally to retain and have counsel, make an appearance.  And

8   that was in November.

9        So there was a four-month delay there in which

10  anything could have happened.  Nothing could have happened

11  during that four-month period.

12       So part of the delay in getting to this point is due

13  in part to Avidas's dereliction in not having an attorney on

14  board that can represent it.  Now it does.  And plaintiff has

15  an attorney that seems to be on top of things as well.

16       Would Judge Anello be setting himself up for a Ninth

17  Circuit reversal, one, if I don't allow any discovery, and,

18  two, when Mr. Ryan makes his motion that he needs some

19  discovery in order to respond to the summary judgment motion,

20  and Judge Anello says, you know, "Too bad, you had -- you had

21  your shot, and blew it."  And then Mr. Ryan, on behalf of La

22  Jolla Spa, appeals to the Ninth Circuit, is Judge Anello

23  setting himself up and, ultimately, all of you for a reversal,

24  only to have this thing come bouncing back in a year, and we're

25  right back at where we ought to be right now and that is doing

1   discovery.

2           Now, I don't know about you, Ms. Chovanes or

3   Ms. McGrath, but I think in the interest of your client who,

4   from what I've read over the last year and what I'm reading

5   now, is on a shoestring budget, barely afloat, got no money.

6   The last thing that I think your client would want is having to

7   have -- to retain an attorney to respond to an appeal or any

8   summary judgment motions and the efforts that go into that,

9   which ultimately will happen.

10          So I think the more prudent course is to allow some

11  discovery.  Not -- not the -- the discovery that Mr. Ryan is

12  suggesting that he needs, that go well beyond what's allowed in

13  the rules.  And there's nothing in this case that would even

14  lead me to believe that as -- the relaxation in these -- in the

15  numbers and the limitations provided by the rules is justified.

16  Certainly not on this record.

17          Because I do believe that Ms. York, on behalf of La

18  Jolla Spa and La Jolla Spa the party, needs to understand that

19  there are consequences for prior counsel's failure to do his

20  job.  And, you know, the sins of prior counsel are now visited

21  upon you, Mr. Ryan.  And you're going to have to make due with

22  the -- with the limitations that I'm going to set.  And you're

23  going to have to be laser-like focused in your discovery

24  requests to get exactly what you need.

25          So I'm going to allow some discovery.  I'm going to

1    put this on an expedited schedule.  I'm going to limit the --
2    the discovery as well.  I'm going to limit the time in which
3    the parties have to respond, as I did previously, back in my
4    2018 scheduling order in April.
5           I'm going to limit the time in which any disputes
6    must be brought to my attention.  And both sides are going to
7    have to turn their -- their attention to this case.  I know
8    you've got other cases that you're working on but this case is
9    going to be litigated.  It's a 2017 case.  It's now 2019.  This
10   case should have been wrapped up a long time ago.  And so we're
11   going to -- we're going to move it along.  But, Mr. Ryan,
12   you're going to be hamstrung in the requests you can make for
13   discovery, and you are going to have to live with those
14   limitations.  And so you're going to have to be very, very
15   precise in what you're asking for.
16          And, Ms. Chovanes or Ms. McGrath, you're going to
17   have to respond to discovery.  You have a right to propound
18   discovery, too.  And both sides are going to have to be -- to
19   be prepared to respond quickly, efficiently, meet and confer
20   immediately if there are disputes, and bring those disputes
21   immediately to my attention by jointly calling the Court and
22   advising the Court that there is a dispute.
23          I would certainly hope that all counsel -- because
24   all of you are coming in here in the fourth quarter to try to
25   pull out a win for your team, and you're doing it under trying

1    circumstances.  But I would hope that all counsel can work

2    cooperatively together, get what you need, get what's required,

3    limit the -- the disputes and the objections, pick your

4    battles.  Because if -- if I am -- am forced to intervene and

5    resolve what I determine to be meritless, ticky-tack kind of

6    disputes, then the party who is presenting the problem may find

7    that my position changes with respect to the kind of discovery

8    or the extent of discovery that may be allowed.

