1                UNITED STATES DISTRICT COURT

2           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3  LA JOLLA SPA MD, INC., a     )
    corporation, et al.,       )
4                          )  No. 17-CV-1124-MMA-WVG
          Plaintiffs,     )
5                          )
    v.                    )  February 7, 2019
6                          )
    AVIDAS PHARMACEUTICALS, LLC, a   )
7    limited liability company, et al.,)
                          )
8          Defendants.     )
    _____)  San Diego, California
9

10        TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

11              (Telephonic Conference)

12

13     BEFORE THE HONORABLE WILLIAM V. GALLO, MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23  COURT REPORTER:         AMANDA M. LeGORE
                       RDR, CRR, CRC, FCRR, CACSR
24                    U.S. District Court
                       333 West Broadway, Suite 420
25                    San Diego, CA 92101
                       amanda_legore@casd.uscourts.gov

1    APPEARANCES:
     (present telephonically)
2

3    FOR THE PLAINTIFFS:      JAMES RYAN
                              James Ryan, P.C.
4                             1110 Glenville Drive, Suite 307
                              Los Angeles, CA  90035
5                             (310)990-2889

6

7
     FOR THE DEFENDANTS:      JULIE CHOVANES
8                             Chovanes Law, LLC
                              25 Springfield Avenue
9                             Philadelphia, PA  19118
                              (267)235-4570
10

11
                              AMY BURKE
12                            Theodora Oringher PC
                              1840 Century Park East, Suite 500
13                            Los Angeles, CA  90067
                              (310)557-2009
14

15

16

17

18

19

20

21

22

23

24

25

1                    (Thursday, February 7, 2019)

2

3                    P R O C E E D I N G S

4

5          THE COURT:  Good afternoon, Counsel.  Bill Gallo.

6   We're on the record.

7          This is La Jolla Spa versus Avidas Pharmaceuticals,

8   17-CV-1124.

9          If I could have counsel state your appearance,

10   please, starting with the plaintiff.

11          MR. RYAN:  James Ryan, your Honor.

12          THE COURT:  Good afternoon.

13          And for defendant?

14          MR. CHAVEZ:  Julie Chovanes.  And with me is Amy

15   Burke, who is from Ms. McGrath's office, as local counsel.

16          THE COURT:  All right.  Thank you.

17          Okay.  So we have a little dispute here.  Let's start

18   with the first one, interrogatory No. 16.

19          I've read your papers.  I have some questions.

20          So it appears from the response provided by the

21   defendant that certain documents were identified as being

22   responsive to the interrogatory.  Various letters and/or

23   e-mails mentioned by -- by date.

24          Ms. Chovanes, do you have any specific objection with

25   the first part of that response and the identification of those

1  documents, letters, and/or e-mails?

2  MS. CHOVANES:  No, but that's -- I'm the one who

3  wrote that, so I love it, your Honor.  But it's Mr. Ryan who's

4  objecting to our response.

5  THE COURT:  Correct.  Sorry about that.  (Laughing.)

6  Mr. Ryan, you're the plaintiff.  You're the

7  plaintiff.  My bad.

8  MR. RYAN:  That's okay.

9  THE COURT:  Yeah.  You're the plaintiff.

10  So do you have any objection to the first part of

11  that?

12  MR. RYAN:  No, your Honor.  Let's just focus on the

13  second paragraph

14  THE COURT:  Okay.  So the second paragraph states,

15  Additionally, other facts may be contained in other exhibits,

16  et cetera, et cetera.

17  So, Ms. Chovanes, my question to you then is

18  presently are you aware of other documents, exhibits, papers,

19  physical evidence, whatever, that could be responsive to

20  this -- to this request?  Because I --

21  MS. CHOVANES:  Yeah.

22  THE COURT:  You aren't aware of any at this time?

23  MS. CHOVANES:  No, I'm not aware of any.  I just want

24  to leave the door open.  Because, you know, we came into this

25  case later.  And I reviewed the papers from everything else.

1   But, honestly, I'm not aware of that -- of all of them.   And

2   plus the correspondence between the parties, (indiscernible),

3   six years with (indiscernible), I don't purport to know.

4           So I just thought, out of an excess of caution,

5   overidentifying what may be facts in the relevant documents.

6   And that's how I identify (indiscernible).   But I'm not aware

7   of any.

8           THE COURT:   All right.   Well, a couple of things.

9           There -- yeah, there may have been a lot of documents

10  that have been generated in the course of the litigation and in

11  the course of the business relationship.   But I don't -- and I

12  know you just came in on this case fairly recently in its

13  history.

14          I don't think it's an appropriate response to say

15  that -- and, you know -- and I don't purport to know.   I think

16  you have to do your due diligence.   I think you're going to

17  have to look at these documents, and I think you're going to

18  have to say that there aren't any, after you've done that.   I

19  don't think you can ignore the responsibility of looking

20  through the documents to determine if there are any that are

21  responsive.   If you want to go that route under Rule 33, by

22  identifying records and documents to -- that are responsive to

23  the interrogatory, then I think you have to do that, as you did

24  in the first part of your response, and identify with some

25  particularity where the -- the response can be found in a

1  document.  But I don't think you can say there's a lot there,

2  and I just haven't -- I haven't looked at any; therefore, I'm

3  not aware of any.  Or I haven't look at all but, therefore, I'm

4  not aware of it -- of what might also be out there.

5       I -- I don't know if I agree with the -- the

6  representation that you make that by requiring Avidas to do

7  this search, that it's asking Avidas, in essence, to provide

8  the plaintiff with its work product.

9       I am not so sure that I agree that that's what's

10  happening here, when you're simply identifying documents that

11  may be responsive to an interrogatory.  I -- I think -- and

12  I'll -- I'll give you the opportunity, Ms. Chovanes, to

13  respond.

14       But I -- I believe that that the -- this

15  interrogatory, as plaintiff frames it, is a contention

16  interrogatory.  And plaintiff said as such in its papers.  It

17  seems like it's an appropriate interrogatory to ask, to try to

18  narrow and focus the -- the issues.

19       And so I don't think that you can say, at this point,

20  that there may be -- and I think this is a problem here -- that

21  there -- other facts may be contained in exhibits and papers

22  that have been filed in correspondence between the parties and,

23  La Jolla, you should just go find them.  I don't think that

24  that's an appropriate response.  In the first part of your

25  response, you actually do -- you, quote, do the work.  You

1    identify various documents, admittedly not many of them, but a

2    few.  And -- but in the latter part of that same response, you

3    say, "Well, I'm not going to do the work."

4         Clearly every party in the litigation has an ongoing

5    obligation to supplement responses.  But the second part of

6    your response led me to believe, yeah, there's other stuff out

7    there.  I'm aware of this other stuff that's out there that's

8    responsive, but I'm just not going to do it.  I'm just not

9    going to identify those documents.  I don't think that's

10   acceptable.  But let me hear what your -- your argument is.

11   I've read your papers, but I would like to -- I would like for

12   you to supplement that argument.

13        MS. CHOVANES:  Judge, first of all, in the first --

14   the identification in the first paragraph, just so you know, we

15   identified a ton of documents in the exhibits to the opposition

16   and that is that -- we do talk about that at the end of the

17   first paragraph.  I mean, there are a lot of papers in that

18   clump called Avidas exhibits to its opposition at the end of

19   the first paragraph.  So we did identify a lot of documents.

20        I only mention that -- I only mention that just to --

21   to clarify what's in that first paragraph.

22        As to the second paragraph, yeah, out -- out of

23   excess of caution and work product, and I see contention in our

24   interrogatories and I do worry about getting into that.  So my

25   concern is -- was sort of a factual identification.  But if we

1   can identify on -- in other words, you know, at page 1, line

2   23, there's this statement.  I mean, I'm happy not to do that.

3   And I -- I can go back and identify these documents in

4   accordance with what I understand is the Court's order now.

5         THE COURT:  Well, as I read Rule 33, if you are going

6   to use a -- a document to answer an interrogatory, the document

7   must be identified with, you know, sufficient detail so that

8   the -- the plaintiff in this case can locate the document.

9         I don't think -- I don't think it requires you going

10  down to the actual page and line number of the document unless,

11  of course, you know, the document's 100 pages long.

12        But if it's a letter -- you know, a couple-page

13  letter, I think that is identifying with sufficient

14  particularity and detail a response.

15        It is a judgment call, to some extent.  And I don't

16  think it's shifting to -- to you, Ms. Chovanes, the burden of

17  doing the plaintiffs' work.  I think it's rightfully putting

18  on -- in this case -- the defendant, the responding party, the

19  burden of responding to an interrogatory that only you know.

20  Only you know what documents are responsive --

21        MS. CHOVANES:  Yeah.

22        THE COURT:  -- to -- to this interrogatory.

23        Now, if -- if in this second portion where you say

24  there may be other -- other documents out there, at this time,

25  if you're not aware of any other documents that are responsive,

1  perhaps the better -- the better response would have been --

2  and beyond this, you know, the defendant is not aware of any

3  other documents that are responsive.  Because the way it's read

4  now, it leads me to believe that you know there are other

5  documents out there that are responsive but you're just not

6  prepared to do it.  So you're prepared --

7          MS. CHOVANES:  No, I -- yeah, I didn't mean to say

8  it -- that's inartfully -- it's inartfully done.  And, your

9  Honor, that second paragraph -- no, that's what -- I -- I just

10 don't know, honestly.  That's where we are.

