James T. Ryan, Esq. (SBN 210515)
JAMES T. RYAN, P.C.
1110 Glenville Dr. # 307
Los Angeles, California 90035
Tel: 310.990.2889
Email: jr@jamestryan.com

For Plaintiff LA JOLLA SPA MD, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| LA JOLLA SPA MD INC., | CASE NO. 17-cv-1124-MMA (WVG) |
|---|---|
| Plaintiff,<br>vs.<br>AVIDAS PHARMACEUTICALS, LLC, a limited liability company; and DOES 1 through 10 inclusive,<br>Defendants. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION RE: MAGISTRATE'S ORDER FOLLOWING TELEPHONIC DISCOVERY CONFERENCE [Doc. No. 60]<br><br>Judge: Hon. Michael M. Anello |

1

**Table of Contents**

I.   OVERVIEW……………………………………………………………………4

II.  THE CLAIMS AND DEFENSES IN THIS CASE…………………………4

III. THE DISCOVERY DISPUTE……………………………………………….7

IV.  OBJECTIONS TO THE ORDER……………………………………………8

V.   STANDARD FOR REVIEW OF MAGISTRATE RULINGS……………..8

VI.  THE COURT SHOULD SUSTAIN THE OBJECTION TO PARAGRAPH 4 OF THE ORDER BECAUSE IT IS CLEARLY ERRONEOUS AND/OR CONTRARY TO LAW……………………………………………………….9

   a. Paragraph 4 is Clearly Erroneous………………………………….10

   b. Paragraph 4 is Contrary to Law……………………………………...12

VII. CONCLUSION……………………………………………………………..17

## Table of Authorities

*Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D. N.Y. 2002)……………………………………………………………………12

*Fastvdo LLC v. AT&T Mobility LLC*, 2016 WL 4542747 (S.D. Cal., Aug. 31, 2016, No. 16-CV-385-H (WVG))……………………………………………………………10

*Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)……………9

*Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir.1985)……..………9

*In re BofI Holding, Inc. Securities Litigation*, 318 F.R.D. 129 (S.D. Cal. 2016)..15

*In re Packaged Seafood Products Antitrust Litigation*, 2018 WL 4327876 (S.D. Cal., Sept. 10, 2018, No. 15-MD-2670 JLS (MDD))…………………………9, 14

*Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362 (S.D. Fla. 2016)……..12

*Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F.Supp.2d 675 (N.D. Tex. 2013)………12

*Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002)…………………………….9

*Perry v. Schwarzenegger*, 268 F.R.D. 344 (N.D. Cal. 2010)……………………9

*Robert Half Intern. Inc. v. Ainsworth*, 2015 WL 4662429 (S.D. Cal., Aug. 6, 2015, No. 14CV2481-WQH DHB)……………………………………………………..14

*SolarCity Corporation v. Doria*, 2018 WL 467898 (S.D. Cal., Jan. 18, 2018, No. 16CV3085-JAH (RBB))……………………………………………………….9

*United States v. Raddatz*, 447 U.S. 667 (1980)………………………………..9

*United States v. Enix*, 209 F. Supp. 3d 557 (W.D. N.Y. 2016)…………………..9

Fed. R. Civ. P. 26………………………………………………………….passim

Fed. R. Civ. P. 72(a)……………………………………………………….8-9

28 U.S.C. § 636(b)……………………………………………………….9

**I.     OVERVIEW**

On February 8, 2019, the Honorable William V. Gallo ("Magistrate Judge") limited all discovery in this case to "the time period after May 8, 2014." [Doc. No. 60.] This overbroad discovery ruling was made in the context of a specific objection that Defendant Avidas Pharmaceuticals, LLC made to certain requests for production, which were the subject of a "discovery dispute" that the Magistrate Judge handled by way of briefing and a telephonic hearing. [Doc. Nos. 57, 58, 59, 61.]

