**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LA JOLLA SPA MD, INC., <br><br>　　　　　　　　　　　　Plaintiff, <br><br>v. <br><br>AVIDAS PHARMACEUTICALS, LLC, <br><br>　　　　　　　　　　　　Defendant. | Case No.: 17cv1124-MMA (WVG) <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT** <br><br>[Doc. No. 77] |

Plaintiff La Jolla Spa MD, Inc. ("Plaintiff") has moved the Court for leave to file a Third Amended Complaint ("TAC"). Doc. No. 77-1 ("Mtn."). Defendant Avidas Pharmaceuticals, LLC ("Defendant") filed a response in opposition [Doc. No. 83 ("Oppo.")], to which Plaintiff replied [Doc. No. 84 ("Reply")]. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. No. 85. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

## PROCEDURAL BACKGROUND

On April 20, 2017, Plaintiff and Dianne York-Goldman filed this action alleging the following causes of action against Defendant in San Diego Superior Court: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) fraud; (4) unjust enrichment and/or *quantum meruit*; (5) unfair competition in violation of California

1

Business Code § 17200 *et seq.*; and (6) intentional interference with prospective economic relations. *See* Doc. No. 1, Exhibit A ("Compl."). On June 2, 2017, Defendant filed a notice of removal based on diversity jurisdiction in this Court. *See* Doc. No. 1. Defendant subsequently moved to dismiss all claims brought by Dianne York-Goldman, the first, second, third, fourth, and sixth causes of action, and the prayer for attorneys' fees, punitive damages, and disgorgement of profits. Doc. No. 4. The Court granted in part and denied in part Defendant's motion. Doc. No. 10. Specifically, the Court dismissed without prejudice the second, fourth, and sixth causes of action, the prayer for attorneys' fees, and all claims brought by Dianne York Goldman, and dismissed with prejudice the third cause of action for fraud and the prayer for punitive damages. *Id.* at 15.

On November 14, 2017, Plaintiff filed the operative Second Amended Complaint ("SAC"), alleging only breach of contract. Doc. No. 12 ("SAC"). Defendant answered on November 28, 2017. Doc. No. 15. The Court held an Early Neutral Evaluation and Case Management Conference and subsequently issued a Scheduling Order. *See* Doc. Nos. 18, 19, 24 ("Scheduling Order"). The Scheduling Order set May 1, 2018 as the deadline to amend pleadings or add parties, June 18, 2018 as the deadline to conduct fact discovery, and August 27, 2018 for expert discovery. Scheduling Order at 1-2.

On June 7, 2018, Defendant's counsel filed a motion to withdraw as counsel, citing to unreasonable difficulty due to Defendant's refusal to participate in the litigation. Doc. No. 27. Defendant purportedly retained new counsel on May 2, 2018 who planned to file a notice of appearance within two weeks. *See* Doc. No. 27-2 ("Brucker Decl.") ¶ 5. Accordingly, the Court granted the motion to withdraw and ordered Defendant to enter an appearance of new counsel on or before August 1, 2018. Doc. No. 30. By October 26, 2018, Defendant had not entered an appearance of new counsel. *See* Docket. Accordingly, the Court issued an order to show cause why sanctions should not issue for Defendant's failure to enter the appearance of new counsel and noted that failure to

respond to the order may result in the Clerk's entry of default. Doc. No. 34. The Court gave Defendant until November 16, 2018 to respond. *Id.*

On November 9, 2018, Plaintiff filed an *ex parte* motion to amend the scheduling order and a motion for leave to file a TAC. Doc. Nos. 38, 39. Plaintiff sought leave to file a TAC to add claims for trademark infringement, breach of contract, and misappropriation of Dianne York-Goldman's name, thereby adding Dianne York-Goldman back as a plaintiff in this action. Mtn. at 2. On November 15, 2018, Defendant entered an appearance of new counsel, and the next day responded to the Court's order to show cause. Doc. Nos. 41, 43. As a result, the Court vacated the order to show cause. Doc. No. 44. On December 12, 2018, the Court denied Plaintiff's request to extend the deadline to amend the pleadings and denied Plaintiff's first motion for leave to file a TAC. Doc. No. 49. On March 22, 2019, the Court issued a second amended scheduling order, extending the fact discovery deadline to April 23, 2019 and the expert discovery deadline to June 17, 2019. Doc. No. 76. The amended scheduling order did not move the deadline to amend the pleadings. *See id.* Now, Plaintiff seeks for the second time leave to file a TAC. Mtn.

