James T. Ryan, Esq. (SBN 210515)
JAMES T. RYAN, P.C.
1110 Glenville Dr. # 307
Los Angeles, California 90035
Tel:  310.990.2889
Email:  jr@jamestryan.com

For Plaintiff LA JOLLA SPA MD, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA JOLLA SPA MD INC.,<br><br>      Plaintiff,<br>            vs.<br><br>AVIDAS PHARMACEUTICALS,<br>LLC, a limited liability company;<br>and DOES 1 through 10 inclusive,<br><br>      Defendants. | CASE NO. 17-cv-1124-MMA (WVG)<br><br>DECLARATION OF ROBERT A. TAYLOR SUBMITTED IN CONNECTION WITH OPPOSITION TO MOTION FOR DISMISSAL UNDER F.R.C.P. 12(b)(1) AND 12(b)(6), OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT UNDER F.R.C.P. 56<br><br>Judge:  Hon. Michael M. Anello<br>Date:  August 19, 2019<br>Time:  2:30 p.m.<br>Courtroom:  3D |

## DECLARATION OF ROBERT A. TAYLOR

I, Robert A. Taylor, declare as follows:

1.      I have been engaged as an expert witness by Plaintiff La Jolla Spa MD, Inc. and have prepared a report expressing my opinions in this case.  I have personal knowledge of the facts stated in this declaration.

2.      Attached hereto is a true and correct copy of my "Report of Robert A. Taylor" dated May 20, 2019, which sets forth my qualifications, the information, facts and evidence relied upon to form my opinions, and my opinions.

3.      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct and that the statements made in my report dated May 20, 2019 are true and correct.

Executed on August  5 , 2019 at San Diego, California.

_____

Robert A. Taylor

**Report of**
**Robert A. Taylor**
**Expert Witness**
**For**

**La Jolla Spa MD, Inc.**

**In the Matter of**

**La Jolla Spa MD, Inc.**
**v.**
**Avidas Pharmaceuticals, LLC**

**United State District Court**
**Southern District of California**
**Case No. 3:17-cv-01124-MMA-WVG**

**May 20, 2019**

*C O N F I D E N T I A L*

## Table of Contents

I.      The Nature and Scope of My Work:...................................................................1

II.     Qualifications, Prior Case Testimony and Compensation: .............................1

III.    Data or Other Information Considered in Forming the Opinions Stated
        Herein: .............................................................................................................1

IV.     Background/Understanding: .............................................................................1

V.      Analysis:............................................................................................................3

VI.     Conclusion: ......................................................................................................10

**APPENDICES**

Appendix A    Résumé of Robert A. Taylor

Appendix B    Listing of Cases in which Robert A. Taylor has provided testimony within the
              preceding four years

Appendix C    Listing of Data or Other Information Provided

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

## I.      The Nature and Scope of My Work:

I, Robert A. Taylor, have been retained by counsel for La Jolla Spa MD, Inc. in the matter of *La Jolla Spa MD, Inc. ("LJSMD" or "Plaintiff") vs. Avidas Pharmaceuticals, LLC ("Avidas" or "Defendant")*, Case No. 3:17-cv-01124-MMA-WVG in the United States District Court for the Southern District of California. This matter arises from LJSMD's claim that Avidas breached its contract with LJSMD.  The Plaintiff's allegations are enumerated in the Third Amended Complaint filed on April 29, 2019.

I have been retained on behalf of LJSMD to provide expert witness testimony with respect to the economic and financial claims asserted by LJSMD against Avidas. In addition, I will respond to any rebuttal opinions offered by the Defendant in this matter. I offer no opinions regarding liability in this matter.

## II.      Qualifications, Prior Case Testimony and Compensation:

I am a certified public accountant licensed in the State of California and hold a Master of Business Administration degree with an emphasis in Finance from San Diego State University. I have been qualified as an economic damage expert witness on many occasions in various state courts, and United States district and bankruptcy courts.  I have provided deposition, trial or arbitration testimony as an economic damage expert witness in matters located in California, Hawaii, Oregon, Idaho, Delaware (Chancery Court), Nevada, Arizona, Illinois, Florida, Missouri, Massachusetts, Virginia, New Jersey and New York.  I have testified in excess of 100 times in arbitration and/or trial and in excess of 200 times in deposition.  My résumé, which more fully describes my professional qualifications and includes a listing of all publications authored by me within the preceding 10 years, is attached hereto as **Appendix A**. A listing of all cases in which I have given trial or deposition testimony within the preceding four years is attached hereto as **Appendix B**.

My billing rate is $425 per hour for all work I perform, including trial and deposition testimony.  My compensation is not dependent in any way upon the outcome of this lawsuit.

## III.      Data or Other Information Considered in Forming the Opinions Stated Herein:

I have been provided and considered several sources of data and information in forming my opinions in this matter.  A complete listing of data provided to me is attached as **Appendix C** to this report.

## IV.      Background/Understanding:

I understand that on August 19, 2008 LJSMD entered into a contract with Avidas. The contract is comprised of two separate, but related agreements; the first agreement is the "Sales

1

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

and Distribution Agreement," and the second agreement is the "Know-How and Trademark License and Purchase Agreement." The two agreements are jointly referred to herein as the Contract. Pursuant to the Sales and Distribution Agreement LJSMD sold and transferred its inventory of Vitaphenol Products to Avidas. In exchange, Avidas was to pay LJSMD for the cost of inventory sold plus a royalty of 8% on Avidas' profits[1] on its sales of such inventory.[2] The value ascribed to the LJSMD inventory that was transferred to Avidas was $179,838.54 ("Inventory Purchase Price" for 17,337 units).[3]

The Know-How and Trademark License and Purchase Agreement provided that Plaintiff agreed to grant Avidas licenses to the "Know-How" and trademark related to the Vitaphenol Products and provided for a royalty of 8% on Avidas's profits[4] from its sales of Vitaphenol Products.[5]