9            So I am cautioning both sides, whether you like the

10   decision I'm making, the limits I'm placing, or not, to work

11   with each other professionally, civilly, courteously.  To get

12   this case to a position where you can file, if you think it's

13   appropriate, a summary judgment motion, to where we can come

14   back in here at a settlement conference and resolve the case.

15           And if neither of those bring an end to the case -- a

16   summary judgment motion or a settlement conference -- be in a

17   position to try the case.

18           So I am going to limit discovery in this fashion.

19   The parties will be able to propound a maximum of ten

20   interrogatories.  The parties will have a maximum ten RFAs.

21   The parties will have a maximum of 10 requests for production

22   of documents.  The parties may take a maximum of five

23   depositions.

24           And I am going to set approximately three months from

25   now, April the 8th, as the deadline for fact discovery.  So

1    that means that the discovery needs to get out immediately.

2    I'm going to allow the parties the maximum of 15 days in which

3    to respond to discovery.

4         Any disputes must be brought to my attention within

5    one week of the dispute arising.  You can look up my chambers

6    rules and figure out for yourself what that definition means,

7    "the dispute arising."

8         Expert designations must be made no later than April

9    the 22nd.  Rebuttal expert designations, if there are any, must

10   be made no later than May the 6th.

11        And, by the way, all of this will come out in a

12   scheduling order, which you'll have later today or at the

13   latest tomorrow.

14        Expert reports must be made by May the 20th.  No

15   later than May 20th.  Rebuttal reports must be provided no

16   later than June the 3rd.  Expert discovery concludes on June

17   17th.  And pretrial motions must be filed -- that would be

18   summary judgment motions, or any other kind of dispositive

19   motion -- no later than July the 15th.

20        We will have a settlement conference after fact

21   discovery has concluded, on April the 22nd, which coincides

22   with the day you must designate experts, at nine o'clock in the

23   morning.  So April 22 at 9:00 a.m.

24        And your settlement conference statements are due no

25   later than a week before that, on April the 15th.  So I'm

1    hopeful that with laser-like focused discovery that you'll be

2    able to come in on April 22 and get this case resolved.  Or

3    have it resolved before the settlement conference.  I'm going

4    to encourage the attorneys to exercise some top-down leadership

5    with your respective clients, to be fully engaged in ongoing

6    discussions with each other.  As you get new evidence, new

7    discovery that supports or undermines your position, you get on

8    the phone with your client, talk about it, how it changes your

9    outlook on the case.  And then get on the horn with the other

10   side and -- and have ongoing continuous discussions about

11   resolving the case.  And never miss an opportunity to -- to

12   have a discussion that could result in a resolution.

13            I thought that we might have had one a year ago.  For

14   one reason or another it didn't work out.  Here you're getting

15   another opportunity to get this case resolved.

16            So, Counsel, I would typically ask for your -- your

17   suggestions or input or comments about my decision and

18   particularly on scheduling but I'm not going to do that because

19   there's -- you know, something short of an absolute, you know,

20   anticipated disaster coming your way, I'm not likely to change

21   any of these dates or my limitations on discovery but --

22            MS. CHOVANES:  Your Honor -- sorry.  May I just ask

23   for clarification then?

24            THE COURT:  Sure.

25            MS. CHOVANES:  So we have the ten -- the ten -- the

1    limit of ten on the written discovery.

2              THE COURT:  Yes.

3              MS. CHOVANES:  The standard (indiscernible) discovery

4    pool.

5              It seems to me that in recognition of the potential

6    costs of the depositions -- because if we go out there, as the

7    evidence indicates, and everybody says, "No, we didn't sell

8    these things.  It's going to add costs of thousands to my

9    client, which I think is unfair.  So I'm only asking that the

10   others -- that that be possibly modified, to prevent a very

11   limited amount of written discovery on those deponents' turfs,

12   or maybe even take a deposition by written interrogatories

13   precisely to limit the costs.