11         THE COURT:  All right.  And -- so the next

12 question --

13         MS. CHOVANES:  But, see, I didn't want to be -- I

14 didn't want to be foreclosed, sir, from, you know, saying --

15 and them turning around and pointing a finger and saying, "Oh,

16 you didn't identify this one or that one."

17         So, yeah, I -- we will do -- I understand the issues

18 with the objection.  Let me say it that way, sir.

19         THE COURT:  All right.  So -- so what are you -- what

20 are you going to do now?

21         MS. CHOVANES:  Well, I'm going to go back to the

22 filings in the case and the e-mails and look at some of them

23 because I think the highest relevance ones I want to make sure

24 we have in there.  But, on the other hand, I'm not going to be

25 able to get to all of that just because of the nature of it.

 1   But I will plod through diligently because I -- my

 2   understanding is there's six years of stuff there.

 3           THE COURT:  Well, and maybe more.  I have no idea.

 4   But there -- I'm sure --

 5           MS. CHOVANES:  Yeah, right.

 6           THE COURT:  A lot of information.  But you chose to

 7   come onto the case and, you know, like it or not, the work --

 8           MS. CHOVANES:  No, it is what it is, sir.

 9           THE COURT:  It is what it is.  And you've got to get

10   the work done.

11           MS. CHOVANES:  No, no.  I get that.  Yes, sir.

12           THE COURT:  All right.  So is it fair to say, then,

13   that you're going to continue diligently to review these

14   documents and continue to supplement this -- your response to

15   this interrogatory No. 16 and identify any documents or

16   otherwise respond to the interrogatory as appropriate?

17           MS. CHOVANES:  Yes, sir.

18           THE COURT:  All right.  Now, only you know because --

19   and I don't.  You know, what's -- what's that going to take in

20   terms of time?  Because I think we need to put some reasonable

21   time frames on this.  You don't have a whole lot of time to get

22   all of your discovery done, and I know that --

23           MS. CHOVANES:  Yeah, at this point, we have our --

24           THE COURT:  I know that the defendant will view --

25   specifically weren't happy.  You thought that what was done was

1   done, and you didn't know more needed to be done.  But here we

2   are.  We're in a different --

3               MS. CHOVANES:  Yeah.

4               THE COURT:  Here we are.

5               MS. CHOVANES:  Yeah, and it's a new football season

6   coming up, too, your Honor.  So my Eagles have a chance again.

7               (Laughing.)

8               THE COURT:  Well, you also -- you also have a

9   quarterback controversy there, so we'll see how that plays out.

10              MS. CHOVANES:  Yeah, I know.  It's fascinating.  I

11  know.

12              But, I mean, I could make a substantial cut at it,

13  sir, within probably two weeks.  But that -- that is what --

14  the most I can do right now.  And the rest is subject to our

15  duty to supplement with recognition that, you know, whatever we

16  have we'll give to the other side.

17              THE COURT:  All right.  So, Mr. Ryan, what's your

18  take on this?  Let me hear from you.

19              MR. RYAN:  Thank you, your Honor.

20              Well, I think we need (indiscernible) issues in terms

21  of this second paragraph, which is, you know, immediately

22  trying to sort of hedge and leave -- leave things open, which

23  is not going to work for me because I need to know which

24  documents are at issue.

25              So it sounds like we're going to get to the point

1   where at least some initial documents are going to be

2   identified, which I appreciate.

3           I want to make sure that in any further responses

4   there's still -- there's no vagaries in terms of, well, and

5   there may be other documents.  Because we'll just be back here,

6   where we were before.  And Ms. Chovanes mentioned that she was

7   going to take a cut at it and find the one with highest

8   relevance, but I don't think I can accept an answer of, you

9   know, sort of the low-hanging fruit in terms of which documents

10  would be relevant.

11          I -- the purpose of this interrogatory is to put

12  issues at rest so that we all are dealing with the same

13  universe of fact.

14          And, obviously, I don't want to learn at some later

15  point, even in discovery or after the close of discovery, that

16  there's some other documents that Ms. Chovanes couldn't get

17  through within whatever period of time we're going to talk

18  about.  But they later pop up, and then I have to contend with

19  it after the close of discovery.  So I think that, given the

20  amount of time that this case has been pending, Avidas should

21  know what documents it's going to use to support the 13th

22  affirmative defense.

23          As far as the timing goes, you know, we are now a

24  little more than a week and a half after the responses were

25  due, and Ms. Chovanes is asking for an additional two weeks.

1   The only thing I would say is that I want to reserve my rights
2   to come back to the Court and ask for more time beyond the
3   present April 8th cutoff date because if we're looking at
4   possibly another, you know, three or four weeks from when these
5   responses are due, it's backing up everything else that I
6   intend to do in terms of taking depositions and actually
7   getting, you know, the responses.  So I -- I appreciate that
8   this takes time to go through and to do it, and I think it's a
9   necessary exercise.  I'm just concerned about the amount of
10  time that's going to be necessary to get not only further
11  responses to these interrogatories but also the next issue is
12  going to be documents.
13          THE COURT:  Um-hmm.  All right.  So -- so let me
14  throw this out and see if it sticks.
15          Without precisely knowing the -- the volume of
16  documents -- but the way it's been described by Ms. Chovanes is
17  that it's considerable.
18          What I would propose, discovery cutoff is now two
19  months away from tomorrow.  Tomorrow will be February the 8th.
20  Discovery ends on April the 8th.
21          I appreciate the remarks made by Mr. Ryan that
22  depending on when the -- the -- the -- a complete and full
23  response to interrogatory No. 16 is attained may necessitate a
24  request that more time be given for fact discovery because
25  we're sort of in a holding pattern until this is -- this

1    response is provided in terms of taking depositions, et cetera.

2    And I -- I appreciate that that may be -- may be the case.  So

3    here's what I am going to propose.

4          Ms. Chovanes, today is February the 7th.  How about I

5    give you two weeks to provide what I'm going to call the

6    first -- or the next round of responses to this interrogatory.

7    And by that point, I would want you to have at least reviewed

8    50 percent of the -- the documentation that you might be

9    relying upon to respond to this interrogatory.

10         Now, that doesn't mean that, you know, you get --

11   you -- you prioritize these from least relevant to most highly

12   relevant because relevant -- relevancy is relevancy.  And

13   whether it's not very relevant or highly relevant, it's still

14   relevant and needs to be turned over.

15         Two weeks after that, which would be March the 7th,

16   100 percent.  The other 50 percent would have to be done.  So

17   100 percent of these potential pool of documents shall have

18   been reviewed and turned over to the other side, to -- to

19   Mr. Ryan.

20         So I'm going to give you a month.  Two weeks to get

21   at least 50 percent done.  Two weeks to get the other 50

22   percent done of whatever is remaining.  That may be more time

23   than you need or it may not be enough time, but that's --

24   that's the time I'm giving you.

25         And then, Mr. Ryan, we'll have to go from there.

1     We'll see if what's turned over to you is a little, a lot;

2     whether it requires moving some of these dates that are now

3     existing for fact discovery and expert discovery.  And you

4     would retain whatever ability or right you have to come back to

5     the Court and object.  I'm the one who's now giving some new

6     deadlines on when this discovery has to be produced.

7              And so if even after the 100 percent mark is reached

8     on March the 7th, if you don't have everything or there's

9     problems with it, you would still have the right to come back

10    and have the Court intervene.

11             How's that?

12             MR. RYAN:  That's fine.  I -- I guess you're, you

13    know, mentioning that this essentially a holding pattern.

14             THE COURT:  Well, no, you mentioned that.  You

15    mentioned that until you get some of these documents, you may

16    not be able to do depositions.

17             MR. RYAN:  Yeah, I mean, that's my concern.  But if

18    you're -- if you're saying that, you know, if we're adding --

19    we're basically building in a 30-day holding period that if I

20    need three or four additional weeks beyond the April 8th date,

21    then I don't have to be concerned about flying around and

22    taking these depositions in a very short period of time, not

23    having the ability to not only get -- get the full responses

24    but then, obviously, review everything before the

25    depositions --

1          THE COURT:  I've never been in private practice.

2     I've never had to do civil discovery.  But I understand that

3     many practitioners want to have the written discovery done and

4     in their possession before they take a deposition, and I

5     certainly appreciate the rationale for that.

6          And given the -- the -- the delay in producing any

7     other additional relevant documents responsive to this request

8     that -- that I have -- that I have set, then I would be

9     amenable to extending some deadlines, is what -- is what I'm

10    saying.  I'm not happy about it.  I'm not thrilled about it.

11         But if -- if Ms. Chovanes kicks it into high gear and

12    does nothing else and gets all of these documents to you in a

13    week, and that's the end of it -- and -- and there isn't any

14    more that -- after she's looked at all of them, then I may not

15    be.  So these are just deadlines.

16         It doesn't mean that Ms. Chovanes has to wait two

17    weeks to give you 50 percent and then two weeks after that to

18    give the other 50.  Or have reviewed the -- you know, the 50

19    percent and then the other 50.  She can work --

20         MS. CHOVANES:  Can I be heard briefly --

21         THE COURT:  Sure.

22         MS. CHOVANES:  -- on that?  And, like, I'm listening

23    to this and I'm rereading the interrogatory.  And, I mean, I'm

24    not sure that we want, in the second paragraph, just to state

25    the facts rather than offering to produce a zillion documents.