Plaintiff La Jolla Spa MD, Inc. ("La Jolla Spa") submits that Paragraph 4 of the Magistrate Judge's Order is clearly erroneous and/or contrary to law for the reasons stated herein. As such, La Jolla Spa requests that the Court vacate Paragraph 4 of the Order and overrule Avidas' relevance objections to requests for production of documents nos. 8 & 11-16.

**II.     THE CLAIMS AND DEFENSES IN THIS CASE**

La Jolla Spa has a single claim for breach of contract. While La Jolla Spa acknowledges in its Second Amended Complaint that Avidas paid royalties until mid-2014, it has not alleged that Avidas paid "all" royalties prior to mid-2014. [Doc. No. 12, ¶ 8.] It has further alleged that Avidas deprived it "of money earned under the contract." [Doc. No. 12, ¶ 14.] It has also alleged that it "seeks to recover damages from Defendant's [sic] breach," that it requested an accounting in 2012, and that Avidas has not provided an accounting in violation of the Sales and Distribution Agreement. *Id*. In addition, La Jolla Spa has alleged that Avidas did not return the remaining inventory at the time of termination pursuant to Paragraph 4 of the Sales and Distribution Agreement and that Avidas was contractually required to return all unsold inventory. [Doc. No. 12, ¶ 8.]

Avidas has answered the Second Amended Complaint and has denied the above allegations:

| Second Amended Complaint | Answer to Second Amended Complaint |
|---|---|
| ¶ 8 - Mitchell Goldman and Plaintiff fully complied with the stated "cooperation" requirements. *Pursuant to the Contract, Avidas paid royalties until around mid-2014.* On May 8, 2014, Avidas wrote a letter terminating the agreement effective July 11, 2014, because of the death of the "lead person" for Vitaphenol. Avidas indicated that it did not intend to replace the "lead person" and would instead be electing to discontinue promoting and selling Vitaphenol. Avidas' letter noted Avida's election to sell the remaining stock on hand and pay appropriate royalties. Thereafter, additional product was sold, but the royalties were not paid. Avidas did not return the remaining inventory pursuant to Paragraph 4 of the Sales and Distribution Agreement. *Avidas was to return all unsold inventory to York-Goldman, or the unsold inventory of remaining product (SKUs) if the Agreement was terminated in respect of fewer than all products.* (emphasis added.) | Answering paragraph 8 of Plaintiff's Complaint, Avidas admits that on May 8, 2014, Margaret Gardner of Avidas wrote a letter terminating the agreement effective July 11, 2014, in part, because of the death of the "lead person" for Vitaphenol. Avidas further admits that the letter noted Avidas's right to dispose of the remaining stock and that all sales from the stock disposal would be subject to royalties. Avidas further admits that it did not return any remaining inventory as the Agreement specifically states: "[i]n the event of early termination, Avidas has the right to dispose of its stock of Product and shall have the right to manufacture such finished Product as may be necessary to balance out inventory or to convert raw materials, or goods in process, into finished goods." *Avidas denies the remaining allegations contained therein.* (emphasis added.) |
| ¶ 14 - By changing its position, Avidas breached the Contract and *deprived Plaintiff of money earned under the contract*. Specific dollar amounts are known to Avidas, and cannot be alleged here with specificity here because only Avidas has knowledge and records of the amounts gained by the unlawful using of Plaintiff trademark and exactly how much Vitaphenol was unlawfully sold without Plaintiff' knowledge or royalty payment. Plaintiff seek to | Answering paragraph 14 of Plaintiff's Complaint, Avidas denies the allegations contained therein. |

|   |
|---|
| recover the damages resulting from Defendants' breach. *Plaintiff requested an accounting in 2012. Avidas has not provided an accounting in violation of its Sales and Distribution Agreement dated August 19, 2008.*  (emphasis added.) |

In addition, Avidas has asserted several affirmative defenses, including "offset," "full performance,"[1] "substantial performance," "unjust enrichment" – all of which pertain to the agreements between the parties. [Doc. No. 15.]