## LEGAL STANDARD

Once the district court issues a pretrial scheduling order establishing the deadline for the amendment of pleadings, motions to amend filed after the deadline are governed by Federal Rule of Civil Procedure 16 rather than Rule 15. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "Although Rule 15(a) sets the standard for determining when to allow a motion to amend a pleading, [Rule 16(b)] requires that when a scheduling order must be modified, 'good cause' be shown." *Cano v. Schriro*, 236 F.R.D. 437, 439 (D. Ariz. 2006) (citing *Johnson*, 975 F.2d at 608). "A court's evaluation of good cause is not coextensive with an inquiry into the propriety of amendment under . . . Rule 15." *Johnson*, 975 F.2d at 609 (internal quotation marks and citation omitted). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the

3

opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* If the moving party was not diligent, the inquiry should end. *Id.* In other words, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff seeks to "include new allegations of [Defendant's] additional breaches of contract at issue in this case and ensuing damages." Mtn. at 2. Plaintiff explains that "[f]rom the new discovery obtained by [Plaintiff], it has learned that [Defendant] has further breached the contract at issue in this case by not paying for inventory [Defendant] sold and destroying some or all of the unsold inventory after termination in violation of the Sales Agreement." *Id.* at 4. Defendant opposes amendment, arguing Plaintiff knew of facts underlying the proposed amendment since at least October 2017 and that amendment would unduly prejudice Defendant. Oppo. at 3.

### A. Good Cause to Modify the Scheduling Order

"[T]o demonstrate diligence under Rule 16's 'good cause' standard, the movant may be required to show the following: (1) that [it] was diligent in assisting the Court in creating a workable Rule 16 order; (2) that [its] noncompliance with a Rule 16 deadline occurred or will occur notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [it] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with the order." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (internal citations omitted).

As indicated previously, the Scheduling Order mandated that motions to amend the pleadings be filed on or before May 1, 2018. Doc. No. 24 at 1. Also, there is nothing to suggest Plaintiff was not "diligent in assisting the Court in creating a workable Rule 16 order." *Jackson*, 186 F.R.D. at 608. Therefore, the first good cause factor is met.

Plaintiff contends the second good cause factor is met because it made diligent efforts to comply with the deadline to amend the pleadings, but it could not have foreseen or anticipated the new information it learned in March of 2019. *See generally*, Mtn.; Reply. Specifically, Plaintiff asserts it did not discover facts supporting additional breaches for nonpayment of royalties and destruction of Vitaphenol product until after Defendant's delay in responding to discovery and after Plaintiff took the deposition of third parties. Mtn. at 5-6. In opposition, Defendant contends Plaintiff knew of the facts supporting Plaintiff's amendment as early as October of 2017. Oppo. at 3. Defendant quotes a portion of a prior order stating "Plaintiffs assert that Avidas breached the Contract by selling Vitaphenol products after representing to Plaintiffs that the remaining stock of Vitaphenol products had expired and were disposed of." *Id.* (quoting Doc. No. 10 ta 10).

While Plaintiff knew Defendant would "dispose of stock," and that "all sales from the stock disposal shall be subject to royalties," it did not know "the products were going to be destroyed." Reply at 3 (quoting Doc. No. 47-2, Exhibit O). It wasn't until March 11, 2019 that Plaintiff learned "two new things" warranting amendment of its Complaint: (1) Defendant "licensed all of its obligations regarding the Vitapehnol products to SciDerma Medical" and Defendant never paid Plaintiff" the amounts owed in connection with SciDerma Medical's purchase" of $300,000 worth of Vitaphenol Product; and (2) Defendant "destroyed [the Vitaphenol inventory] after the termination date." Reply at 2-3. Plaintiff explains that two days after the Court issued an amended scheduling order extending the discovery deadline, Plaintiff served requests for production of documents. Doc. No. 77-2 at 2. On February 14, 2019, Defendant produced documents which contained an email between Defendant and SciDerma Medical, LLC that vaguely referenced products being destroyed. *Id.* at 5. Thus, Plaintiff deposed a principal of SciDerma Medical, LLC on March 11, 2019, where the deponent testified that "at some point after May 2014, he instructed the company where SciDerma Medical's Vitaphenol inventory was located (EPI Printers, Inc.) to destroy the inventory" and that "SciDerma

5

17cv1124-MMA (WVG)

Medical, LLC paid in excess of $300,000 to [Defendant] in 2010 for over 22,000 units of Vitaphenol inventory."[1] *Id.* Plaintiff was unaware of the $300,000 purchase because Defendant's "accounting records do not reflect [Defendant] paying [Plaintiff] royalties for that purchase." *Id.* On March 14, 2019, Plaintiff issued a subpoena to EPI Printers, Inc. for a deposition and production of documents set for March 27, 2019 to determine what happened to the inventory. *Id.* At the deposition, Plaintiff learned that EPI Printers, Inc. "destroyed over 11,000 units of Vitaphenol products" after Defendant notified Plaintiff it was terminating the agreements as of July 11, 2014. Doc. No. 84-1 at 2.