On August 25, 2010, Avidas entered into an Inventory and License Agreement with SciDerma Medical, LLC ("SciDerma"). Pursuant to the Inventory and License Agreement, SciDerma became the exclusive licensee of the Vitaphenol Products in the United States (including its territories) and Canada.[6] Further, pursuant to the Inventory and License Agreement, SciDerma purchased 22,215 units of Vitaphenol Product inventory from Avidas for $316,501 plus a "License Fee" of $100,000. Additionally, SciDerma agreed to pay Avidas a royalty of 15% on all of SciDerma's net sales.[7]

Pursuant to the Contract, Avidas paid some royalties until mid-2014. Based on the representations of Avidas, the total amount Avidas paid to LJSMD between January 2009 and July 2014 was $92,207.84.[8] I have been informed that on May 8, 2014, Avidas wrote a letter terminating the Contract effective July 11, 2014 because of the death of the "lead person" for the Vitaphenol Products. Avidas indicated that it did not intend to replace the "lead person" and would instead be electing to discontinue promoting and selling Vitaphenol Products. Avidas' letter noted that it was Avidas' election to sell the remaining stock on hand and pay appropriate royalties.[9]

---

[1] Sale and Distribution Agreement, paragraph 3.f. defines profit as Avidas's invoiced sales that are reportable each month less Avidas's purchase price for the Inventory generating such sales.
[2] *Ibid*, paragraphs 3.c. and 3.f.
[3] *Ibid*, Exhibit 1.
[4] Know-How and Trademark License and Purchase Agreement, paragraph 4.a. defines profit as invoiced sales of Vitaphenol Products to Avidas customers each month reduced by (i) Avidas's purchase price for the Vitaphenol Products.
[5] *Ibid*, paragraph 4.a.
[6] Inventory and License Agreement dated August 25, 2010, paragraph 1 m.
[7] *Ibid*, paragraph 6.
[8] A_001001 (The total shown on the document that was produced is $100,763.78. The amount should be $92,207.84 because the total shown on the document includes a subtotal of $8,555.94 that was included twice in the total presented on the document).
[9] Third Amended Complaint, paragraph 12.

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

Upon termination of the Contract, Avidas did not return the remaining/unsold inventory to LJSMD pursuant to Paragraph 4.g. of the Sales and Distribution Agreement. Instead, Avidas and/or its exclusive licensee, SciDerma, authorized the destruction of the unsold inventory.[10]

Based on my analysis of the Royalty Reports produced by Avidas, the Sales Detail Reports produced by SciDerma, and the Product Destruction Forms, I have determined the following:

1. Avidas has not accounted for all of the inventory it purchased from LJSMD pursuant to the Sales and Distribution Agreement;
2. Avidas has not accounted for all of the Vitaphenol Products manufactured by Avidas;
3. Avidas has not paid LJSMD for all of the inventory it purchased from LJSMD pursuant to the Sales and Distribution Agreement; and
4. Avidas has not paid LJSMD royalties on all sold and/or unaccounted for products.

## V.    Analysis:

### *Scenario 1*

I have calculated the unpaid royalty and the unpaid Inventory Purchase Price due to LJSMD resulting from the Inventory and License Agreement entered into between Avidas and SciDerma.  Based on this agreement, I understand that Sciderma purchased Avidas' remaining inventory of Vitaphenol Products.  I have been asked to assume that this transaction represented the sale of Avidas' Vitaphenol Product inventory pursuant to the 2008 Contracts between LJSMD and Avidas.   In this scenario, I have assumed that at the time of the sale of the Vitaphenol Product inventory to SciDerma, Avidas should have paid LJSMD the amount due under the contract.

1. Based on the original Contracts, the Royalty Reports submitted by Avidas, and the Inventory and License Agreement between Avidas and SciDerma, I prepared the following table (**TABLE 1**) showing the disposition of the Vitaphenol Inventory through the time of the sale to SciDerma:

---

[10] SciDerma – Vitaphenol Product Destruction Forms.

3

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

**TABLE 1**

| | CRS w/ Vitaphenol | Vitaphenol Daily Cleanser | Vitaphenol Daily Defense Cream | Vitaphenol Fortified Moisturizer | Vitaphenol Sheer Moisturizer | Vitaphenol Sheer Moisturizer | Vitaphenol Antiaging Serum | Vitaphenol Anti-Aging Toner | Vitaphenol Anti-Aging Toner | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | VCRS | VDC | VDD | VMF | VMS | VMS-2 | VS | VT | VT-2 | |
| Inventory Transferred to Avidas by LJSMD | 2,361 | 325 | 2,412 | 4,332 | 2,495 | 0 | 4,689 | 723 | 0 | 17,337 |
| Sales/Trials By Avidas Through 8/31/10 Per Royalty Reports | -590 | -936 | -563 | -849 | -831 | 0 | -750 | -810 | 0 | -5,329 |
| Remaining LJSMD Inventory | 1,771 | 0 | 1,849 | 3,483 | 1,664 | 0 | 3,939 | 0 | 0 | NA |
| | | | | | | | | | | |
| Assumed Production By Avidas | 0 | 3,268 | 0 | 0 | 0 | 3,087 | 0 | 2,799 | 1,399 | 10,553 |
| | | | | | | | | | | |
| Remaining LJSMD Inventory | 1,771 | 0 | 1,849 | 3,483 | 1,664 | 0 | 3,939 | 0 | 0 | 12,706 |
| Physical Inventory Sold to SciDerma as of 8/13/10 | 1,667 | 2,657 | 1,728 | 3,455 | 1,625 | 3,087 | 3,885 | 2,712 | 1,399 | 22,215 |
| **Unaccounted for LJSMD Inventory** | **104** | **0** | **121** | **28** | **39** | **0** | **54** | **0** | **0** | **346** |

2.  Based on the information shown in **TABLE 1**, I calculated the unpaid royalty and product cost for the "Unaccounted for LJSMD Inventory" as follows:

   a.  I multiplied the number of unaccounted for LJSMD units by the cost specified in the Sales and Distribution Agreement to determine the cost of the unaccounted for inventory that should have been paid to LJSMD;

   b.  I multiplied the number of unaccounted for LJSMD units by the average selling price Avidas had been selling the products for to determine the total revenue that could have been earned by Avidas on the unaccounted for LJSMD units and deducted the total cost of the unaccounted for LJSMD units.  I multiplied the result by 8% to determine the unpaid royalty due to LJSMD for the unaccounted for units.