14             And we think we've shown due cause in our brief that

15   there is no evidence and there won't be any evidence because

16   they already said they gave us everything.

17             So I just ask for that modification.  And we would

18   love to file a summary judgment motion right after that.  Right

19   after the written discovery has been hashed out and done.

20             THE COURT:  Ms. Chovanes, I am not going to issue

21   such an order.

22             MS. CHOVANES:  Okay.

23             THE COURT:  One, I'll let you meet and confer with

24   Mr. Ryan to see if there are some accommodations that can be

25   made that can perhaps mitigate the expenses that your client

1   may incur.

2          But this is a lawsuit.Avidas Pharmaceuticals is a

3   corporation.  And I understand that there are expenses

4   involved.  And I understand that there are corporations that

5   are burgeoning with cash.  And I understand that there are

6   corporations that are in -- corporations in name only and the

7   coffers are empty.

8          But I'll allow you and Mr. Ryan to speak offline

9   about accommodations.  The parties have now made a decision

10  that some discovery -- limited discovery, as it is, is

11  appropriate.  Depositions are a -- an important aspect of

12  any -- any discovery plan.

13         And I'm going to allow Mr. Ryan the opportunity to do

14  discovery, as hamstrung as he is on this now, in a way that he

15  thinks is the most effective and efficient method for -- for

16  his client and for him to pursue.

17         And I'm not going to, you know, knee-jerk a decision

18  that it be a deposition by written questions or some other

19  method of -- like a telephonic or video deposition.  I'm not

20  going to do that right yet.

21         You two can talk about that, and I'm sure that

22  reasonable minds ultimately will prevail.

23         MS. CHOVANES:  Your Honor -- your Honor, I'm from

24  Philadelphia.  And given the Eagles, I had to try.  So thank

25  you.

1            THE COURT:  Well, I think the Eagles are going to

2       beat the Saints.

3            MS. CHOVANES:  Thank you.  Thank you, your Honor.

4            THE COURT:  I believe in Nick Foles.

5            MS. CHOVANES:  Awesome.  Thank you.

6            THE COURT:  So I think the Saints are a beatable

7       team.  The Steelers almost beat them on the Saints' home turf.

8       I think the other Pennsylvania team is going to finish what the

9       Steelers couldn't do.

10           MS. CHOVANES:  Yay.

11           THE COURT:  But don't -- I don't want you to take

12      away that I'm somehow biased in your favor, Ms. Chovanes, by

13      that --

14           MS. CHOVANES:  No.  No.  Your Honor, it's a merits

15      decision.

16           MS. McGRATH:  I would just like (indiscernible) the

17      championship games to be in Los Angeles.  I think that would be

18      very exciting for our city.

19           THE COURT:  Well, that's not going to happen.

20           (Laughter.)

21           THE COURT:  I don't think that's going to happen.

22      One of those teams may make it but not both of them.  And I

23      don't think the Rams are going to make it.

24           MS. McGRATH:  No.  Okay.

25           THE COURT:  I think the Chargers might.

1    MS. CHOVANES:  Really?  You're not mad at them for

2    leaving?

3    THE COURT:  I harbor no ill will for the Chargers

4    leaving.  In fact, I am glad they're not here.

5    (Laughter.)

6    THE COURT:  I'm not a Charger -- I never was a

7    Charger fan.

8    MS. CHOVANES:  But (Indiscernible.)

9    THE COURT:  Oh, I love Philip Rivers.  I hope he -- I

10   hope he -- I hope he gets (indiscernible) before he decides to

11   cut the cleats.

12   MS. CHOVANES:  Yeah.  Yeah.

13   THE COURT:  Now, one final point.

14   With respect to the previous discovery that was

15   propounded way back when, which included, you know, request for

16   production of documents or interrogatories or RFAs, those --

17   those numbers do not count in the ten RFAs or interrogatories

18   or requests for productions that I have just set here today.