1    Because, anyway, I think you're getting in a document

2    request -- those documents anyway.  And that's in the regular

3    course.  There's no holdup there.  That's what we're talking

4    about.

5            So if I answer this thing fairly quickly, which is a

6    week -- and I think, like I said, just so it's clear, so we

7    don't have an instant dispute, that I think the second part of

8    this will just be stating the facts that we consider relevant,

9    rather than offering to produce.

10           THE COURT:  Well, it's --

11           MS. CHOVANES:  So I'm just putting everyone on notice

12   at this point.

13           THE COURT:  Well, it's your choice.  I mean, it is an

14   interrogatory.  But if you do choose to respond --

15           MS. CHOVANES:  The documents -- sorry, sir.

16           I didn't mean to interrupt.

17           THE COURT:  If you choose to respond by way of

18   providing a document or documents, that's -- that's your

19   choice.

20           I mean, that's the option you have.  And -- and

21   that's exactly how the Rule 33(d) is written, option to produce

22   business records.  So if that's the way you choose to do it,

23   that's -- that's fine.

24           If you choose to respond in a traditional way to an

25   interrogatory, that's -- that's fine, too.  I mean, either way,

 1   it may be subject to objections.  But I'm not going to

 2   micromanage how you respond.

 3            MS. CHOVANES:  Okay.  That just deals with the time

 4   frame issue, too.  Just to reassure counsel that we'll be able

 5   to probably get this to them within a week, and so as not to

 6   extend any of these deadlines.

 7            THE COURT:  Well, that -- and choosing to do it one

 8   way, in the interests of time, may have its own issues that

 9   Mr. Ryan may want to bring to the Court's attention, and I'll

10   deal with it that way when it happens.  But if you choose to

11   answer in a traditional sense, we'll wait and see what that

12   response is.

13            MS. CHOVANES:  Yes, sir.

14            THE COURT:  Okay.  But if you're going to respond by

15   providing documents and the timelines that I have set out are

16   the deadlines, and to have done that review and provided the

17   responses, if you are going to produce records or documents.

18   Okay?

19            MS. CHOVANES:  Okay.  Yes.

20            The Court is going to issue an amended order with

21   regard to the deadlines or should we just --

22            THE COURT:  Yes.  We'll issue an order.  We'll issue

23   an order.

24            Okay.  All right.  Now, going out to the request for

25   production of document issues.  Request 7, 8, and 11 through

1    16.  Here's -- here's my -- let me just go through a little

2    chronology, here, to kind of highlight this.  You can correct

3    me if I've got any of this wrong.

4          So La Jolla Spa filed a complaint in Superior Court

5    on or about April 20th of 2017.

6          In June, Avidas filed a notice of removal to federal

7    court on June the 2nd.  And then a week later on the 9th of --

8    June 9th, 2017, Avidas filed a motion to dismiss the complaint.

9    And what it -- it filed a motion to dismiss as to Counts 1, 2,

10   3, 4, and 6.  Not as to 5.  But -- and so I'm -- I'm not sure

11   what happened to Count 5, quite frankly.  I haven't done a deep

12   dive into the record but the motion to dismiss says they seek

13   to dismiss all the counts but then only list all of them with

14   the exception of No. 5.  And then Judge Anello, in his order,

15   you know, essentially did the same thing.  Said instead of

16   dismissing -- you know, the defendant moved to dismiss all of

17   the counts and then only identified 1, 2, 3, 4, and 6 but not

18   5.  So I don't know if 5 got dropped off some place else.

19         In any event, Judge -- Judge Anello issued his order

20   on the 27th of October, 2017, dismissing Counts 2, 4, and 6,

21   without prejudice.  Counts -- Count 3 with prejudice.  Count 1

22   remained.  Still don't know what happened to Count 5.

23         And then a -- an amended complaint was filed.  It was

24   labeled Second Amended Complaint, and I'm not sure if that's

25   accurate or not.  Maybe should have been a First Amended

1    Complaint, but whatever.

2          On November 14th of 2017, the plaintiff files the

3    Second Amended Complaint, which is the operative complaint that

4    I'm dealing with; that I think we're all dealing with.  It only

5    alleges a breach of contract.  And in reading the breach of

6    contract claim in the Second Amended Complaint with the

7    complaint filed in Superior Court, back in April of 2017, the

8    language is nearly verbatim.

9          There's a couple of little changes here and there,

10   but it's really a verbatim recitation of the original breach of

11   contract claim.

12         Count 5 is not re-alleged.  That's the unfair

13   competition.  That's not re-alleged at all in the Second

14   Amended Complaint.  So the only count that I'm -- that I'm

15   concerned with -- that I think I need to be concerned with or

16   should be, that's before us, in terms of discovery, is the

17   breach of contract claim.

18         Defendant filed an answer to that Second Amended

19   Complaint on 28, November, 2017.  And on that same date I

20   issued an order setting February 16th of last year for our ENE

21   and case management conference.  And it was actually held on

22   that date as well.

23         So we held our ENE and our case management conference

24   and we set some dates.  However, after the answer was filed,

25   and in accordance with the ENE order that I set out scheduling

1   the case management conference, the parties were to file their

2   initial disclosures by the 5th of January.  And Avidas did in

3   fact file its initial disclosures on the 5th of January.

4           And then we issued an amended scheduling order just a

5   few weeks ago on January the 9th.  A lot of stuff happened

6   throughout 2018.  I'm not going to worry about -- about that.

7           And then there was also an effort by the plaintiff to

8   amend the complaint once again, and Judge Anello denied that.

9   So the only -- the only claim that we're dealing with now --

10  correct me if I am wrong -- is the breach of contract claim in

11  that Second Amended Complaint.

12          Mr. Ryan, do you concur with that?

13          MR. RYAN:  I do.

14          THE COURT:  All right.  And, Ms. Chovanes, do you

15  concur with that?

16          MS. CHOVANES:  Yes, sir.

17          THE COURT:  All right.  Now, one of the -- let's deal

18  with RFP No. 7.  It asks for all of the documents identified by

19  Avidas in the initial disclosures, which were served on the 5th

20  of January.

21          Avidas objects.  And Avidas objects that these

22  initial disclosures pertain to all of these other counts and

23  claims that ultimately were dismissed by the Court at one point

24  in time or another.

25          The only thing that's left is the breach of contract

1    claim.  But I want to -- I just want to point out -- and you

2    know, Mr. -- Ms. Chovanes, help me understand this.  I know you

3    weren't the attorney back then.  But, you know, you're kind of

4    stuck with some of the things that were done before.

5           So after the Second Amended Complaint was filed,

6    which only had the breach of contract claim and after the --

7    and the defendant answered it, then the defendant filed its

8    initial disclosures, which included all of these items that are

9    identified in -- which is Exhibit 3 to plaintiffs' supplemental

10   papers for today.

11          And it identifies 12 items or categories of

12   documents.  So I'm going to make an assumption here.  I'm going

13   to make an assumption that counsel, at the time, for -- for

14   Avidas, when it filed its initial disclosures in identifying

15   these 12 categories that may be used to support the claims or

16   defenses, was aware that the only claim was a breach of

17   contract claim.  Because everything else had been -- been

18   dismissed or wasn't re-alleged.

19          So that being the case, Ms. Chovanes, why shouldn't

20   you be obligated to provide these documents or ESIs -- or ESI

21   that's identified, you know, by reference in the initial

22   disclosures?

23          MS. CHOVANES:  Your Honor, my understanding was the

24   difference in years, as far as time frame goes.  And that's --

25   and I apologize if I was incorrect because I thought -- and I

1  thought there were nine of ten counts because the papers are

2  very confusing.

3          So, honestly, I would withdraw the objection, if in

4  fact these are identified in the course of responding just to

5  the breach of contract count.

6          THE COURT:  Well, we can go back.  I mean, I would

7  invite you get on the CM/ECF.

8          MS. CHOVANES:  Yeah, right.

9          THE COURT:  And you can see --

10          MS. CHOVANES:  Well, no, I'll accept the Court.  I'm

11  not going to challenge you on that, sir.

12          THE COURT:  Yeah, I know of -- I know I'm from

13  Pittsburgh, and I'm on the other side of the state.  My

14  Steelers went down in flames this year.  But, you know, I'm not

15  going to steer you wrong, Ms. Chovanes.

16          MS. CHOVANES:  No, no, no.  And, your Honor, if

17  that's the case, then I apologize.  I misunderstood the timing

18  of those two documents.

19          THE COURT:  Okay.  All right.  So that being the

20  case, then, any objections that the defendant had regarding the

21  initial disclosures is overruled.

22          And, Ms. Chovanes, you are directed to respond to RFP

23  No. 7 completely and thoroughly, then.  All right?

24          MS. CHOVANES:  Yes, sir.  Yep.

25          THE COURT:  Okay.  And I'm going to give you a week

1    for that.

2              MS. CHOVANES:  Okay.

3              THE COURT:  All right?  A week from today.  So today

4    is the 7th.  You've got until Valentine's Day.

5              MS. CHOVANES:  Your Honor, uhm -- excuse me.  I just

6    want to write these dates down because -- we can get started on

7    this today.  So a week from today.  Okay.  Thank you.  Yeah.

8              THE COURT:  Now, Mr. Ryan, anything else you would

9    like to be -- if you want to be heard on RFP No. 7, anything

10   else you want to say?