Avidas' denials and defenses are further illustrated by Avidas' disclosures and statements made to the Court. In its Initial Disclosures, Avidas identifies its President, Margie Gardner, as someone who will testify as to "all sales of Vitaphenol products by Avidas" and "royalties paid." [Doc. No. 57, p. 28.] Likewise, Avidas identifies Joe Kuchta as someone who will testify as to "the packaging and marketing of Vitaphenol" and "sales of Vitaphenol products to third party customers." *Id*. at p. 32.

With respect to documents that Avidas contends it is going to use to support its denials and defenses, Avidas identifies "Documents, including emails and other ESI generated and received, evidencing sales of Vitaphenol by Avidas and royalties paid" and "Documents, including emails and other ESI generated and received, evidencing marketing, sourcing, and sales of Vitaphenol by third-parties." *Id*. at pp. 32-33. In discovery, Avidas identified documents it produced (A_001001 to A_001066) as ones it will rely on in support of the claims and defenses in this case. [Declaration of James T. Ryan, Ex. 2.] Those same documents reflect Avidas' sales summaries from the inception of the relationship in 2008 through the termination date in 2014. [Doc. No. 47-2, Ex. J.]

---

[1] Avidas alleges that it "performed and fully discharged *any and all* obligations arising under the contract." (italics added.)

In addition, in filings to this Court, Avidas has taken the position that it paid "full royalties" from the inception of the contract and has submitted evidence of what Avidas claim were payments and accountings of royalties dating back to inception. [Doc. Nos. 47, at p.7; 47-2, Ex. J.]

Further, in the Joint Discovery Plan submitted to the Magistrate Judge, La Jolla Spa explained that it needed to discover information regarding sales and manufacturing of Vitaphenol products "since inception." [Ex. 1 to Declaration of James T. Ryan, ¶¶ II.c.i.1.-5; II.c.iii.1.a-d.]  In response, Avidas represented to the Court that no changes were necessary to the limitations of discovery. [*Id.* at ¶ I.e.ii.]

Considering the foregoing, sales, manufacturing and inventory information for the Vitaphenol products from inception to the termination date is relevant to the claims and defenses in this case.

**III.    THE DISCOVERY DISPUTE**

On January 9, 2019, the Magistrate Judge entered the Amended Scheduling Order, which, *inter alia*, limited the number of written discovery requests each party could serve. [Doc. No. 54.]  La Jolla Spa is limited to serving 10 requests for admission, 10 interrogatories, and 10 document requests. Fact discovery is to be completed no later than April 8, 2019. *Id.*

On January 11, 2019, La Jolla Spa propounded 8 requests for admission, 7 interrogatories and 10 document requests on Avidas. [Doc. No. 57-1, ¶ 3.]

Avidas objected to the following document requests on relevance grounds: Nos. 8 & 11-16. [Doc. No. 57, Ex. 2.]  Avidas asserted that discovery of certain categories of documents in the requests before the date the contract was terminated, i.e., July 22, 2014, was irrelevant. Thereafter, the parties were directed to and did submit supplemental briefing (limited to 5 pages each) to the Court on the discovery dispute. [Doc. Nos. 57 & 58.]

On February 7, 2019, the Court held a telephonic discovery conference

regarding the discovery dispute and issued an order the following day (the "Order"). [Doc. Nos. 60 & 61.]

## IV. OBJECTIONS TO THE ORDER

La Jolla Spa objects to the Magistrate Judge's findings and limitations on discovery stated in numbered paragraph 4 of the Order at page 2, lines 10 through page 2, line 28. [Doc. No. 60.] The Magistrate Judge limited the scope of all discovery in this case to the time period after May 8, 2014—the date of Avidas' letter providing notice of termination of the contract. In conclusion, the Magistrate Judge stated that "discovery in this case shall be limited to [the time period after May 8, 2014]."[2]

Although the "discovery dispute" pertained to specific responses to document requests nos. 8 & 11-16, the Magistrate Judge's broad Order operates as a *de facto* protective order under Rule 26(c)(1) barring discovery of any information and documents prior to May 8, 2014 even though the Magistrate Judge did not make a finding of good cause or balance the interests of the parties.