Plaintiff diligently attempted to comply with the deadline to amend the pleadings, but due to unforeseen complications—including the length of time Defendant was unrepresented by counsel and various discovery issues[2]—Plaintiff did not learn information regarding additional breaches of contract until March 11, 2019. Accordingly, Plaintiff satisfies the second good cause factor. Plaintiff also asserts it was diligent in filing this motion because it "made this motion as soon as reasonably possible after discovering the need for the proposed amendment." Mtn. at 6. The Court concludes Plaintiff diligently sought amendment by filing the instant motion within two weeks of discovering the information regarding the alleged additional breaches.

Based on the foregoing, the Court finds that Plaintiff has shown good cause to modify the scheduling order.

**B.** **Leave to File an Amended Complaint**

Upon a showing of good cause to modify the scheduling order, a party seeking amendment of its pleading must then demonstrate that a court should grant leave under Rule 15. *Johnson*, 975 F.2d at 608. Under Rule 15(a) of the Federal Rules of Civil

---

[1] Defendant appears to argue that its responses to Plaintiff's interrogatories show the proposed amendment is factually inaccurate. However, the responses merely assert that as of July 11, 2014 Defendant did not have any Vitaphenol products or inventory. Doc. No. 83-2 at 2.
[2] Defendant was unrepresented from July 5, 2018, until November 15, 2018. *See* Doc. Nos. 30, 41. Additionally, the docket reflects various discovery issues. *See* Doc. Nos. 55-76, 78-82.

6

17cv1124-MMA (WVG)

Procedure, "the decision of whether to grant leave to amend . . . remains within the discretion of the district court, which may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In opposition to Plaintiff's motion, Defendant argues that permitting amendment would "unduly prejudice" it. Oppo. at 3. Defendant does not challenge any of the other *Foman* factors. *See id.* However, the Court finds the other factors are satisfied. First, Plaintiff filed its motion within two weeks of discovering information underlying the proposed amendment. As a result, there is an insufficient showing of undue delay. Second, there is no indication of wrongful motive in Plaintiff amending the complaint. Third, Plaintiff has not previously amended the complaint other than omitting dismissed causes of action following the Court's order granting in part Defendant's motion to dismiss. *See* Docket. As to the fifth factor, Defendant does not allege amendment would be futile or legally insufficient. *See* Oppo. The Court, therefore, turns to prejudice.

Defendant argues in three sentences that amendment would be unduly prejudicial. *Id.* at 3. Specifically, Defendant argues this motion is an "attempt to restart this litigation based on nothing[.]" *Id.* As an initial matter, the Court notes that Plaintiff has declared that new discovery factually supports its allegations and that Defendant did not argue amendment would be futile. This suggests that the motion is not "based on nothing." While the Court recognizes that this case was originally filed in this Court in June 2017, there have been several complications, including, as noted above, a period of time where Defendant was unrepresented by counsel and several discovery issues. *See* Docket. Due to these complications, "little discovery" had been done by November 2018. *See* Doc. No. 39-1 at 5. Since the amended scheduling order issued in January 2019, there have been several discovery disputes. *See* Docket. Moreover, as noted by Plaintiff, the

dispositive motion deadline is set for July 15, 2019 and a trial date has not yet been scheduled. Mtn. at 7. Based on the procedural posture of the case and due to its complications with representation and discovery disputes, the Court finds that amendment would not be unduly prejudicial.

## CONCLUSION

As indicated above, Plaintiff has met the requirements of Federal Rules of Civil Procedure 15(a) and 16(b). Accordingly, the Court **GRANTS** Plaintiff's motion. The Clerk of Court is instructed to file Plaintiff's proposed Third Amended Complaint (Doc. No. 77-7) as a separate docket entry.

**IT IS SO ORDERED**.

Dated: April 29, 2019

Hon. Michael M. Anello
United States District Judge