   As shown in **TABLE 2** (below), I determined the cost plus the unpaid royalty due on the unaccounted for LJSMD units is $6,510.64:

**TABLE 2**

| | | Unaccounted for Units | Average Selling Price | Total Revenue | Unit Cost | Total Cost | Unit Profit | Profit | Royalty @ 8% |
|---|---|---|---|---|---|---|---|---|---|
| VCRS | CRS w/ Vitaphenol | 104 | $97.50 | $10,140.00 | $34.74 | $3,612.96 | $62.76 | $6,527.04 | $522.16 |
| VDD | Vitaphenol Daily Defense Cream | 121 | $47.50 | $5,747.50 | $6.63 | $802.23 | $40.87 | $4,945.27 | $395.62 |
| VMF | Vitaphenol Fortified Moisturizer | 28 | $47.50 | $1,330.00 | $6.38 | $178.64 | $41.12 | $1,151.36 | $92.11 |
| VMS | Vitaphenol Sheer Moisturizer | 39 | $47.50 | $1,852.50 | $6.69 | $260.91 | $40.81 | $1,591.59 | $127.33 |
| VS | Vitaphenol Antiaging Serum | 54 | $47.50 | $2,565.00 | $6.31 | $340.74 | $41.19 | $2,224.26 | $177.94 |
| | | 346 | | $21,635.00 | | **$5,195.48** | | $16,439.52 | **$1,315.16** |
| | **Cost + Royalty at 8% of Unaccounted for Units** | | | | | | | | **$6,510.64** |

4

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

3. I determined the royalty due to LJSMD for the Vitaphenol Products sold to SciDerma as follows:

    a. Based on the Inventory and License Agreement between Avidas and SciDerma, Avidas transferred 22,215 units of Vitaphenol products to SciDerma for $316,501 plus a "license fee" of $100,000.[11]

    b. I subtracted the product cost from the total Inventory Value (sales price) to determine the profit by product and added the $100,000 "license fee" to determine the profit earned by Avidas on the transfer of the Vitaphenol Products to Sciderma.[12]

    c. I multiplied the profit by 8% to determine the unpaid royalty due on the unaccounted for LJSMD units.

As shown in **TABLE 3** (below), I determined the unpaid royalty due on the Vitaphenol Products transferred to SciDerma was $16,234.23:

**TABLE 3**

| Product | Description | Units Sold to Sciderma | Value per Unit Sale | Unit Cost | Total Value | Total Cost | Profit |
|---|---|---|---|---|---|---|---|
| VCRS | CRS w/ Vitaphenol | 1,667 | $49.49 | $34.74 | $82,499.83 | $57,911.58 | $24,588.25 |
| VDC | Vitaphenol Daily Cleanser | 2,657 | $11.70 | $9.90 | $31,086.90 | $26,304.30 | $4,782.60 |
| VDD | Vitaphenol Daily Defense Cream | 1,728 | $11.76 | $6.63 | $20,321.28 | $11,456.64 | $8,864.64 |
| VMF | Vitaphenol Fortified Moisturizer | 3,455 | $11.46 | $6.38 | $39,594.30 | $22,042.90 | $17,551.40 |
| VMS | Vitaphenol Sheer Moisturizer | 1,625 | $11.83 | $6.69 | $19,223.75 | $10,871.25 | $8,352.50 |
| VMS-2 | Vitaphenol Sheer Moisturizer | 3,087 | $11.83 | $8.03 | $36,519.21 | $24,788.61 | $11,730.60 |
| VS | Vitaphenol Antiaging Serum | 3,885 | $11.37 | $6.31 | $44,172.45 | $24,514.35 | $19,658.10 |
| VT | Vitaphenol Anti-Aging Toner | 2,712 | $10.48 | $8.68 | $28,421.76 | $23,540.16 | $4,881.60 |
| VT-2 | Vitaphenol Anti-Aging Toner | 1,399 | $10.48 | $8.68 | $14,661.52 | $12,143.32 | $2,518.20 |
| | | 22,215 | | | $316,501.00 | $213,573.11 | $102,927.89 |
| | | | | Plus "License Fee" | | | $100,000.00 |
| | | | | Total Profit | | | $202,927.89 |
| | | | | | | | |
| | | | | Unpaid Royalty | | 8% | $16,234.23 |

4. I calculated the product cost for the LJSMD inventory transferred to SciDerma by multiplying the 12,360 LJSMD units (12,706 – 346 from **TABLE 1**) transferred to SciDerma by the unit cost per Exhibit 1 to the Sales and Distribution Agreement between LJSMD and Avidas.

---

[11] The breakdown of the value per unit of product transferred to SciDerma is specified on Exhibit IV (page 20) of the Inventory and License Agreement. The $100,000 "license fee" is as stated in 6.a. of the Inventory and License Agreement.

[12] The product cost for LJSMD original inventory comes from Exhibit 1 to the Sales and Distribution Agreement. The product cost form product manufactured by Avidas comes from the Avidas royalty reports for the period through August 31, 2010.

5

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

As shown in **TABLE 4**, the product cost of the LJSMD inventory transferred to SciDerma is $126,796.72:

**TABLE 4**

| Product | Description | Original Units Transferred | Value per Unit | Value |
|---------|-------------|---------------------------|----------------|-------|
| VCRS | CRS w/ Vitaphenol | 1,667 | $34.74 | $57,911.58 |
| VDD | Vitaphenol Daily Defense Cream | 1,728 | $6.63 | $11,456.64 |
| VMF | Vitaphenol Fortified Moisturizer | 3,455 | $6.38 | $22,042.90 |
| VMS | Vitaphenol Sheer Moisturizer | 1,625 | $6.69 | $10,871.25 |
| VS | Vitaphenol Antiaging Serum | 3,885 | $6.31 | $24,514.35 |
| | | 12,360 | | **$126,796.72** |

5.  In this Scenario, I have assumed that the Inventory and License Agreement entered into between Avidas and SciDerma, under which Sciderma acquired Avidas' inventory of Vitaphenol Product, represented the sale of product under the 2008 Contracts between LJSMD and Avidas. Therefore, the amounts shown above should have been paid to LJSMD on or about the time of the Inventory and License Agreement, and no further amounts would have been payable to LJSMD. As a result, I have deducted the total amount paid to LJSMD by Avidas for periods after August 2010 per Avidas document A_001001 of $39,492.89 to determine the unpaid product cost and royalty due to LJSMD. In addition, I have been asked to calculate prejudgment interest through May 31, 2019.