19   And whether Mr. -- Mr. Ryan is prepared to waive any

20   objections that may have -- or any disputes that the plaintiff

21   may have, I was reaching that conclusion.  And without having

22   said it, I think you understood that that was where I was

23   going.  That any objections are -- are waived.

24   So it is as if those -- that discovery did not

25   happen, in terms of calculating the -- the limits here today.

1   Does that --

2               MR. RYAN:   Thanks for clarifying.

3               MS. CHOVANES:   (Indiscernible.)

4               THE COURT:   All right.  All right.  Counsel, anything

5   else at this point?

6               MS. CHOVANES:   No, not from the defendant, your

7   Honor.   Thank you.

8               THE COURT:   Okay.  So you -- you've got a lot of work

9   to do and little time to do it, so no time to waste.

10              MR. RYAN:   Understood.

11              MS. CHOVANES:   Yes, sir.

12              THE COURT:   All right.  And, Counsel, I can't stress

13  enough that the time limits to respond to discovery are 15

14  days.  The time limits to bring a dispute are seven days.  If

15  you bring a dispute to my attention on Day 8 or afterwards, I'm

16  not going to entertain it and the status quo will remain.

17              And so if you get -- if a dispute arises, you need to

18  immediately -- and I -- I mean that.  Immediately get on the

19  phone with the other side and hash it out, and do your best to

20  hash it out.  And then if you can't, then you need to pick up

21  the phone and call chambers jointly.  You need to put in --

22              MS. CHOVANES:   Yes.

23              THE COURT:   You need to put in a good faith effort to

24  try to resolve any disputes.  I don't want -- nor do I want to

25  believe -- well, I called the other side.  I told them I had a

1   dispute.  They said no.  Okay, that was our good faith effort.

2   That will not be a good faith effort.  You really have to roll

3   up the sleeves and try to work through your disputes and see if

4   you can resolve them.

5           And then if you can't, you need to get on the phone

6   with me within that one-week time period.  Okay?

7           MS. CHOVANES:  Your Honor, I just ask that counsel

8   recognize that I'm on the East Coast.

9           THE COURT:  All right.

10          MS. CHOVANES:  We had some issues with that.  We had

11  some issues with that earlier.  (Indiscernible)

12          THE COURT:  All right.  I understand there's a

13  three-hour time difference.  I get that.  But days are days and

14  hours are hours.

15          MS. CHOVANES:  Right.  I'm not answering the phone --

16  I'm not answering the phone at 7:00 p.m., your Honor.  That's

17  unfair.

18          THE COURT:  All right.  Well, don't expect Mr. Ryan,

19  then, to be answering the phone at 5:00 a.m.

20          MR. RYAN:  Actually, I'm up at that time

21  (indiscernible), your Honor.

22          THE COURT:  Okay.  So you should each allow for

23  allowances given the time difference and work accordingly.

24  Business all over the world gets done in various time zones.

25  It's not impossible.

```
1            All right.  All right.  Counsel, happy new year.
2    Good luck.
3            THE ATTORNEYS:  Thank you, your Honor.  Happy new
4    year.
5            THE COURT:  All right.  Take care.
6            UNIDENTIFIED ATTORNEY:  Bye.
7            THE COURT:  Bye.
8            (Conclusion of proceedings.)
9
10                       --oOo--
11   I certify, by signing below, that the foregoing is a correct
12   stenographic transcript, to the best of my ability, of the
13   digital recording of the audio proceedings had in the
14   above-entitled matter this 10th day of January, 2019.  A
15   transcript without an original signature or conformed signature
16   is not certified.  I further certify that the transcript fees
17   and format comply with those prescribed by the Court and the
18   Judicial Conference of the United States.
19
             /S/ Amanda M. LeGore
20           _____
21           AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290
22
23
24
25
```