11             MR. RYAN:  No, your Honor.

12             THE COURT:  Okay.  Now, with respect to RFP No. 8 and

13   the other RFPs, 11 through 16, this -- this is what I

14   understand.  And, Mr. Ryan, I want you to help me out here.  So

15   as I read through the operative complaint now, which is the

16   Second Amended Complaint filed on November 14th, and it's the

17   only one out there, paragraph 8 of that complaint says,

18   "Pursuant to the contract, Avidas paid royalties until around

19   mid-2014."

20             Avidas -- and then it goes on about writing the

21   letter and, you know, the lead -- the lead person is going to

22   know -- is -- is going to be replaced.  They don't want to be

23   involved in the selling of -- Vitaphenyl anymore, et cetera, et

24   cetera

25             In paragraph 12 of the complaint, Avidas -- excuse

1   me.   Plaintiff states Avidas does have an ostensibly valid

2   reason for terminating the contract because of the lead person

3   being replaced and no replacement being offered.

4          The defendant has objected to this particular

5   interrogatory in one sense.   Is that asking for royalty

6   payments and receipts, and so forth, would only be necessary --

7   is only relevant as to up to the time of the breach.   I'm

8   sorry.   Is only -- it's only relevant after the breach.

9   Royalty payments made up to the time of the breach are

10  irrelevant because it's what happened after the breach that's

11  important.

12          The complaint concedes that Avidas paid royalties.

13  That's paragraph 8.   Quote:

14              "Pursuant to the contract, Avidas paid royalties

15              until around mid-2014."

16          Now, around mid-2014, in my mind is, you know, May,

17  June, July time frame.   Which is about the time that this

18  letter was written and about the time that Avidas wanted to

19  terminate the contract.

20          So there's -- there's a concession here in -- in the

21  pleadings that Avidas paid the royalties.   So that's not an

22  issue, as the payment up to that appointment.   The -- the

23  actual cause of action, which is paragraphs 11 through 14,

24  believes that Avidas continued, notwithstanding their

25  expression of termination on July the 11th, but continued to

1    sell this product.  And so it's -- it's the -- it's the

2    documentation, sales receipts, anything else, of -- of sales

3    made from July 12th, 2014, onward that would be relevant.

4          So help me -- help me understand, Mr. Ryan, if my

5    thinking is off here, and help me understand if I'm reading

6    your -- the complaint incorrectly.

7          Now, I know you didn't author this complaint.  It was

8    authored by someone else.  But it is the pleading and it is --

9    there is an admission in the pleading that Avidas paid

10   royalties.

11         There's -- there's no claim in the complaint that the

12   royalties that were paid were not in accordance with the

13   agreement; the percentages amounts.

14         MR. RYAN:  Okay.  Well, I think you are misreading

15   it, and it's true that I didn't draft this complaint.  And if

16   I -- if I had drafted it, I would have made it clearer.  But I

17   don't believe that paragraph 8 concession that all royalties

18   were paid.  It is true that there were some $4,000 worth of

19   royalties that were paid over the course of the relationship

20   from La Jolla Spa's perspective.

21         So, in that regard, some royalties were paid.  The

22   issue is whether all the royalties were paid.  And what has

23   come up throughout the case -- and most recently in response to

24   plaintiffs' motion to amend -- was that Avidas was contending,

25   look, we paid $9,000 (phonetic) in royalties.  And here's all

1    of the summaries and here's copies of the fronts of the checks

2            And so there is now -- well, there has always been

3    but there -- it has sort of crystalized that there is a dispute

4    as to whether all of the royalties have been paid.

5            So when you look to paragraph 14, which is the --

6    the -- sort of the -- I don't know, the impact paragraph, it

7    mentions that Avidas breached the contract and deprived

8    plaintiff of moneys earned under the contract.  It doesn't

9    specify the date.  It does mention the specific dollar amounts

10   were known to Avidas and can't be alleged here with

11   specificity.

12           It goes on to state that plaintiff requested an

13   accounting in 2012.  It goes on to state that there was a

14   breach by the failure to provide an accounting in connection

15   with the sales and distribution agreement.

16           So as I understand the claim, there were some

17   royalties that were paid.  And, obviously, the royalties that

18   La Jolla Spa admits were paid are not subject to a breach

19   claim.  But there is a dispute as to whether all of the

20   royalties were paid.  And then if you -- if you look to

21   Avidas's answer, there are several affirmative defenses -- as I

22   point out in the supplemental briefs -- such as offset, full

23   performance, substantial performance, and unjust enrichment,

24   that essentially all go to the issue of whether Avidas

25   performed all of its obligations under the contract, which

1    would relate to the royalties.

2           So discovery in this case relates not only to the

3    plaintiffs' claim for breach of contract, which we think is

4    broad enough to encompass the things that are sought in these

5    requests for production but also for use in defenses.  And we

6    know that this is one of Avidas's defenses because it was a

7    central argument in Avidas's obligation to plaintiffs' most

8    recent motion for leave to amend that Judge Anello denied.

9           So with all of those things in mind, I think that

10   there is no specific cutoff of before and after in terms of

11   when royalties were owed.  Just -- the point of that date was

12   to indicate that there was a -- a term -- that's the

13   termination date stated in the letter that Avidas

14   (indiscernible) the termination letter.  But there is an

15   ongoing dispute as to whether all of the royalties have been

16   paid prior to the termination and after the termination.

17          And these requests, date and so on, the requests for

18   production are targeted at seeking information to show -- for

19   example, for request No. 8, prove that the $90,000 worth of

20   payments that you say were made were actually (A) sent to La

21   Jolla Spa and/or cashed checks by La Jolla Spa because, from my

22   side of the table, there was only $4,000 worth of checks that

23   were received and kept.

24          So that -- that relates to the dispute over paid.

25   And then with respect to the ones that follow, relating to

1  inventory and sales and whatnot, all of those things would

2  pertain to -- so the -- what's the status of inventory as of

3  the date of termination to know whether anything even left the

4  (indiscernible) after that date, and if there was product,

5  where did it go?  And who sold it?  And how much money would be

6  (indiscernible)?

7      So I think all of these requests and -- I've spent a

8  lot of time trying to (indiscernible) it down because I was

9  limited to ten to get at the specific issues in the breach

10  claim.  And I don't think that the claims are limited -- the

11  breach claim is limited to a specific point in time, given the

12  defenses that have been asserted and the -- sort of the broad,

13  albeit maybe inartfully pled, allegations; which don't concede

14  that all royalties were made.  We concede that some royalty

15  payments were made but not all of them.

16      THE COURT:  Well, you're right.  The -- paragraph 8

17  doesn't say Avidas paid all royalties.  Nor does it say Avidas

18  only paid some royalties, which could have -- nor does it

19  indicate that -- that La Jolla Spa believes that more royalties

20  are owed to it up until the day of termination.

21      When you read the first cause of action, paragraphs,

22  11 through 14, along with the preceding paragraphs as well in

23  context, I think the only thing that I can conclude, though,

24  notwithstanding your comments here today, is that this breach

25  of contract claim applies to any moneys owed to Avidas --

1   excuse me, to La Jolla Spa after July 11th, 2014, based upon

2   the allegation that Avidas, notwithstanding it said that -- it

3   claimed that it was going to terminate the contract, continued

4   to sell the -- the product Vitaphenyl, make money, and did not

5   provide royalties.

6          So if you look at paragraph 14, it starts out -- and

7   I think you have to read this in context with all of the other

8   paragraphs.  It said:

9              "By changing its position, Avidas breached the

10             contract.  It breached its contract by claiming it

11             was terminated -- terminating it, wasn't going to

12             sell any more, but then sold more.  And it

13             deprived the plaintiff of money earned under the

14             contract after July 11th, 2014.  Specific dollar

15             amounts are unknown.  Plaintiff requesting an

16             accounting in 2012.  Not provided an accounting,

17             in violation of sales and distribution agreement."

18         I see that paragraph, but I don't know what that's

19  related to specifically.  But it seems to me that this cause of

20  action deals with money that La Jolla Spa believes is owed to

21  it because Avidas unlawfully used the plaintiff's trademark by

22  selling Vitaphenyl after July 11th, 2014, and unlawfully sold

23  that product without La Jolla Spa's knowledge or a royalty

24  payment.

25         So I -- I've got to be guided by the pleadings, and

1    this is your cause of action that you're stuck with right now.

2    And the discovery is related to the pleadings.  So I'm still --

3    I'm still having difficulty believe -- you know, difficulty

4    finding the relevance and getting documentation for payments,

5    royalty payments, or otherwise made before the termination of

6    July 11th, 2014.

7            MR. RYAN:  Well, may I respond?

8            THE COURT:  Yes.

9            MR. RYAN:  So when you were reading the first

10   sentence of paragraph 14, you added on the words "after July

11   11th, 2014."  So the sentence says:

12           "By changing its position, Avidas breached the

13           contract and deprived plaintiff of money earned

14           under the contract."

15           THE COURT:  Yeah.

16           MR. RYAN:  Period.

17           THE COURT:  Yes.

18           MR. RYAN:  I just wanted to make it clear, the

19   record, that you had added on the words "after July 11, 2014,"

20   but those words aren't stated in there.

21           THE COURT:  Well, that's true.  But I'm talking this

22   into context of the previous two paragraphs that talk about the

23   change in position occurred on July 11th, when they terminated

24   the agreement -- allegedly.  "They," meaning Avidas.