The bases for La Jolla Spa's objection are stated in Section VI. below.

## V. STANDARD FOR REVIEW OF MAGISTRATE RULINGS

Under Federal Rule of Civil Procedure 72(a), aggrieved parties may file objections to the rulings of a magistrate judge in non-dispositive matters within fourteen days. Fed. R. Civ. P. 72(a). In reviewing a magistrate judge's order, the

---

[2] The blanket denial of discovery prior to May 8, 2014 creates problems beyond just the discovery requests that were at issue in the discovery dispute. La Jolla Spa is going to travel outside of California to take several depositions of Avidas and third parties who have information relating to the manufacturing, sales and inventory of the Vitaphenol products. La Jolla Spa is concerned that Avidas or other deponents will try to refuse to answer questions based on relevance regarding events taking place prior to May 8, 2014, including foundational questions. Such instructions will necessitate motion practice and possibly additional travel and depositions if the objections are overruled.

district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); see also *United States v. Raddatz*, 447 U.S. 667, 673 (1980); *Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002).

"The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

A magistrate judge's legal conclusions are reviewable *de novo* to determine whether they are "contrary to law" and findings of fact are subject to the "clearly erroneous" standard. *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). When making the *de novo* review of a magistrate judge's order, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence. *United States v. Enix*, 209 F. Supp. 3d 557 (W.D. N.Y. 2016).

## VI. THE COURT SHOULD SUSTAIN THE OBJECTION TO PARAGRAPH 4 OF THE ORDER BECAUSE IT IS CLEARLY ERRONEOUS AND/OR CONTRARY TO LAW

The scope of discovery under Rule 26(b)(1) is to be broadly and liberally construed. *See Hickman v. Taylor*, 329 U.S. 495, 506, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (stating deposition discovery rules are to be accorded broad and liberal treatment); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible."). Under Rule 26(b)(1), relevance encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case." *In re Packaged Seafood Products Antitrust Litigation*, 2018 WL 4327876, at *1 (S.D. Cal., Sept. 10, 2018, No. 15-MD-2670 JLS (MDD)) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); accord *SolarCity Corporation v. Doria*, 2018 WL 467898, at *2 (S.D. Cal., Jan. 18, 2018, No. 16CV3085-JAH (RBB)). "[D]iscovery is not limited to

issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Fastvdo LLC v. AT&T Mobility LLC*, 2016 WL 4542747, at *2 (S.D. Cal., Aug. 31, 2016, No. 16-CV-385-H (WVG))(citing *Oppenheimer*).

### a. Paragraph 4 is Clearly Erroneous

The Magistrate Judge's conclusion that La Jolla Spa's breach of contract claim is limited to events after May 8, 2014 is clearly erroneous considering the allegations, denials and affirmative defenses of the parties.

The Magistrate Judge recognized that there was no specific concession by La Jolla Spa in Paragraph 8 of the Second Amended Complaint that "all royalties" were paid. [Doc. No. 61 at 26:14-29:20.] Likewise, the Magistrate Judge acknowledged that Paragraph 14 does not contain language stating that Avidas only deprived La Jolla Spa of royalties "after July 11, 2014." [Doc. No. 61 at 30:6-31:21.] Although La Jolla Spa's allegations also include mention of the termination, because that is one breach, La Jolla Spa does not allege that it is pursuing a breach claim *only* as to the post-termination time period. In fact, La Jolla Spa alleges that it requested an accounting in 2012 and one was not provided. If the claim were limited to post-termination events, there would be no reason to mention a 2012 accounting and demand for the same. [Doc. No. 61 at 27:12-15, 36:6-19 ("I see that paragraph, but I don't know what that's related to specifically.").] Therefore, the Magistrate Judge's conclusion that "[t]here is no language from which the Court could find that the time period before this date is at issue" is clearly erroneous. [Doc. No. 60 at 2:17-18.]