As shown in **TABLE 5**, damages under Scenario 1 total $206,379.01:

**TABLE 5**

| Damages Including Prejudgment Interest through 5/31/19 | |
|---------------------------------------------------------|--------------|
| | |
| Cost of Unaccounted for LJSMD Product | $5,195.48 |
| Unpaid Royalty on LJSMD Unaccounted for Product | 1,315.16 |
| Unpaid Royalty on Product Transferred to SciDerma | 16,234.23 |
| Cost of LJSMD Product Transferred to SciDerma | 126,796.72 |
| Total Due to LJSMD as of 8/31/10 | 149,541.59 |
| Less Royalties Paid to LJSMD After 8/31/10 | -39,492.89 |
| Net Due to LJSMD as of 8/31/10 | 110,048.70 |
| Prejudgment Interest @10% from 8/31/10 through 5/31/19 | 96,330.30 |
| **Total Damages and Prejudgment Interest** | **$206,379.01** |

**BRINIG TAYLOR ZIMMER**
**INCORPORATED**

*C O N F I D E N T I A L*

*Scenario 2*

I have calculated the unpaid royalty and Inventory Purchase Price assuming the original Contracts continued in effect after Avidas entered into the Inventory and License Agreement with SciDerma.

1. Based on the original Contracts, the Royalty Reports submitted by Avidas, and the Inventory and License Agreement between Avidas and SciDerma (for the purposes of an inventory starting in August 2010), and the Product Destruction Reports, I prepared the following table (**TABLE 6**) showing the disposition of the Vitaphenol Product inventory through the time of the destruction of the inventory in June 2018:

**TABLE 6**

| | CRS w/ Vitaphenol VCRS | Vitaphenol Daily Cleanser VDC | Vitaphenol Daily Defense Cream VDD | Vitaphenol Fortified Moisturizer VMF | Vitaphenol Sheer Moisturizer VMS | Vitaphenol Sheer Moisturizer VMS-2 | Vitaphenol Antiaging Serum VS | Vitaphenol Anti-Aging Toner VT | Vitaphenol Anti-Aging Toner VT-2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Inventory Transferred to Avidas by LJSMD | 2,361 | 325 | 2,412 | 4,332 | 2,495 | 0 | 4,689 | 723 | 0 | 17,337 |
| Sales/Trials By Avidas Through 8/31/10 Per Royalty Reports | -590 | -936 | -563 | -849 | -831 | 0 | -750 | -810 | 0 | -5,329 |
| Remaining LJSMD Inventory | 1,771 | 0 | 1,849 | 3,483 | 1,664 | 0 | 3,939 | 0 | 0 | NA |
| | | | | | | | | | | |
| Assumed Production By Avidas | 0 | 3,268 | 0 | 0 | 0 | 3,087 | 0 | 2,799 | 1,399 | 10,553 |
| Remaining LJSMD Inventory | 1,771 | 0 | 1,849 | 3,483 | 1,664 | 0 | 3,939 | 0 | 0 | 12,706 |
| Physical Inventory Sold to SciDerma as of 8/13/10 | 1,667 | 2,657 | 1,728 | 3,455 | 1,625 | 3,087 | 3,885 | 2,712 | 1,399 | 22,215 |
| **Unaccounted for LJSMD Inventory** | **104** | **0** | **121** | **28** | **39** | **0** | **54** | **0** | **0** | **346** |
| | | | | | | | | | | |
| Physical Inventory Sold to SciDerma as of 8/13/10 | 1,667 | 2,657 | 1,728 | 3,455 | 1,625 | 3,087 | 3,885 | 2,712 | 1,399 | 22,215 |
| Inventory Sold/Trials by SciDerma | -611 | -822 | -659 | -698 | -421 | -368 | -541 | -1,063 | -203 | -5,386 |
| 2014 Remaining Inventory | 1,056 | 1,835 | 1,069 | 2,757 | 1,204 | 2,719 | 3,344 | 1,649 | 1,196 | 16,829 |
| | | | | | | | | | | |
| LJSMD Remaining Inventory | 1,056 | 0 | 1,069 | 2,757 | 1,204 | 0 | 3,344 | 0 | 0 | 9,430 |
| | | | | | | | | | | |
| 2014 Remaining Inventory | 1,056 | 1,835 | 1,069 | 2,757 | 1,204 | 2,719 | 3,344 | 1,649 | 1,196 | 16,829 |
| Inventory Destroyed in 2018 | -445 | -676 | -616 | -2,253 | -1,204 | -1,228 | -2,865 | -1,649 | -197 | -11,133 |
| **Unaccounted Inventory Tranferred to SciDerma** | **611** | **1,159** | **453** | **504** | **0** | **1,491** | **479** | **0** | **999** | **5,696** |

2. Based on the information shown in **TABLE 6**, I calculated the unpaid royalty and product cost for the Unaccounted for LJSMD Inventory as follows:

   a. I multiplied the number of unaccounted for LJSMD units by the cost specified in the Sales and Distribution Agreement between LJSMD and Avidas to determine the cost of the unaccounted for inventory that should have been paid to LJSMD;

   b. I multiplied the number of unaccounted for LJSMD units by the average selling price Avidas had been selling the products for to determine the total revenue that could

7

**BRINIG TAYLOR ZIMMER**
**INCORPORATED**

have been earned by Avidas on the unaccounted for LJSMD units. I deducted the total cost of the unaccounted for LJSMD units and multiplied the result by 8% to determine the unpaid royalty due on the unaccounted for LJSMD units.