25           MR. RYAN:  Well, I -- I understand that.  I think my

1   concern is -- is that this discovery dispute is potentially

2   turning into some other type of dispositive motion.  And -- and

3   I don't want a ruling on this issue to turn into some

4   determination that faces only about things that happened after

5   July 11, 2014, because that has not been raised in any type of

6   dispositive -- otherwise -- motion.  And I'm concerned that if

7   we're just talking about the broad standard of relevance, it

8   does fit within the allegations and it's -- it's only at the

9   point in time there's a determination on a summary judgment or

10  a motion in limine that that evidence is not admissible for

11  purposes of the type of claim that's being alleged, and that's

12  a different story.

13         But I'm concerned that what the Court is indicating

14  is it's somehow going to limit the claim that's presently

15  alleged.  And there's no specific allegation that it's only

16  limited to activities that occurred after July 11, 2014.

17  There -- there certainly are mentions of that.  But I think

18  that it's trying to read two things together to come up with a

19  result that is not explicitly stated in the complaint.

20         If there was such a limitation and it did

21  specifically state, you know, depriving the plaintiff of money

22  earned under the contract after a certain date, then it might

23  be a different issue.  But I think that the way that it's

24  alleged is broad enough to include information prior to that

25  date.  And if you add on to the fact that Avidas's defense

1    appears to be -- or one of its defenses appears to be that we

2    paid everything, we paid you every dime we owe you.  And we're

3    going to -- we're going to -- we're going to raise that --

4    (indiscernible), and we're going to raise it at trial if we get

5    there.  I don't see how I should be limited to conduct some

6    discovery on those issues.

7              THE COURT:  Well, I'm not trying to turn this into a

8    dispositive motion at all but it is a discovery dispute.  And

9    I'm guided, in part, in the discovery dispute by the rules of

10   civil procedure.

11             And Rule 26B that talks about the discovery scope and

12   limits says:

13             "Unless otherwise limited by the court -- by court

14             order, the scope of discovery is as follows:

15             Parties may obtain discovery regarding any

16             nonprivileged matter that is relevant to any

17             party's claim or defense and proportional to these

18             of the case."

19             And then it goes on and lists a number of criteria to

20   determine proportionality.

21             So I'm guided by the pleadings.  I can't -- assume

22   that a pleading says something that the parties may have wanted

23   it to say, would have hoped it would have said when they

24   drafted it.  Now, I know you're not the drafter of this

25   pleading.  An attorney by the name of Sean Simpson is.  He's

1  the one who signed it.  But this is the pleading that's before
2  the Court.
3            I'm looking at the pleading.  I'm looking at this
4  cause of action; the only one that's now in front of Judge
5  Anello.  And I read all of the paragraphs in this complaint, 14
6  of them.  And I read the last four paragraphs:  11, 12, 13, and
7  14.  I read them together in context, not one all by itself and
8  ignoring the others.
9            And as I read those four paragraphs put together,
10 along with paragraph 8 and the other paragraphs as well, I'm
11 left with the sense that what was alleged here is -- in this
12 breach of contract, is that Avidas wrote a letter on
13 November -- on May 8th, 2014, that said it was going to
14 terminate the contract a couple of months later on July -- July
15 11 because the lead person had died and they're not going to
16 replace that person.
17           The second -- the next paragraph says that Avidas
18 does have an ostensibly valid reason for terminating the
19 contract but then goes on to state, however, "that Avidas
20 didn't actually terminate the contract and continued to market
21 and sell the product."
22           The 13th paragraph says, "Avidas materially changed
23 its position and failed to continue its -- continue its
24 performance as obligated under the contract."
25           "And by changing that position "-- this is the 14th

1    paragraph -- "Avidas breached the contract by unlawfully using

2    the -- the trademark name, which it had the authority to use

3    before it allegedly terminated the contract, by unlawfully

4    selling the product, which it ostensibly had the authority to

5    do before the termination."

6         And so when I read all of these together, I'm left

7    with the impression -- a very strong impression -- right or

8    wrong -- I mean, you do have recourse.  If you don't like what

9    I do here, there's another avenue.

10        And that's to go to Judge Anello and say, "Gallo

11   doesn't know what he's talking about."  And maybe I don't.  But

12   I'm reading this pleading, and it's -- it's telling me that

13   what La Jolla Spa was concerned about in this breach of

14   contract is the continued -- after July 14th -- selling of

15   Vitaphenyl without permission to use the trademark and without

16   permission to actually sell it.

17        And -- and then paragraph 8 tells me that Avidas paid

18   royalties until mid-2014.  Now, yes, it doesn't say, "All

19   royalties."  But, clearly, if -- if La Jolla thought that they

20   were getting gypped and underpaid, that allegation could have

21   been put in here, and it wasn't.  They said, hey, we were paid

22   royalties.  So I -- I'm guided by this.

23        MR. RYAN:  Could I make one other point, which is --

24        THE COURT:  Hold on.  In 26 -- Rule 26(b) says the

25   parties may obtain discovery that's nonprivileged, that's

1     relevant to the claim.  So this is the claim, as I read it.

2            And if I'm reading it wrong, then I'm reading it

3     wrong.  And another court -- that would be Judge Anello --

4     would have to tell me, Gallo, you're reading it wrong.  You

5     unduly, unjustifiably limited discovery that should have been

6     discovery since the inception of the contract, going back

7     however many years.  2008, apparently.  And that's the nature

8     of this dispute.  I can't understand how you got it so wrong.

9            But there's also an objection that was made by

10    Ms. Chovanes as to all of these, with the exception of -- of

11    the last one, 16.  Actually, even in that one as well.  That

12    something happened before the alleged breach is irrelevant.

13           And I'm inclined to agree with that.  It's irrelevant

14    because there's no allegation here that talks about the conduct

15    of the parties before July 11, 2014, that was -- well, that was

16    in breach of the contract.  It's -- it's the fact that Avidas

17    allegedly continued to sell the product without having the

18    authority to do so and not paying the royalties.  That's the

19    way I see it.

20           Go ahead, Mr. Ryan.  You wanted to say something.

21           MR. RYAN:  Thank you.

22           Well, Rule 26 not only says relevance to the claim

23    but it also says relevance to the defenses.  So the other

24    pleading that's before your Honor is the answer that was filed

25    to the Second Amended Complaint on November -- I think it was

1   November 28th of 2017.  And as I mentioned in the supplemental

2   brief, the answer contained a number of affirmative defenses

3   where Avidas avers that it has paid all amounts due under the

4   contract.  It seeks an offset for amounts due under the

5   contract.  It claims that plaintiff would be unjustly enriched

6   as a result of the -- of any -- any damages being awarded in

7   this case.  And also denies the allegations in paragraph 14.

8          And if you also look to Avidas's initial disclosures,

9   which are attached as Exhibit 3 to plaintiffs' supplemental

10  brief on page 28, there -- there's a witness listed, Margie

11  Gardener (phonetic), who is the principal of Avidas.  And in

12  the context of what -- the subject of what she is going to

13  testify to, one of the things relates to, "All sales of

14  Vitaphenyl product by Avidas," comma, "royalties paid."

15         So I think that Avidas, in its own pleading, has

16  created a situation where they -- the royalties that were paid

17  prior to the termination date are relevant to the proceedings

18  here today.  And as your Honor pointed out, that answer was

19  filed in response to the Second Amended Complaint, which only

20  had one claim for breach of contract.

21         And so while -- even if your Honor believes that

22  the -- the breach claim is -- (indiscernible) specifically set

23  out some type of breach related to royalties before that date,

24  I think that Avidas's answer, affirmative defenses,

25  (indiscernible) agreements within the realm of relevant

1   information.  Because as -- as has already been proven by

2   opposition to plaintiffs' motion to leave to amend, Avidas is

3   going to make it an issue and point out that everything that

4   Avidas thinks was paid was paid.  And that's to the tune of

5   (indiscernible) thousand dollars.

6          So if you're only looking at Rule 26 related to

7   what's relevant to the claim, maybe there's a dispute on that.

8   But I think that looking to the other part of Rule 26, which is

9   relevant to any defenses, I think, at the very least, is -- is

10  (indiscernible) would encompass documents prior to July 11,

11  2014.

12          THE COURT:  All right.  What do you have to say to

13  that, Ms. Chovanes?  About your answer to that -- to this

14  complaint?

15          MS. CHOVANES:  Your Honor, that -- the -- there was a

16  question raised -- a dispositive motion Mr. Ryan raised.  Well,

17  the dispositive motion was -- was obtained back in the fall of

18  this year, rejecting their attempt to amend the complaint to

19  include what he's talking about now.

20          Oh, and just for the record, I didn't know anything

21  about this $90,000.

22          And that's an important point too, sir, because they

23  produced no documents.  They produced everything they said

24  they're going to rely on in the case, and that's ten bottles of

25  product, sir.  Not any paper, not any 10,000 bottles; 10

1    bottles.   There are no letters, there's no correspondence,

2    there's no canceled checks, there's no $4,000, there's nothing.

3    Everything they produced, period, is ten bottles.

4          And we went on at length in that in our motion for

5    opposition to amend the complaint.   So for him now to say,

6    well, your defense has raised all of the issues -- yeah, but

7    that was a year before the Court rejected this

8    (indiscernible) -- this specifically -- this extensive

9    expansion of the complaint.