While the allegations are sufficient to put Avidas on notice that La Jolla Spa is claiming that it underpaid royalties before the termination date, since the filing of the Second Amended Complaint, other documents have been exchanged between the parties that support La Jolla Spa's pre-termination allegations and demonstrate that the sales, manufacturing and inventory information prior to the termination date is relevant to La Jolla Spa's claims and Avidas' defenses. *See* Section II,

*supra*.

Further, even if there were a question about whether pre-termination royalties were at issue based on the allegations, that still does not preclude pre-termination discovery regarding sales, manufacturing and inventory which would also relate to post-termination royalties. La Jolla Spa should be permitted to (1) verify whether the information contained in Avidas' sales summaries is valid, (2) discover how many products were manufactured after La Jolla Spa transferred its inventory to Avidas, and (3) discover the status of inventory from inception through the date of termination in order to determine how much product was available on the termination date.[3]

Notwithstanding the relevant areas to probe *even assuming arguendo that only post-termination royalties were at issue*, the Order appears to bar discovery of any information prior to the termination date relating to sales, manufacturing and inventory. This information will inform how many units of product were (or should have been) available on the termination date. In the event of a termination by

---

[3] Avidas has also put the Vitaphenol inventory at issue in this case. In its Opposition to the Motion for Leave to Amend, Avidas stated:
- from August 19, 2008 to August 25, 2010, Avidas sold and distributed 5,642 units of Product from its Inventory;
- from August 25, 2010 to November 15, 2012, SciDerma sold and distributed about 4,275 units of Product from the Avidas Inventory;
- from November 2012 to May 9, 2014, SciDerma sold and distributed about 1,120 units from its Inventory [Doc. No. 47, at pp. 6-8.]

La Jolla Spa transferred 17,337 units of inventory to Avidas in August 2008. [Doc. No. 47-2, p. 11.] Thereafter, Avidas manufactured 4,800+ more units and, in August 2010, it transferred 22,215 units to SciDerma. [Doc. No. 47-2, p. 138.] However, Avidas claims that from inception to May 9, 2014 the total number of units sold and distributed is only 11,037.

Due to the May 8, 2014 limitation in the Order, La Jolla is prohibited from discovering any information about the veracity of Avidas' assertions as to units sold, the status of inventory at various points in time, and what happened to *at least* 6,300 units.

Avidas, the then-existing inventory was supposed to be returned to La Jolla Spa, but that did not happen. [Doc. No. 12, ¶ 8.]

In *Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F.Supp.2d 675, 687 (N.D. Tex. 2013), the district court vacated a discovery order and held that the magistrate judge's factual findings that certain products "are not at issue in this litigation" was clearly erroneous. The court found that even though a certain type of product was not mention in the complaint, the failure to include the product does not prevent discovery as to the products. Likewise, in *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362 (S.D. Fla. 2016), the magistrate judge's finding that a discovery request was an improper fishing expedition or was a vehicle for harassment was clearly erroneous. *Id*. at 1371, aff'd, 660 Fed. Appx. 871 (11th Cir. 2016).

Because the Magistrate Judge took a narrow view of the allegations and ignored the relevance of discovering information prior to the termination date relating to sales, manufacturing and inventory, the Order is clearly erroneous and should be reversed.

### b. Paragraph 4 is Contrary to Law

An order may be deemed contrary to law when it fails to apply, or misapplies, the relevant statutes, case law, or rules of procedure. *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D. N.Y. 2002). Here, the Magistrate Judge misapplied the relevance standard discovery under Rule 26(b).