As shown in **TABLE 7** (below), I determined the cost plus the unpaid royalty due on the unaccounted for LJSMD units is $6,510.64:

**TABLE 7**

| | | Unaccounted for Units | Average Selling Price | Total Revenue | Unit Cost | Total Cost | Unit Profit | Profit | Royalty @ 8% |
|---|---|---|---|---|---|---|---|---|---|
| VCRS | CRS w/ Vitaphenol | 104 | $97.50 | $10,140.00 | $34.74 | $3,612.96 | $62.76 | $6,527.04 | $522.16 |
| VDD | Vitaphenol Daily Defense Cream | 121 | $47.50 | $5,747.50 | $6.63 | $802.23 | $40.87 | $4,945.27 | $395.62 |
| VMF | Vitaphenol Fortified Moisturizer | 28 | $47.50 | $1,330.00 | $6.38 | $178.64 | $41.12 | $1,151.36 | $92.11 |
| VMS | Vitaphenol Sheer Moisturizer | 39 | $47.50 | $1,852.50 | $6.69 | $260.91 | $40.81 | $1,591.59 | $127.33 |
| VS | Vitaphenol Antiaging Serum | 54 | $47.50 | $2,565.00 | $6.31 | $340.74 | $41.19 | $2,224.26 | $177.94 |
| | | 346 | | $21,635.00 | | $5,195.48 | | $16,439.52 | $1,315.16 |
| | Cost + Royalty at 8% of Unaccounted for Units | | | | | | | | $6,510.64 |

3. I calculated the product cost of LJSMD inventory destroyed per the SciDerma Vitaphenol Product Destruction Forms dated June 2018 by multiplying the LJSMD units destroyed [refer to **TABLE 6** above] by the unit cost per Exhibit 1 to the Sales and Distribution Agreement.

As shown in **TABLE 8**, the product cost of the LJSMD Vitaphenol Product that was destroyed equals $126,796.72:

**TABLE 8**

| Value of Destroyed LJSMD Inventory | | | |
|---|---|---|---|
| VCRS | 445 | $34.74 | $15,459.30 |
| VDD | 616 | $6.63 | 4,084.08 |
| VMF | 2,253 | $6.38 | 14,374.14 |
| VMS | 1,204 | $6.38 | 7,681.52 |
| VS | 2,865 | $6.31 | 18,078.15 |
| Total Valueof LJSMD Destroyed Inventory | 7,383 | | $59,677.19 |

4. I calculated the product cost of the unaccounted for LJSMD inventory after the transfer to SciDerma by multiplying the unaccounted for LJSMD units [refer to **TABLE 6** above] by the unit cost per Exhibit 1 to the Sales and Distribution Agreement.

As shown in **TABLE 9**, the product cost of the LJSMD destroyed inventory $30,467.54:

8

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

**TABLE 9**

| Value of Unaccounted for LJSMD Inventory Transferred to SciDerma | | | |
|---|---|---|---|
| VCRS | 611 | $34.74 | $21,226.14 |
| VDD | 453 | $6.63 | $3,003.39 |
| VMF | 504 | $6.38 | $3,215.52 |
| VS | 479 | $6.31 | $3,022.49 |
| | 2,047 | | $30,467.54 |

5. Based on the information shown in **TABLE 6**, I calculated the unpaid royalty for the Unaccounted for LJSMD Vitaphenol inventory that was transferred to Sciderma as follows:

    a. I multiplied the number of unaccounted for LJSMD units by the cost specified in Exhibit 1 of the Sales and Distribution Agreement to determine the cost of the LJSMD unaccounted for inventory;

    b. I multiplied the number of unaccounted for Vitaphenol Product units produced by Avidas by the cost shown in the Royalty Reports to determine the cost of the unaccounted for inventory manufactured by Avidas;

    c. I multiplied the number of unaccounted for units by the average selling price per the Avidas Royalty Reports for the period after August 2010 to determine the total revenue that could have been earned on the unaccounted for units; and

    d. I subtracted the total cost from the revenue to determine the profit that could have been earned on the unaccounted for units and multiplied the result by 8% to determine the unpaid royalty due on the unaccounted for units.

As shown in **TABLE 10**, the unpaid royalty on the unaccounted for units after the transfer to SciDerma is $6,383.74:

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

**TABLE 10**

|  |  | Units | ASP per Unit | Cost per Unit | Profit per Unit | Total Profit |
|---|---|---|---|---|---|---|
| VCRS | CRS w/ Vitaphenol | 611 | $72.68 | $34.74 | $37.94 | $23,179.32 |
| VDC | Vitaphenol Daily Cleanser | 1,159 | $17.72 | $11.24 | $6.48 | $7,507.01 |
| VDD | Vitaphenol Daily Defense Cream | 453 | $23.52 | $6.63 | $16.89 | $7,648.94 |
| VMF | Vitaphenol Fortified Moisturizer | 504 | $27.17 | $6.38 | $20.79 | $10,476.45 |
| VMS | Vitaphenol Sheer Moisturizer | 0 | $26.43 | $6.69 | $19.74 | $0.00 |
| VMS-2 | Vitaphenol Sheer Moisturizer | 1,491 | $18.69 | $9.12 | $9.57 | $14,273.84 |
| VS | Vitaphenol Antiaging Serum | 479 | $27.63 | $6.31 | $21.32 | $10,211.76 |
| VT | Vitaphenol Anti-Aging Toner | 0 | $16.99 | $7.23 | $9.76 | $0.00 |
| VT-2 | Vitaphenol Anti-Aging Toner | 999 | $16.37 | $9.86 | $6.51 | $6,499.47 |
|  |  | 5,696 |  |  |  | $79,796.80 |
|  |  |  |  |  |  |  |
|  |  |  |  |  | Unpaid Royalty @ 8% | $6,383.74 |

As shown in **TABLE 11**, damages under Scenario 2 total $152,864.88:

**TABLE 11**

| | |
|---|---|
| Value of Unaccounted for LJSMD Inventory Prior to Transfer to SciDerma | $5,195.48 |
| Unpaid Royalty on Unaccounted for LJSMD Inventory Prior to Transfer to SciDerma | 1,315.16 |
| Value of Destroyed LJSMD Inventory | 59,677.19 |
| Value of Unaccounted for LJSMD Inventory Transferred to SciDerma | 30,467.54 |
| Unpaid Royalty on Unaccounted for Inventory After to Transfer to SciDerma | 6,383.74 |
| Net Due to LJSMD For Missing and Destroyed Product | 103,039.12 |
| Interest @ 10% From 07/31/14 (Final Royalty Payment) through 05/31/19 | 49,825.76 |
| **Total Damages and Prejudgment Interest** | **$152,864.88** |

## VI.    Conclusion:

As explained in detail above, I have calculated the amount due to LJSMD based on two scenarios:

**Scenario 1**: Assumes that the Vitaphenol product manufactured by LJSMD and Avidas was transferred/sold to Sciderma on or around August 2010, at which time Avidas should have paid LJSMD all amounts due resulting from the sale of the Vitaphenol Product inventory to SciDerma. Based on this scenario, it is my opinion that the amount due from Avidas to LJSMD, including prejudgment interest at 10% per annum (non-compounded), is $206,379.

**Scenario 2**: Is based on the continuing activity after the transfer of the Vitaphenol Product from Avidas to SciDerma. Based on this scenario, it is my opinion that the amount due from Avidas to LJSMD, including prejudgment interest at 10% per annum (non-compounded), is $152,865.

10

**BRINIG TAYLOR ZIMMER**
INCORPORATED

As a reasonableness test, the amounts presented in both of the preceding scenarios can be compared to the initial value ascribed to the Vitaphenol Product inventory that was transferred from LJSMD to Avidas as detailed in the Contract. As outlined above, the initial value ascribed to the Vitaphenol Product inventory was $179,839 and through July 2014 Avidas had paid $92,208 to LJSMD (payments were for both product base price and royalties). The difference of $87,631 ($179,839 - $92,208 = $87,631) represents the value of the Vitaphenol Product inventory that was initially transferred to Avidas for which LJSMD has not received any reimbursement. The difference between this amount ($87,631) and the amounts before inclusion of prejudgment interest in **Scenario 1** ($110,049) and **Scenario 2** ($103,039) is attributed to royalties credited to LJSMD.

I understand that LJSMD alleges that sales of its Vitaphenol Product line have continued subsequent to July 2014, the time period in which all unsold inventory was allegedly destroyed. At this time I have not been provided with data allowing me to quantify possible unreported sales of CRS product that was manufactured by Topix for Avidas. However, it is my opinion that the amount due to LJSMD for any unreported unit sales of the CRS product that was manufactured by Topix for Avidas can be estimated at $4.00 per unit ($97.50 average selling price by Avidas - $47.34 unit cost per Avidas = $50.16 x 8% = $4.00/unit). For example, if it is determined that 1,000 newly manufactured units of the CRS product were sold subsequent to July 2014, the additional royalty due to LJSMD would be $4,000 ($4.00 x 1,000 units).

If additional information becomes available, I will update this report.

Executed this 20th day of May, 2019 at San Diego, California

Robert A. Taylor

**BRINIG TAYLOR ZIMMER**
INCORPORATED

*C O N F I D E N T I A L*

# APPENDICES

# APPENDIX A

**BRINIG TAYLOR ZIMMER**
INCORPORATED
FORENSIC ACCOUNTING AND BUSINESS VALUATION
————————
401 B STREET, SUITE 2150
SAN DIEGO, CALIFORNIA 92101
TEL. (619) 687-2600  FAX (619) 544-0304
www.btzforensics.com

## ROBERT A. TAYLOR, CPA/ABV
### Resume – January 2019

### EDUCATION AND CERTIFICATION

California State Polytechnic University, Pomona
>Bachelor of Science, Accounting, ***cum laude***, 1982

San Diego State University,
>Master of Business Administration, Finance, 1992

Certified Public Accountant – California
Certified Management Accountant

### EXPERIENCE

20+ years of experience providing expert witness analysis and testimony on numerous litigation matters located through the U.S.  Subject matter/areas of retention as an economic damages expert include the following:

>Business Valuation;
>Lost Profits;
>Intellectual Property Disputes (patent, trademark, trade secret and copyright);
>Franchise Litigation;
>Trust and Estate Litigation;
>Wage and Hour (overtime, missed meal and rest periods and penalties)
>Matters based on California Labor Code and the FLSA; and
>Personal Earnings Loss

Deposition, trial or arbitration testimony as an economic damage expert witness has been provided on matters located in:

| | |
|---|---|
| California | Illinois |
| Hawaii | Florida |
| Oregon | Missouri |
| Idaho | Massachusetts |
| Delaware (Chancery Court) | Virginia |
| Nevada | New Jersey |
| Arizona | New York |

### MEMBERSHIP IN ASSOCIATIONS

California Society of Certified Public Accountants
American Institute of Certified Public Accountants
Institute of Management Accountants

## APPENDIX A

**Resume:  Robert A. Taylor, CPA, ABV, Page 2**

## <u>WORK EXPERIENCE</u>

Principal – Brinig Taylor Zimmer, Inc., January 1, 2016 to present
Principal – Brinig & Company, Inc., November 1, 2010 to December 31, 2015
Partner - Brodshatzer, Wallace, Spoon & Yip, January 1997 to October 31, 2010
Manager - Brodshatzer, Wallace, Spoon & Yip, February 1996 to December 1996
Director - Litigation Services, Coopers & Lybrand LLP, November 1994 to January 1996
Manager - Brodshatzer, Wallace, Spoon & Yip - November 1989 to October 1994
Controller - Health Care Group, April 1987 to November 1989
Supervisor - Steres, Alpert & Carne, July 1985 to April 1987
Senior - KMG/Main Hurdman, May 1984 to July 1985