10          So we would say this falls under both their waiver in

11   not producing any of those documents when they represented

12   they've completed their discovery and we represent in our

13   paper.   So they've waived the right to now complain.

14          And as far as our -- our defenses go, that would be a

15   year before the issues have now been further refined.   By the

16   way, their motion -- it was their motion that refined us.   And

17   this Court said -- and this Court also said you've got to

18   refine this discovery and be laser light here.   You've had

19   three bites -- two or three bites at the apple already.   And

20   you can't go ahead and explore these avenues that there's no

21   paper, nothing, except for counsel standing up here and saying

22   this stuff.   And so it's clear, your Honor, he's wrong.   I have

23   no doubt he's wrong.   But my assertion he's wrong has as much

24   influence -- or should have (indiscernible) issue here when

25   he's produced nothing, when he -- they produced everything.   So

1   I would argue that's waiver of the issue.

2           Our defenses, to the extent we say we paid

3   royalties -- yes, because they alleged in the breach of

4   contract case that (indiscernible) following May 14th.  And as

5   the contract will argue, darn right, I always say,

6   (indiscernible) royalties were paid.  We fully performed.  Yes,

7   that is -- with regard to what you say in defending this.  But

8   there's no allegation you have to go before May, as you pointed

9   out, sir.  And I would even say June, the termination date --

10  or July 11.

11          THE COURT:  Okay.  Well, let me ask a few more

12  questions, and then I'm going to have to end the conversation

13  here and -- and think about what you all have told me and issue

14  an order.

15          Ms. Chovanes, with respect to RFP No. 8, there's

16  also -- RFP 11 has the same language, as does 12, as does 13,

17  as does 14, and 15.

18          And the -- the language is -- in addition to the fact

19  that you -- you say that everything is irrelevant before July

20  11th of 2014, you -- you also provide this language:  As to any

21  remaining relevant, nonprivileged documents, to the extent that

22  they are not in possession of the parties and/or have not been

23  previously produced already, Avidas will produce.

24          So -- and then it goes on about this protective

25  order.  So what is the status of this protective order?  Where

1   are we on it?

2       MS. CHOVANES:  Where we are is there was a draft

3   existing for months.

4       Mr. Ryan sent me his draft.  And I don't know about

5   the date.  Let me just give you an overall view.

6       Mr. Ryan sent me his draft, and that was -- and he

7   said the other draft that was previous to us wasn't something

8   he would have liked.  So I -- and that was like Thursday or

9   Friday of last week.

10       Your Honor, lit -- I literally -- and I'm not making

11   excuses, sir, but I literally had another unexpected conference

12   call in federal court in a New Jersey case today, earlier

13   today.  I was hoping to look at -- and I know -- that's by way

14   of saying that I was hoping to look at his draft protective

15   order because I'm happy to produce under it.  But I just

16   haven't had a chance to do that, sir, because it hasn't

17   happened in a while where I have had two conference calls with

18   federal court -- with the federal court in one day; and

19   preparing for them at the last minute, sir.  So that's where it

20   is.  It's my fault we're delayed.

21       THE COURT:  So are we getting closer at resolving the

22   protective order issue?

23       THE WITNESS:  Yeah.  I mean, I assume -- I've done a

24   million protective orders in my life.  I mean, not to -- I

25   exaggerate.  But, yeah, I mean, I feel that it's fairly

1  standard.  It might not be an issue.  It's just a matter of

2  literally opening it up and getting to it.  But I had, as I

3  said, to prepare for another hurry-up call unexpected today,

4  too.  So, yeah.

5         THE COURT:  So when do we think we're going to have a

6  protective order to me, for my review, and to be able to sign

7  it?

8         MS. CHOVANES:  I would say mid next week, sir.

9         THE COURT:  All right.  So you -- okay.  So --

10        MS. CHOVANES:  I'm assuming I'll get back to him on

11 Friday.  I'm assuming -- my timetable, I'm assuming I'll get

12 back to him by tomorrow.  If not, at the latest, Monday

13 morning.  And then if it's a fairly standard one, it's really

14 -- there's no issues to discuss.  So I'm hoping, by the latest,

15 Wednesday.  Yeah.  So that's why I gave you Wednesday.

16        THE COURT:  All right.  So -- so let's set the 13th

17 of February.

18        MS. CHOVANES:  Oh, yeah.  The day before Valentine's

19 day.  Okay.

20        THE COURT:  That's Wednesday.  That's Wednesday.  So

21 13th of February --

22        MS. CHOVANES:  Yeah.

23        THE COURT:  -- have to me your -- your proposal for

24 the -- the protective order.

25        MS. CHOVANES:  Yeah.

1    THE COURT:  All right.  So the two of you have to

2    work on that.  Because if there are documents -- and this --

3    this is going to lead into my -- my next series of questions.

4    If there are documents, Ms. -- that Ms. Chovanes is

5    withholding or, for that matter, Mr. -- you know, Mr. Ryan,

6    you're withholding because there isn't a protective order in

7    place, then -- then -- then it's the two of you that are

8    holding up discovery on some documents.  Maybe not all, but

9    some documents that you think deserve some special handling and

10   protection.

11   Okay.  These protective orders generally -- I mean,

12   we have a model protective order that's -- that's used.  It's

13   simple.  You know, use it.  Tweak it to fit your specific

14   needs.  But you shouldn't have to reinvent the wheel on this

15   thing, and there shouldn't be a whole lot of controversy.

16   And I understand that in some cases with some clients

17   or some attorneys that it can be a little more challenging

18   to -- to hammer out that language.

19   But, you know, if -- if discovery is being held up

20   because the parties can't agree on the language of the

21   protective order, then that's on you.

22   If you can't agree on a protective order after, you

23   know, a few days of going back and forth on that, then you need

24   to get it to me and then I'll decide what the language is going

25   to be, and then you're going to be stuck with that.  And I --

1  just a quick war story.

2          I -- this was under my radar, unfortunately.  But I

3  had a case several years ago where the parties could not agree

4  on a productive order.  And months went by without an

5  agreement.  And because there was no agreement, there was no

6  discovery.

7          And then, you know, a day or two before discovery was

8  ended -- or was to end, they asked for an extension of

9  discovery because they just now worked out their protective

10 order.  And I denied that because months went by.

11         I don't want months going by.  I don't want weeks

12 going by without a protective order in place.  It seems like,

13 based upon what I'm reading here, is that months have gone by

14 without a protective order in place.  That's really

15 unacceptable.  You need to get together and do what it takes to

16 get that language hammered out, and get it to me.  I'm going to

17 sign off on it, usually the day I get it or within 24 hours of

18 when I get it.  So that you have that document that will give

19 you that sense of confidence that when you turn something over,

20 it's going to be handled in a way that's been described and

21 outlined in the protective order.

22         But that -- this should be an easy one.  There should

23 not be an inordinate amount of discussion and debate about

24 language in a protective order.  So --

25         MS. CHOVANES:  Your Honor, just so it's clear,

1   they've been sitting on it for months.

2          I mean, I know we've got -- we get tainted with the

3   delay brush.  But I want to make clear, this was sent to them

4   months ago.

5          THE COURT:  Well --

6          MS. CHOVANES:  And it's not us.  It's only within the

7   past week that I got his draft.  And I have been scrambling, as

8   I say, to deal with his draft, as well as other things.

9          So I just want to make clear, we've tried to be very

10  responsive and not delay this entry at all.

11         THE COURT:  All right.  Well, let's -- let's wrap

12  this up.  Let's wrap it up.

13         MS. CHOVANES:  All right.

14         THE COURT:  All right.  Now, let's --

15         MR. RYAN:  Can I (indiscernible) one point, your

16  Honor?

17         THE COURT:  Yes.

18         MR. RYAN:  While I appreciate that there may be some

19  documents that would need to be produced under the protective

20  order, I haven't received any documents from the defendant;

21  either from the document requests that were served when

22  Mr. Bond was the attorney of record, nor as a result of these.

23         So I'm -- I'm concerned that I haven't even

24  received -- we'll call them -- nonconfidential documents.  And

25  I'm also concerned that there may be some sort of

1    indiscriminate use of a confidentiality designation under the

2    protective order which I don't want to have happen because it

3    would likely require me to come back to your Honor and address

4    that issue.

5           But all of this is leading to delay because even if

6    some documents are being withheld on a confidentiality basis,

7    what about the e-mails and documents that are clearly not

8    confidential?  I haven't received a single document.

9           THE COURT:  Well, is that right?  Because

10   interrogatory No. 16 response says that there are letters

11   and -- and exhibits to the opposition.

12          So you have received documents -- right? -- Mr. Ryan?

13   You have received something?

14          MR. RYAN:  They haven't been produced in discovery.

15   Those are references to letters that were attached to

16   Ms. Chovanes's opposition to the motion to amend.  I'm aware of

17   the existence of those things, but they haven't actually been

18   produced in discovery.  I don't have anything that's been

19   produced in discovery.

20          THE COURT:  All right.  Well, Ms. Chovanes?

21          MS. CHOVANES:  Your Honor, the references we gave

22   (indiscernible) Bates numbers on them.  If he wants a formal

23   statement saying we've produced these documents -- I mean, I

24   don't know what more we -- we pointed that out.  Sir, you just

25   pointed it out.

1          I mean, does he want us to reproduce them?  Or can he

2    just refer to -- I mean, it's electronic -- well, no, that's

3    unfair.

4          (Indiscernible due to overlapping speakers.)