In 2015, Rule 26(b) was amended to change the scope of discovery permitted. The current Rule 26(b)(1) states in pertinent part: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…" Notwithstanding the amendment in 2015 limiting discovery to "claims and defenses" (as opposed to the "subject matter"), the Advisory Committee Notes confirm that relevance continues to be a broad concept. The 2015 Advisory Committee Notes to Rule 26(b)(1) state in part:

A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, *other incidents of the same type*, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, *information that could be used to impeach a likely witness*, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action. (italics added.)

Thus, considering the Advisory Committee Notes, discovery prior to May 8, 2014 is relevant for several reasons in this case.

> 1. <u>The Order wrongly prohibits La Jolla Spa from conducting discovery into inventory of the Vitaphenol products prior to the termination date</u>

Information prior to May 8, 2014 is directly relevant to the breach of contract claim. La Jolla Spa seeks discovery of information relating to the sales, manufacturing and inventory of the Vitaphenol products from the contract inception (2008) to the date of termination (2014). La Jolla Spa should be permitted to obtain and compare the sales information Avidas reported for each product [Doc. No. 47-2, Ex. J] with the product inventory for each product in order to determine how much inventory was available to be sold as of the date Avidas gave notice it was terminating the agreements. With that information, La Jolla Spa can potentially calculate how many units were in inventory as of the date of termination in order to determine damages from the failure to return inventory and sales after the date of termination.

2. The Order wrongly prohibits La Jolla Spa from conducting discovery into other incidents of non-payment of royalties

La Jolla Spa's breach of contract claim is for the failure to pay royalties owed in connection with the agreements with Avidas.

The Magistrate Judge contends that discovery should be limited to after May 8, 2014 because, according to his reading of the Second Amended Complaint, La Jolla Spa's claim is limited to non-payment of royalties after that date. The Magistrate Judge has taken an unnecessarily narrow view of La Jolla Spa's allegations, which should be viewed liberally in favor of discovery. *See In re Packaged Seafood Products*, *supra*, at *1.

Even if La Jolla Spa's allegations were narrowly construed, that is not a sufficient basis to limit all discovery to after the date of termination. Under Rule 26(b), La Jolla Spa is entitled to investigate whether Avidas also breached the contract by failing to pay royalties *prior to* termination. *See Robert Half Intern. Inc. v. Ainsworth*, 2015 WL 4662429, at *13 (S.D. Cal., Aug. 6, 2015, No. 14CV2481-WQH DHB) (citing Fed.R.Civ.P. 26(b)(1) advisory committee notes (2000 amendments)) (plaintiff allowed to conduct discovery of whether persons in addition to named defendants engaged in solicitation of its employees, even though plaintiff was "not currently aware of such facts," as such actions could constitute "other incidents of the same type" as contemplated by the committee notes).

Unlike in *Robert Half*, where the plaintiff had *no evidence* of the facts sought to be discovered, here, there is a genuine dispute as to whether Avidas paid all the royalties owed prior to termination. Avidas has put at issue in this case the royalties supposedly paid prior to termination. [*See* Doc. Nos. 1-2 ("To date, Avidas has cause to be paid approximately $90,000 in royalty payments"); 15 ("Defendant alleges that it performed and fully discharged *any and all* obligations arising under the contract." [italics added]); 47 ("Full royalties were paid for all

products" from the Avidas Inventory[4] and SciDerma Inventory[5]).]

The Order is overbroad in that it places a blanket restriction on all discovery prior to May 8, 2014, including discovery that would show a pattern of underpayment. As such, the Order improperly operates as a protective order limiting all discovery, not just the limited discovery requests that were the subject of the discovery dispute. *See In re BofI Holding, Inc. Securities Litigation*, 318 F.R.D. 129, 133 (S.D. Cal. 2016) (district court reversed the magistrate judge's issuance of a protective order contrary to law because it was overbroad and not narrowly tailored). The Order whittles La Jolla Spa's claim down to unpaid royalties after May 8, 2014, even though its allegations are not so narrowly limited. Not only is the Order overbroad in what it limits, it effectively operates as a dispositive motion or motion *in limine* because it prohibits discovery of royalty payments that Avidas has put at issue in this case.