# APPENDIX B

**ROBERT TAYLOR**
**DEPOSITION AND TRIAL TESTIMONY**

| | | | | | |
|---|---|---|---|---|---|
| DEPO | S.D. SUPERIOR | Terramar et al. v Anne Taubman et al. | 01/22/15 | P | BD |
| BOTH | S.D. SUPERIOR | Patricia Taylor v Parkway Plaza | 02/19/15 | P | PI |
| BOTH | ARBITRATION | Liberation Management, LLC v Henaa Blanco et al. | 03/12/15 | D | BD |
| DEPO | U.S. District Court | Kettler Intl' v. Starbucks | 03/18/15 | XP | BD |
| BOTH | S.D. SUPERIOR | Michael Shames v UCAN | 08/20/15 | XP | BD |
| DEPO | S.D. SUPERIOR | Renola Equity v Pacific West | 04/21/15 | XP | BD |
| DEPO | S.D. SUPERIOR | Leah Shearer v Competitor Group, Inc. et al. | 04/28/15 | P | WT |
| BOTH | S.D. SUPERIOR | Diego Concessions Group, Inc. v San Diego County Regior | 06/09/15 | D | BD |
| DEPO | O.C. SUPERIOR | Investors Warranty of America v. Chicago Title Insurance | 07/01/15 | D | BD |
| DEPO | S.D. SUPERIOR | Joy Sargis v. UCSD | 07/28/15 | P | WT |
| BOTH | Delaware Court of Chancery | Seaport Village Ltd. v Terramar Retail Centers | 08/26/15 | D | BD |
| DEPO | S.D. SUPERIOR | Grecias F. Flores Macias, et al. v. Ducoeur, et al. | 08/19/15 | P | WD |
| BOTH | U.S. District Court | Anthony Johnson v. Storix Inc. | 12/09/15 | P | Copyright |
| ARB | ARBITRATION | Kurt Schake v Concorde Career Colleges | 10/14/15 | D | WT |
| DEPO | U.S. District Court | Move Inc. v, Curt Beardsley | 11/11/15 | P | Securities |
| BOTH | S.D. SUPERIOR | La Jolla Spa MD v Transportation Insurance Company | 03/28/16 | P | BD |
| ARB | ARBITRATION | Floridel v. Del Taco | 01/08/16 | D | BD |
| BOTH | S.D. SUPERIOR | Stephen Cilurzo v. Apple, Inc. | 02/02/16 | P | WT |
| DEPO | U.S. District Court | Dunkin' Donuts v. Anton Nader | 01/22/16 | XD | BD |
| ARB | ARBITRATION | Morgan Stanley v Dale Cebert | 03/01/16 | D | BD |
| DEPO | S.D. SUPERIOR | Timothy Fitsemons v County of SD | 03/29/16 | D | PI |
| BOTH | S.D. SUPERIOR | Yamkwan Leung v Board of Trustees SD Elect. Training | 07/05/16 | P | WT |
| DEPO | L.A. SUPERIOR | Jazmine Domenzain v. Bruce Hicke, D.D.S. | 04/04/16 | P | Med Mal. |
| DEPO | U.S. District Court | Luis Flores v. Starwood Hotels and Resorts | 06/07/16 | P | Wage/Hour |
| ARB | ARBITRATION | Barbara Zipkin v Kaiser Foundation Health Plan, Inc. | 06/15/16 | P | WT |
| BOTH | Fourth Judicial District of Idaho | T3 Enterprises et al. v Safeguard Business Systems, Inc. | 12/13/16 | P | BD |
| BOTH | S.D. SUPERIOR | Mary Elizabeth Burns v SDSU et al. | 09/14/16 | P | WT |
| BOTH | ARBITRATION | R&R NYC Group v Move Inc. and Counterclaim | 12/19/16 | P | BD |
| DEPO | S.D. SUPERIOR | Southwest Key Programs v. City of Escondido | 07/29/16 | P | BD |
| ARB | ARBITRATION | The Retirement Group v Michael Reese et al. | 08/01/16 | P | BD |
| BOTH | O.C. SUPERIOR | Cecelia Carter v Fannie Mae | 08/26/16 | P | WT |
| ARB | ARBITRATION | T3 Enterprises et al. v Safeguard Business Systems, Inc. | 08/08/16 | P | BD |
| DEPO | S.D. SUPERIOR | Lyle Wold v. San Diego Gas and Electric Company | 09/01/16 | D | PI |
| BOTH | S.D. SUPERIOR | Nosal-Tabor v Sharp | 09/26/16 | P | WT |
| DEPO | RIVERSIDE SUPERIOR | Muhammad Mohsin v. Geltmore 4G LLC, et al. | 09/20/16 | D | BD |
| ARB | ARBITRATION | Michael Cardenas et al. v. Joseph Cardenas et al. | 09/30/16 | P | BD |
| DEPO | S.D. SUPERIOR | Andrew Maciejewski v. Zenon Smoczynski | 11/15/16 | D | BD |
| DEPO | S.D. SUPERIOR | Vonda DeSousa v. Rife Holdings | 02/21/17 | P | PI |
| DEPO | S.D. SUPERIOR | Julianne Cappos v. Emran Javadov et al. | 02/24/17 | D/XP | BD |
| DEPO | ARBITRATION | Boston Barricade Company, Inc. v Conor Loushin et al. | 03/01/17 | P | BV |