5          THE COURT:  Well, do you have those documents,

6    Mr. Ryan?

7          MR. RYAN:  They're attached as exhibits to

8    Ms. Chovanes's declaration.

9          MS. CHOVANES:  Right.

10         (Indiscernible due to overlapping speakers.)

11         THE COURT:  But you -- you have --

12         MR. RYAN:  Yeah.

13         THE COURT:  You have them?

14         MR. RYAN:  I have the four letters that are

15    referenced in the interrogatory response, yes.

16         THE COURT:  And what about the --

17         MS. CHOVANES:  And you have the other --

18         I'm sorry, your Honor.

19         THE COURT:  And what about the other relevant

20    financial and other documents from that period, all of which

21    are filed in Avidas's exhibits to its opposition to La Jolla's

22    motion to file a third amended complaint?  Do you have --

23         MR. RYAN:  I have the documents attached as Exhibit J

24    to her declaration, which are the sales summaries dating back

25    to 2008.

1          THE COURT:  Um-hmm.

2          MR. RYAN:  That's -- that's -- all I have is what was

3    attached to that declaration.

4          THE COURT:  And you -- your contention is -- is that

5    Ms. Chovanes or her client should copy those documents over

6    again and give them back -- and give them to you again?

7          MR. RYAN:  Well, I think in order for me to know what

8    was produced in discovery versus what is being used by them for

9    purposes of, you know, disputed motions, I -- I would feel more

10   comfortable if I knew they were being produced under discovery.

11   Because it leaves me guessing as to, well, what else is left?

12         I don't know if that's the universe of all of the

13   documents they're going to produce in this case.  Are there

14   more?  Just --

15         THE COURT:  No.  I was just simply responding to the

16   comment that you've received nothing.  But this is --

17   interrogatory 16 is an interrogatory.

18         Ms. Chovanes responded to the interrogatory as -- I

19   don't have to read it over again.  But she identified some

20   letters and e-mails and documents attached to an exhibit.

21         That -- and you said that at the outset that you --

22   were not satisfactory.  That you -- that those documents were

23   sufficiently described.  So that's -- that's a responsive

24   portion of that interrogatory that identifies documents.

25         I'm not going to have Ms. Chovanes exalt form over

1    substance and then simply copy those documents and then send

2    them to you and say, "Here's my response."

3           You have them.  They've been identified with

4    sufficient particularity, unless Ms. Gardener wrote two letters

5    on May 8th, 2014, and two letters on June 10th, 2014.

6           And Joe Kruchka (phonetic) received a letter -- or

7    various e-mails, excuse me, on July 11th.  And Jeremy Geld

8    (phonetic) received a letter -- or wrote a letter on March 6th,

9    2017.  And he wrote several letters -- I'm just saying that

10   there's multiple letters or e-mails on those days by those same

11   people, and I'm confused as to which one.  That's a different

12   story.  But if there's only one and you have it and you're

13   aware of it and you know where it is, then -- then you have

14   received discovery in response to that interrogatory.

15          Now, with respect to these RFPs that are in dispute

16   now, yes, Ms. Chovanes hasn't provided any.  Because once she's

17   objected on the basis of relevancy -- and at this point in time

18   I'm tending to agree with her on the basis of relevancy for any

19   documents before the alleged breach of July 11th, 2014.  But

20   I'm -- I was moving on.  I'm moving on to the protective order,

21   making sure that's in place.

22          So getting back to the -- the second half of a lot of

23   these responses, and that is the nonprivileged documents.

24          So Ms. Chovanes, if you have nonprivileged documents

25   that are responsive to this request, then you need to provide

1   them.   These RFPs, you need to provide them.

2         If you have documents that are privileged -- either

3   attorney-client or work product, or something of that nature --

4   then you need to provide a privilege log that provides

5   sufficient information to identify the document in dispute,

6   without revealing or giving up the privilege.

7         You say that Avidas will produce and wants a

8   protective order in place before you do so.  I appreciate the

9   fact that a protective order may be necessary.  I don't know

10  what the documents are.  I'm not going to second-guess counsel

11  when they say that.  I'm also not going to prejudge either

12  counsel in say -- in concluding that one or the other is going

13  to overclassify these documents and make it more difficult and

14  further delay.

15        I'm simply going to tell both counsel and remind both

16  counsel that if you are going to identify documents that

17  require some special protection and handling, that you make

18  sure that -- that that's in fact the case.  That you use that

19  sparingly.  Because it does take a little extra time, and it

20  becomes a little more difficult when you're dealing with these

21  kind of documents when you want to use them for motions, and so

22  forth

23        So I trust that the parties will -- will carry out

24  that -- that task diligently.  So both sides are on notice that

25  I hope that that's how this goes down.

1          But if there are any documents right now that are

2   post-July 11th, 2014, that respond to these various RFPs --

3          And, Ms. Chovanes, you should be -- with all due

4   haste, getting those documents together and providing them.  We

5   are now -- this request was -- what?  We're at seven days after

6   the -- or so after the responses were provided.

7          MR. RYAN:  Ten.

8          THE COURT:  Ten days?

9          Okay.  So the clock is ticking.  And I'll give you --

10  Ms. Chovanes, I'll give you a week to -- to get those

11  responses -- those RFPs out.

12         MS. CHOVANES:  Your Honor, I just want to point out

13  that the reason why we did that was because --

14         THE COURT:  Well --

15         MS. CHOVANES:  -- these are competitors, and we

16  weren't quite sure what is subject to confidentiality

17  information or trade secret, or what have you.

18         THE COURT:  Well, let me -- let me retract what I

19  just said.  If a protective order needs to be in place, and it

20  sounds like perhaps it does, I'm giving you next Wednesday to

21  get that to me.  You'll have seven days in which --

22         MS. CHOVANES:  Okay.

23         THE COURT:  -- to produce these documents that are

24  nonprivileged, that are responsive to these RFPs.  Once I sign

25  that protective order, seven days from that date.

1        MS. CHOVANES:  Yep.  Thank you.

2        THE COURT:  If you have privileged documents that

3   you're holding, then you have -- then you don't need a

4   protective order to withhold a privileged document.  It's

5   privileged, you know, ipso facto.  So you have seven days from

6   today in which to provide that privilege log to these RFPs.

7        Now, as I said, my view of relevancy to these is

8   after July 11, 2014.

9        I'm going to consider the -- the remarks of counsel.

10  I'm going to think about it.  I may decide, Mr. Ryan, that your

11  argument has merit, after I look at some more documents and

12  modify the -- the scope of discovery to include documents that

13  predate July 11th, 2014, and that will be forthcoming.

14       But I'm not prepared to -- to go there right yet,

15  based upon my -- my understanding of this complaint.  And I

16  understand you -- you want me to take into account the -- the

17  answer to the complaint, and I'll certainly do that.

18       But this is your discovery.  This is what you're

19  asking for.  And I think it needs -- your discovery needs to be

20  relevant to -- to your -- to your claim.  The discovery that

21  you're seeking also needs to be relevant to the defenses that

22  you have to -- to -- to contend with.  I agree with that.  And

23  I'll take a much-closer look at the answer and -- to determine

24  whether or not the answer modifies my -- my thinking on this

25  position.  So --

```
 1          MS. CHOVANES:  Your Honor, on that one, I just
 2   request that you again review the Court's order on the -- on
 3   the -- the amended complaint.  Because, again, I think it --
 4   that -- their motion, the complaint they want to put before the
 5   Court, raised this issue.  And one has already been denied, is
 6   my point --
 7          (Indiscernible due to overlapping speakers.)
 8          THE COURT:  Yeah, that's document number -- that's
 9   document 49, Judge Anello's order.  Yeah, I've read that order.
10   I'll reread it.  And I'll see --
11          MS. CHOVANES:  Well, what's important, sir, is their
12   request, too, on the other side of that.
13          I mean, his order was kind of general because it
14   dealt with those -- I don't want to characterize it
15   (indiscernible).  But their original request was like a lot of
16   the case (indiscernible).  They asked to (indiscernible) it
17   back then.  What he -- and that's what he's still trying to do
18   on the same issues.  So he can't -- (indiscernible) issues.
19   They've already been decided dispositively in that order -- or
20   in their request.  It's just that he never referred
21   specifically to what they (indiscernible).
22          THE COURT:  All right.  So --
23          MR. RYAN:  I don't think it -- I just have a couple
24   of comments, your Honor.
25          I don't believe it's dispositive, Judge Anello's
```

1    ruling on that issue.   I think your Honor actually mentioned

2    that at the last hearing.

3              It was what it was based on procedure.   Issue No. 2

4    is -- (indiscernible) might --

5              (Indiscernible due to overlapping speakers.)

6              MS. CHOVANES:   Sorry.   I thought I was on mute.

7    Excuse me.

8              THE COURT:   Mistake.   My mistake.

9              Go ahead, Mr. Ryan.

10             MS. CHOVANES:   Yes, sir.

11             MR. RYAN:   Issue No. 2 is in -- in the global -- my

12   argument about the global issue with respect to the response.

13             One of the issues that really came up in our

14   meet-and-confer was this section of the response that says, "To

15   the extent they are not in the possession of the parties,

16   Avidas will produce."

17             I was inarticulate when I was talking about discovery

18   earlier and your Honor was pointing out the interrogatory

19   responses.   I was really focused more on the RFP.