La Jolla Spa raised this consequence with the Magistrate Judge at the hearing [Doc. No. 61, pp. 31-32] and it is addressed in footnote 3 of the Order [Doc. No. 60]. While La Jolla Spa appreciates that the Magistrate Judge was not intending to make any dispositive rulings on the merits of the case, the Order does result in a merits determination as to the scope of the breach of contract claim without the protections afforded to La Jolla Spa under Rule 56. Where plaintiffs fail to raise claim properly in their pleadings, if they raised it in their motion for summary judgment, they should be allowed to incorporate it by amendment. *Obesity*

---

[4] "From August 25, 2010 to November 15, 2012, SciDerma sold and distributed about 4,275 units of Product from the Avidas Inventory and royalties were duly paid by Avidas to La Jolla on the units." [Doc. No. 47, at p.7, citing 47-2, Ex. J at A_001001; A_001019 to A_001041.]

[5] "From November 2012 to May 9, 2014, SciDerma sold and distributed about 1,120 units from its Inventory and royalties were duly paid by Avidas to La Jolla on the units." [Doc. No. 47, at p.7, citing 47-2, Ex. J at A_001001; A_001003 to A_001018.]

*Research Institute, LLC v. Fiber Research International, LLC*, 310 F.Supp.3d 1089, 1122 (S.D. Cal. 2018) (citing *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) [district court abused its discretion by not amending the complaint to conform to the evidence and argument and by not considering the unpled claim on the merits]).

> 3. <u>The Order wrongly prohibits La Jolla Spa from conducting discovery that could be used to impeach Avidas' President, Margaret Gardner, regarding sales of Vitaphenol product</u>

To support this Court's jurisdiction, Avidas' President declared that Avidas paid La Jolla Spa "approximately $90,000 in royalty payments" to La Jolla Spa pursuant to the contract. [Doc. No. 1-2, ¶ 3.] Avidas has also claimed that it paid "full royalties" owed to La Jolla Spa over the duration of the agreement. [Doc. No. 47, at p.7, citing 47-2, Ex. J.]

La Jolla Spa disputes that it received anywhere near $90,000 in royalties from Avidas. [Doc. Nos. 57, pp. 3-4; 57-1, ¶ 11.c; 61, pp. 26-28.] La Jolla Spa should be entitled to cross-examine Avidas' president as to the sales summaries Avidas supposedly sent, how they were created, and what documents were used to create them, in order to determine whether the $90,000 amount is actually correct.[6] If Avidas paid $90,000 to La Jolla Spa based on a royalty of 8%, then Avidas made a profit of over $1,125,000 from the sales of Vitaphenol products. However, as broadly stated, Paragraph 4 of the Order prohibits La Jolla Spa from asking any information about the amounts Avidas contends it paid prior to termination or whether it sold inventory amounting to a $1,125,000 profit.

---

[6] *See* Doc. No. 57, p. 22 (Request No. 15 states: "All source DOCUMENTS and ESI that Avidas relied on and/or used to create the accounting summaries reflected in A_001001 to A_001066, which are attached as Exhibit "J" to the Declaration of Julie Chovanes filed on December 3, 2018.").

Because under Rule 26(b), La Jolla Spa is permitted to discover information that "could be used to impeach" the President of Avidas, the Order is contrary to law.

## VII. CONCLUSION

La Jolla Spa respectfully requests that the Court vacate Paragraph 4 of the Order, overrule Avidas' relevance objections, and allow La Jolla Spa to conduct discovery prior to May 8, 2014.

Dated: February 18, 2019

**JAMES T. RYAN, P.C.**

By *s/ James T. Ryan*
James T. Ryan, Attorney for Plaintiff

17