**Appendix B**
**Page 1**

**ROBERT TAYLOR**
**DEPOSITION AND TRIAL TESTIMONY**

| Trial | US District Court | Shakina Ortega v City of San Diego | 03/16/17 | D | WD |
|---|---|---|---|---|---|
| DEPO | ARBITRATION | Valerie Tutson v. Kaiser Foundation Health Plan | 03/17/17 | P | WT |
| ARB | ARBITRATION | Innovation Advisory Group v. National Pacific Corp. | 03/27/17 | P | BD |
| DEPO | S.D. SUPERIOR | The Restatement of the Labrousse Revocable Trust | 06/01/17 | P | Trust |
| ARB | ARBITRATION | 935 San Vicente LLC v. Fassberg Contracting Corporation | 06/12/17 | P | BD |
| DEPO | US District Court | Level One v. Penske | 07/19/17 | P | BD |
| DEPO | S.D. SUPERIOR | Kevin Pifer and Steven Pifer v. Pifer Properties, Inc. | 09/08/17 | P | BD |
| DEPO | S.D. SUPERIOR | Michelle Ables v. John Goode | 10/13/17 | P | PI |
| DEPO | US District Court | Milton Devore and Charles Todd v H&R Block Tax Services | 10/18/17 | D | BD |
| BOTH | S.D. SUPERIOR | Plotts Real Estate, LP v. Bar West, LLC et al. | 04/17/18 | P/XD | BD |
| DEPO | S.D. SUPERIOR | Whittaker Family Trust | 11/03/17 | P | Trust |
| DEPO | US District Court | Rogue Wave Software v BTI Systems, Inc. et al. | 11/09/17 | P | Copyright |
| BOTH | S.D. SUPERIOR | Anthony Johnson et al. v David Huffman et al. | 02/13/18 | P/XD | BD |
| ARB | ARBITRATION | Singing Hills Ltd. et al. v SHME, LLC et al. | 01/10/18 | D | BD |
| BOTH | ARBITRATION | Robert J. Marks, APC v Finch Thornton & Baild, LLP | 02/22/18 | P/XD | BD |
| DEPO | S.D. SUPERIOR | David Scot Wolfe et al. v. Michael Kennedy Insurance Agy. | 03/13/18 | P | BD |
| BOTH | S.D. SUPERIOR | Ruben Macias et al. v. La Jolla Country Day School, et al. | 05/16/18 | P | PI |
| Trial | L.A. SUPERIOR | Janice P. Handlers-Bryman et al. v. El Pollo Loco, Inc. | 04/30/18 | D | BD |
| BOTH | ARBITRATION | Brice Controladora v DB Mexican Franchising LLC | 09/20/18 | D | BD |
| BOTH | ARBITRATION | Hammond v. Thermo Fischer Scientific | 06/20/18 | P | BD |
| BOTH | ARBITRATION | Tobin Creighton v Auto Club of SoCal | 07/19/18 | P | WT |
| DEPO | S.D. SUPERIOR | J&RP Development Corp v Solpac Construction, Inc. | 06/25/18 | P | BD |
| DEPO | US District Court | Mission Viejo Florist v Orchard Supply Company, LLC | 06/26/18 | D | BD |
| TRIAL | S.D. SUPERIOR | Matthew Francois v. City of San Diego | 07/19/18 | D | WT |
| DEPO | S.D. SUPERIOR | Christopher LaFornara v David Hurwitz | 07/25/18 | P | BD |
| DEPO | S.D. SUPERIOR | Pidgeon v Pidgeon | 07/31/18 | D | BD |
| DEPO | L.A. SUPERIOR | Greg Breemes v Brookdale Senior Housing | 08/13/18 | P | WT |
| DEPO | S.D. SUPERIOR | Jey Won v. Vault Bioventures | 08/21/18 | P | BD |
| BOTH | S.D. SUPERIOR | Center for Healthcare Education v ICJR | 01/10/19 | D/XP | BD |
| DEPO | S.D. SUPERIOR | Manzanero v Estate of Mohler | 10/19/18 | D | PI |
| DEPO | ORANGE COUNTY SUPERIOR | Tajalli v Infinitif Auto Sales | 11/13/18 | P | WT |
| DEPO | S.D. SUPERIOR | Towne Construction Inc. v Marc Towne | 11/20/18 | D | BD |
| BOTH | Delaware Court of Chancery | Terramar et al. v Marion 2 Seaport Trust | 01/24/19 | P/XD | BD |
| DEPO | US District Court | DeRuyver v Omni Hotel | 01/04/19 | D | PI |
| DEPO | S.D. SUPERIOR | Barunda v. Shaw | 01/08/19 | P | PI |
| DEPO | S.D. SUPERIOR | Kenneth Willis v Ali Reza Aryarad | 01/18/19 | P | PI |
| DEPO | Fresno Superior | Kashian Enterprises, LP vs. David Fisher, et al. | 02/11/19 | P | BD |
| BOTH | ARBITRATION | Baronet & Co., Inc. vs. One Moreno Valley 240, LP, et al. | 03/11/19 | P | BD |
| DEPO | S.D. SUPERIOR | Brooke Marshall v Sereh Ghaemmaghami | 02/19/19 | D | PI |
| DEPO | S.B. SUPERIOR | Celina Cervantes v Chino Hills Ford | 02/25/19 | P | PI |

**ROBERT TAYLOR**
**DEPOSITION AND TRIAL TESTIMONY**

| | | | | | |
|---|---|---|---|---|---|
| BOTH | S.D. SUPERIOR | Vupico USA v. Flip Flop Shops Franchise Company | 04/08/19 | P | BD |
| ARB | ARBITRATION | Full Spectrum v. Ananda Hemp | 03/01/19 | D | BD |
| BOTH | ARBITRATION | Baker Electric v Signal | 03/18/19 | P | BD |
| BOTH | S.D. SUPERIOR | Makadan, Inc. v DR Horton | 04/24/19 | P | BD |
| DEPO | US District Court | Liberty Mutual Fire Ins. V. Bosa Development | 04/05/19 | D/XP | BD |
| DEPO | ARBITRATION | Sabemos vs. Cervercia de Baja CA, Sa de CV | 04/25/19 | D | BD |
| DEPO | S.D. SUPERIOR | Dorothy Gaynor et al. vs. James Bulen, et al. | 04/26/19 | D | BD |
| DEPO | S.D. SUPERIOR | Jane Doe Nos. 1 - 22 v. GirlsdoPorn et al. | 05/14/19 | P | BD |

# APPENDIX C

**APPENDIX C**

Deposition of Eric Stern Dated March 18, 2019 with Exhibits 30 and 33
Second Amended Complaint
Third Amended Complaint
Inventory and License Agreement
Know-How Agreement
Sales and Distribution Agreement
A_1001-1066
SciDerma Medical, LLC - Sales by Customer Detail Report 2009
SciDerma Medical, LLC - Sales by Customer Detail Report 2010
SciDerma Medical, LLC - Sales by Customer Detail Report 2011
SciDerma Medical, LLC - Sales by Customer Detail Report 2012
SciDerma Medical, LLC - Sales by Customer Detail Report
SciDerma Medical, LLC - Sales by Customer Summary Report
SciDerma Medical, LLC - 2014 Sales
SciDerma - Vitaphenol Product Destruction Forms
SciDerma_Vitaphenol - Request to Destruct and Quantities- attachment