20             And what -- what came out of the meet-and-confer was

21   Ms. Chovanes was saying, well, you already have anything.   Or

22   whatever is in your own files is what we're going to -- what we

23   have.   And it was -- it was unclear whether Ms. Chovanes was

24   saying documents that were filed in connection with her

25   declaration are documents that are in the possession of the

1  parties or if it's some other documents that -- that we -- we

2  believe my client has, meaning that --

3          THE COURT:  Yeah.  So, Ms. Chovanes, if you have

4  documents, you need to produce the documents.

5          Now, we already know that there are some documents --

6  for example, in interrogatory No. 16, that have been

7  identified, that plaintiff is well aware of.  But if you have

8  documents --

9          MS. CHOVANES:  And let's say those -- let's say those

10  are responsive to document requests like 9, for example -- I'm

11  just making up a number, sir.  That's what that objection was

12  meant to convey.  They already have them.

13          THE COURT:  But --

14          MS. CHOVANES:  If they're -- like, for example -- I'm

15  sorry, sir.  I don't know if --

16          (Indiscernible due to overlapping speakers.)

17          THE COURT:  But you need to -- you can't say you've

18  got it.  Because, one, it doesn't identify what it is that the

19  plaintiff allegedly has that you think -- you think that the

20  plaintiff has that is responsive to the -- to the -- the

21  request for production of documents.  You can't just simply say

22  that.

23          If you believe that the plaintiff has the document

24  and you can identify the document by Bates number -- we've

25  already provided these documents to you.  You know, Bates

1   No. 1, 2, 3, 4, 5.  Or, You have it.  Identify it.  You need to

2   identify it.

3               MS. CHOVANES:  Okay.

4               THE COURT:  You can't just say, "You've got it."

5               MS. CHOVANES:  All right.

6               THE COURT:  Because I don't know what it is that the

7   plaintiff has.  You don't know what it is that the plaintiff

8   has or doesn't have.  And so there has to be an

9   understanding --

10              MS. CHOVANES:  Well, when it's regard to -- some of

11  it, your Honor, like their checks -- I -- I don't have their

12  checks, sir.  They have them.  I mean, how can I produce their

13  checks if they're asking me for their checks?

14              THE COURT:  Well --

15              MS. CHOVANES:  So, I mean -- the objection is

16  justified with regard to some of that stuff.  I have no idea

17  what they have.

18              THE COURT:  Well, to the extent -- let's use a

19  royalty check that perhaps Avidas paid.  I'm guessing that

20  Avidas would have documentation about royalty payments made.

21              MS. CHOVANES:  Yeah.  And they would have their --

22  they would have their bank statements.  But they didn't produce

23  those bank statements.

24              THE COURT:  Well, have you asked for them?

25              MS. CHOVANES:  Yes.  We asked for everything that

1    they're going to use in the case, last year.  And they produced

2    ten bottles of (indiscernible).  That's it.  No documents.  No

3    bank statements.  Nothing.

4              THE COURT:  Well, look --

5              MS. CHOVANES:  That's all they produced.

6              THE COURT:  Well --

7              MS. CHOVANES:  And that was all in -- that was all in

8    our motion -- or opposition to their motion to amend, and

9    that's all they produced.  (Indiscernible.)

10             (Indiscernible due to overlapping speakers.)

11             MS. CHOVANES:  Why shouldn't we -- (indiscernible)

12   that's relevant.  And they have a duty to supplement.  And all

13   they do is produce ten bottles.

14             Yeah, I talked about that in our conference.  He

15   hasn't mentioned that.  But, yeah, I said you guys have a duty

16   to supplement.  And he acknowledged it.

17             And, by the way, I disagree with what he said about

18   our conversation.  He mischaracterized it totally.

19             But your Honor, sir -- all they produced is ten

20   bottles, and we keep saying this because it's so unbelievable.

21   It's hard to believe that that's it.  No financial statements.

22   No canceled checks.  No 4,000, 90,000, 10 billion dollars,

23   nothing.  Ten bottles.  And they aren't -- they aren't even

24   authenticated.

25             THE COURT:  Well, I would think that if Avidas has

```
 1   financial records that -- that demonstrate that it has paid
 2   royalties -- and, again, my -- my relevancy view of this is
 3   after July (indiscernible).
 4               (Indiscernible due to overlapping speakers.)
 5               MS. CHOVANES:  Yeah.  Yeah.
 6               THE COURT:  Ms. Chovanes?  Ms. Chovanes?  I know
 7   you're from Philly, and you're customed to just talking over
 8   people but --
 9               MS. CHOVANES:  I'm sorry, sir.  I apologize.
10               THE COURT:  But if you have -- if you have these
11   documents -- and, again, my view of relevancy for this claim
12   right now, as we're on the phone, is after July 11th of '14.
13   That's what I'm ordering --
14               MS. CHOVANES:  Correct.  Okay.
15               THE COURT:  -- the defendant to produce.
16   Documents --
17               MS. CHOVANES:  Yep.
18               THE COURT:  And those RFPs, consistent with that view
19   right now.  Get started on that.
20               If after further, you know, noodling of this, I agree
21   with Mr. Ryan, you're going to get a written order regardless.
22   But that written order would also include if I eventually
23   believe that discovery ought to be expanded, the order will so
24   include.  And it may very well include going back in time as
25   well, before July 11th of 2014.
```

1        If you have those documents, turn them over;

2   notwithstanding whether you think plaintiff has them or not.

3   This is -- this is your requirement.

4        Now, I'm not -- you know, if you know the plaintiff

5   has it and you can demonstrate that the plaintiff has it by, we

6   provided this in -- in discovery, it's -- already.  It's Bates

7   number whatever, fine.  Identify it that way.

8        If you don't have the documents that's responsive to

9   these RFPs, then you need to say that, too.  "We don't have

10  them."

11       There should be no question when -- when you respond

12  to this -- these RFPs of what you have, what you don't have,

13  what you're withholding, and why you're withholding it.  So

14  there you go.

15       MR. RYAN:  I --

16       THE COURT:  I've got to get going.  So --

17       MR. RYAN:  I know.  I -- I didn't get to make my

18  final point.

19       THE COURT:  Go ahead, Mr. Ryan.

20       MR. RYAN:  All right.  I just want to be clear that

21  what is particularly important is the status of the inventory

22  at the time of the termination.  And in order to determine how

23  much inventory was present as of a certain date, we need to

24  know information prior to July 11th of 2014 because we need to

25  know how much product was ordered to compare it to how much was

1    shown in sales.  So I want to make that point, so that that's

2    not lost on the Court.

3         The last point is -- is I don't think we have a date

4    by which Avidas is supposed to provide further responses to the

5    actual RFPs, as opposed to just the documents.

6         THE COURT:  Yes.  Yes, you do.  It's one week after I

7    sign the protective order.

8         MR. RYAN:  Okay.

9         THE COURT:  So as of -- as of right now, these are

10   the dates.

11        Ms. -- Ms. Chovanes has two weeks in which to review

12   all of this discovery to -- to get to the 50 percent mark as to

13   interrogatory No. 16.  And -- and she intends to provide

14   documents, to have reviewed those documents and identified

15   them.  And then, two weeks after that, to get the other 50

16   percent done.

17        So that takes us out to February the 21st for the

18   first 50 percent and March the 7th for the second 50 percent.

19        Ms. Chovanes said that she may just respond to the

20   interrogatory in a traditional way, and she might do that

21   within a week.  I think that's what I heard her say.

22        I'm not going to dictate how she responds.  The

23   option exists to provide documents or identify documents in

24   lieu of actually responding to the interrogatory.

25        So you have until Wednesday of next week, February

1   the 13th to get the protective order to me so I can sign it.

2   Review it and sign it.

3            And one week after the protective order is signed, to

4   serve any responsive documents to the RFPs that require, you

5   know, protection.

6            If there are non -- if there are documents that are

7   responsive, that don't require, you know, protection,

8   attorneys' eyes only, et cetera, the deadline is still one week

9   after the protective order is signed.

10           And if there are privileged documents that are being

11   withheld because they're attorney-client or work product, then

12   a privilege log has to be served with sufficient

13   particularity -- I'm not going to tell you how to do a

14   privilege log.  You all know how to do that -- one week from

15   today, and that's February the 13th.  Because you don't need to

16   wait for a protective order to do a privilege log.

17           So if there are documents that are responsive to

18   these RFPs, that are being withheld for privilege, get the

19   privilege log out now.  Okay?

20           MR. RYAN:  Got them.

21           THE COURT:  All right.  Okay, Counsel.  I've got to

22   go.

23           MR. RYAN:  Thank you, your Honor.

24           THE COURT:  Thank you.

25           MS. CHOVANES:  Your Honor, (indiscernible).  Why

1    didn't they get anywhere?

2              THE COURT:  I don't know.  That's a good question.

3              MS. CHOVANES:  Thank you.  Have a good night.

4              THE COURT:  All right.  Bye.

5              (Conclusion of proceedings.)

6

7

8                           --oOo--

9    I certify, by signing below, that the foregoing is a correct

10   stenographic transcript, to the best of my ability, of the

11   digital recording of the audio proceedings had in the

12   above-entitled matter this 11th day of February, 2019.  A

13   transcript without an original signature or conformed signature

14   is not certified.  I further certify that the transcript fees

15   and format comply with those prescribed by the Court and the

16   Judicial Conference of the United States.

17
          /S/ Amanda M. LeGore
18        _____

19        AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

20

21

22

23

24

25