1                   UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3   LA JOLLA SPA MD, INC., a        )
    corporation, et al.,            )
4                                   )   No. 17-CV-1124-MMA-WVG
            Plaintiffs,             )
5                                   )
    v.                              )   August 16, 2019
6                                   )
    AVIDAS PHARMACEUTICALS, LLC, a  )
7   limited liability company, et al.,)
                                    )
8           Defendants.             )
    _____)   San Diego, California

9

10          TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

11                       (Motion Hearing)

12

13      BEFORE THE HONORABLE WILLIAM V. GALLO, MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23   COURT REPORTER:          AMANDA M. LeGORE
                              RDR, CRR, CRC, FCRR, CACSR
24                            U.S. District Court
                              333 West Broadway, Suite 420
25                            San Diego, CA 92101
                              amanda_legore@casd.uscourts.gov

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:      JAMES RYAN
                              James Ryan, P.C.
 3                            1110 Glenville Drive, Suite 307
                              Los Angeles, CA  90035
 4                            (310)990-2889

 5

 6
     FOR THE DEFENDANTS:      JULIE CHOVANES
 7                            Chovanes Law, LLC
                              25 Springfield Avenue
 8                            Philadelphia, PA  19118
                              (267)235-4570
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | (Friday, August 16, 2019; at 9:01 a.m.) |
| 2 | |
| 3 | P R O C E E D I N G S |
| 4 | |
| 5 | THE CLERK:  This United States District Court is now |
| 6 | in session, the Honorable William V. Gallo presiding. |
| 7 | Calling matter No. 2 on calendar, 17-CV-1124, La |
| 8 | Jolla Spa versus Avidas Pharmaceuticals, on calendar for a |
| 9 | motion hearing. |
| 10 | Counsel, if you would make your appearances. |
| 11 | MR. RYAN:  Good morning.  James Ryan on behalf of |
| 12 | plaintiff. |
| 13 | THE COURT:  Good morning, Mr. Ryan. |
| 14 | Ms. Chovanes is not here.  You can have a seat. |
| 15 | She's not here.  She called, 10 or 15 minutes ago, saying she's |
| 16 | running late; traffic.  We were to start at 9:00 a.m.  I'm |
| 17 | actually starting a little late, starting at 9:01.  Now 9:02. |
| 18 | So we're going to sit and wait for Ms. Chovanes to |
| 19 | arrive. |
| 20 | MR. RYAN:  That's fine, your Honor. |
| 21 | THE COURT:  We'll try not to stare at one another and |
| 22 | be in an awkward, uncomfortable position. |
| 23 | THE CLERK:  Off the record? |
| 24 | THE COURT:  Off the record. |
| 25 | (Audio recording stopped.) |

```
 1              (Court resumes.)

 2              THE COURT:  Let the record reflect it's 9:09.

 3    Ms. Chovanes has just entered the courtroom.

 4              Ms. Chovanes, do you want to state your appearance.

 5              MS. CHOVANES:  Julie Chovanes.  I apologize deeply,

 6    your Honor.  I came from Orlando, Florida.  And I missed my

 7    airplane.  And I slept all the night in the courtroom [sic].  I

 8    didn't have the right luggage.  And I got here as fast as I

 9    could.  So, please, this is not a sign of disrespect.  I did

10    the best I could.  I apologize.

11              THE COURT:  All right.  Let's get started.

12              The plaintiff has filed a motion for -- for sanctions

13    against defendant's counsel.

14              Are both sides ready to proceed?

15              MR. RYAN:  I am, your Honor.

16              THE COURT:  And, Mr. Ryan, when addressing the Court,

17    please rise.

18              MR. RYAN:  Absolutely.

19              THE COURT:  Ms. Chovanes, are you prepared to

20    proceed?

21              MS. CHOVANES:  Yes, sir.

22              THE COURT:  So if you were paying attention, you

23    would have done the same thing that I just asked Mr. Ryan to

24    do; and that's when you're addressing the Court, please rise.

25              MS. CHOVANES:  Yes, sir.
```

1          THE COURT:  Thank you.

2          Mr. Ryan, it's your motion.  You may begin.

3          MR. RYAN:  Thank you, your Honor.

4          I believe that a lot of the argument is already in

5   the papers, so I don't want to rehash that.  But I do just want

6   to point out two things regarding --

7          THE COURT:  I -- I apologize for interrupting you so

8   soon.  By let me just state for the record that I have read all

9   of the papers submitted by all the parties:  (Indiscernible)

10  motion, the defendant's responsive motion, your reply, the

11  declarations to all of these pleadings as well.  I've also

12  reviewed the transcript and watched the videos.  So I think

13  that's about a hundred percent of everything that's before me

14  right now.

15         So go ahead.

16         MR. RYAN:  Thank you, your Honor.  I appreciate that.

17         Just -- just briefly.  And I'm happy to answer

18  questions, if the Court has any questions.  And feel free to

19  interrupt me at any time.

20         This motion came at the end of a long discovery --

21  we'll call it -- war, perhaps.  Or there were several battles

22  that led up to this deposition.

23         And the Court, I recall, in one telephonic hearing

24  mentioned that this case is consuming more of the Court's time

25  on discovery issues than perhaps all of the other cases that

1  the Court was presiding over.

2  And just briefly -- and, obviously, the -- the docket

3  reflects this -- there were approximately a half a dozen

4  discovery conferences that primarily had been initiated by

5  plaintiff because there were issues getting information,

6  written discovery.  There were issues with scheduling the

7  deposition of Avidas.  There is one occasion where the

8  deposition was canceled at the very last minute.

9  And relating to the deposition, I had proposed --

10  because there was a settlement conference that was on

11  calendar -- to have the deposition of Avidas take place here,

12  in this building, in San Diego.

13  And I think I -- I -- even suggested that I would be

14  willing to take the deposition after the settlement conference,

15  if the parties were unsuccessful in resolving the case.

16  That was met with strong opposition.  There was a

17  subsequent hearing where medical information for Avidas's

18  principal had to be provided, where -- I wasn't privy to the

19  information.  But based on what I understand, doctor's notes

20  provided by Ms. Gardner's (phonetic) ability to travel and/or

21  sit for a deposition for long periods of time.

22  As a result of that, the Court called a hearing and

23  imposed some time limitations and some breaks on how the

24  deposition should proceed but ordered that the deposition

25  should take place in Philadelphia.

1           So, as a result of that, I had to travel to

2    Philadelphia -- which is not an easy or quick trip -- and take

3    the deposition.  I was prepared to take the deposition but

4    under the Court's rules, which were to go in two-hour segments

5    with half-hour breaks so that Ms. Gardner could walk around or

6    do whatever she needed to do.

7           Well, as soon as we showed up for the deposition --

8    we started relatively on time.  And I was initially met with

9    objections, right out of the box.  I think within the first 12

10   pages of the transcript, where I was on the receiving end of

11   objections, instructing the witness not to answer on the basis

12   of relevance.  There was an initial skirmish about the scope of

13   the 30(b)(6) notice, where Ms. Chovanes was arguing that I was

14   limited to questions that were contained within the topics of

15   the 30(b)(6) notice, even though that's not what the law

16   allows.

17          I attempted to call the Court at approximately 10:15

18   or 10:30 on the East Coast.  The Court was not open at that

19   point in time on the West Coast.  So that's noted in the

20   transcript.  I tried to take care of it very quickly.

21          The Court will probably also recall that when we had

22   the discussion about having the deposition in San Diego, I

23   raised the issue that there might be some issues with

24   objections, and it would probably be better if it was taking

25   place in this building so that the Court could rule on the

1  objections (indiscernible) immediately.  But, in any event, we

2  had it in Philadelphia.

3           So at eight o'clock on the West Coast, I placed a

4  call to the Court and spoke to the clerk.  And the Court was

5  unavailable.  Was tied up in other matters.  So the Court was

6  unable to get on a call to hear what was happening at the

7  deposition until about two and a half hours, or so, into the

8  deposition.

9           At that point in time your Honor heard what was

10 happening.  Had laid some ground rules about objecting on the

11 basis of relevance, and making sure that objections were

12 succinct and concise and in accordance with the federal rules.

13          And I had hoped, at that point in time, that at least

14 the things that I had endured up until that point in time were

15 going to cease.  And as the transcript shows, the objections

16 continued.  The unnecessary colloquy continued.  The speaking

17 objections continued throughout the transcript.

18          So my client and I were in a position of how -- how

19 do we address the fact that -- under the federal rules the

20 deposition is supposed to proceed in a certain manner.  Rule 30

21 states that if an attorney or a witness impedes, frustrates, or

22 delays the fair examination of the witness that sanctions can

23 be awarded.

24          Section 1927 looks more forward-looking.  It talks in

25 terms of deterrence in preventing such conduct in the future.

1    And so, as a result, plaintiff filed this motion seeking

2    reimbursement for the costs involved in the deposition,

3    including the travel to Philadelphia and also the costs

4    involved in bringing this motion.

5         In opposition to the motion, there was really no

6    mention of the -- the hourly rate that was being sought, the

7    number of hours that were being sought, the costs that were

8    incurred.  The -- the opposition was essentially that it was

9    somehow my fault that the objections were being made, that I

10   was able to obtain some information in the seven-hour

11   deposition, and so that should be good enough to endure all of

12   the objections -- more than 125 objections that I had to

13   endure.  And, mind you, these were 125 impermissible

14   objections.  There were also other objections that were

15   arguably admissible for the record.  But it's rare to look at

16   the transcript and see a page or two pages where an objection

17   or a comment by Ms. Chovanes was not made, and the transcript

18   is 250-some pages long.

19        So there was really no contrition in terms of the

20   opposition.  There was no effort to explain why the objections

21   were made as they were; especially after the Court took the

22   time to get on the call and explain what the federal rules

23   said, which is -- should not have been necessary.

24        And so it's the plaintiff's position that there

25   really wasn't much opposition to the motion at all and sort of

1    a pro forma response.  And without adequate explanation as to

2    why the objections were made and at such an incessant and

3    continuous manner, the Court should grant the motion.  And it

4    should grant the entirety of the sanctions requested.

5              Thank you.

6              THE COURT:  Ms. Chovanes, any response?

7              MS. CHOVANES:  Good morning, your Honor.

8              THE COURT:  Good morning.

9              MS. CHOVANES:  I would like to update the Court on

10   the case-in-chief.

11             I don't know if the Court is aware.  A motion to

12   dismiss and summary judgment motion has been filed by

13   defendant.

14             The grounds of that motion are that there is no

15   jurisdiction over the court.  There is no subject matter

16   jurisdiction because the plaintiff is suing on a defunct

17   company's contract.  And that's as a result of the latest

18   amendment of the complaint which, you'll recall, was over our

19   objection.  But now the complaint reveals itself to be the

20   garbage that it started with.

21             And that is why Mr. Ryan is here.  Because he doesn't

22   like the fact that his case is a nightmare.  And, in fact, he's

23   the one who came up with this plan, this scheme to try to get

24   money from the defendant; as in fact his declaration states

25   with regard to the two amended complaints.  This was him going

1   back and deciding that a defunct company could sue on a defunct

2   contract.   So that's the basis of our motion.

3           As far as this motion, sir, there was no objection.

4   There was nothing unanswered following our conference on the

5   phone with this Court.   Nothing.

6           He had the opportunity, as we said in our brief.

7   There is no prejudice.   There's thousands of dollars alleged

8   here without any backup documentation.

9           And, as we noted, the two affidavit -- affidavits,

10  themselves, are faulty.   His counsel and his client can't even

11  get a date right.   And that's the only thing we can check

12  because there has been no discovery into their alleged damages.

13  But you can't just issue sanctions because you have a garbage

14  case (indiscernible) the other side (indiscernible).

15          And as I noticed (indiscernible), and, again, there

16  is no prejudice here, sir.   There's nothing that has been

17  unanswered.

18          We pointed to the examples in his principal brief,

19  and we said they were (indiscernible) answered.   He didn't come

20  back in his reply and point to anything that he alleges was

21  relevant and not answered.   And all of this is extremely

22  important because it was after; after the conference with this

23  Court, on the phone.   He had nothing left after that.   He

24  challenged nothing.

25          We invited him extensively to ask new questions.   He

1   had nothing further.  He said that.

2           Not only that, your Honor, he brought this motion

3   months, weeks after the fact.  Weeks after he could have done

4   this at the deposition.  He should have done it then.  But

5   (indiscernible) weeks after the fact is just further

6   (indiscernible).

7           Again, he doesn't reply to that.  He doesn't reply to

8   that at all.  All of his arguments, all of his arguments are

9   false in light of the facts; which he was delayed.

10           And then, finally, his cynical argument.  Apparently

11   Mr. Ryan thinks this Court doesn't like me and is going to beat

12   up -- beat me up and is biased against me.  And so he's jumped

13   on that with both feet.

14           And he's saying that I threatened him.  Look at him.

15   He was looming over my client.  And his paid videographer, who

16   was also somewhat rude, chose to give this Court a certain

17   angle of everything.

18           I have nothing further, your Honor.

19           Thank you.

20           MR. RYAN:  May I respond, your Honor?

21           (Indiscernible.)

22           MS. CHOVANES:  No, your Honor.

23           THE COURT:  Ms. Chovanes, did you have an opportunity

24   to review the video?

25           MS. CHOVANES:  I reviewed --

1          THE COURT:   (Indiscernible) of the deposition?

2          MS. CHOVANES:   I reviewed parts of it.   And it was

3    extremely biased, and I object -- I object to it.   And

4    (indiscernible) at the time of the deposition to do it.   But he

5    was -- and I made that point, at one point, on the record.

6    That he was starting and stopping and doing other things

7    incorrectly.   I don't know if it made it to the final record,

8    though, sir.

9          THE COURT:   Thank you.

10          Mr. Ryan, I'll give you a brief reply.

11          MR. RYAN:   Thank you.   I just have a couple of brief

12    points.

13          As to the issue of this motion being brought weeks

14    after the fact, No. 1, I had to wait for the transcript,

15    obviously, to see it.

16          No. 2, the Court will recall that I attempted to meet

17    and confer with Ms. Chovanes on several occasions.   And she

18    kept responding that she was unprepared to do so, which

19    resulted in this Court granting me leave to file the motion

20    without having any further meet and confer.

21          On the issue of prejudice, there's nothing in Rule 30

22    or Section 1927, or any of the cases that refer to this, that

23    require plaintiff to show prejudice in order to obtain

24    sanctions in this type of motion.   There are no cases cited in

25    the opposition.

1    It doesn't matter that it's -- I was able to obtain

2  some answers.  Rule 30 is just framed as if the deposition is

3  frustrated or impeded or delayed.  It doesn't say if questions

4  weren't able to be answered.  So the issue of prejudice is not

5  on the table.  The cases don't require plaintiff to show

6  prejudice in order to obtain sanctions.

7    And, finally, the word "garbage" case has been used

8  several times by Ms. Chovanes in this court; not only on prior

9  telephonic conferences but also in papers filed by

10 Ms. Chovanes, and again today.  That type of statement is

11 serious when you talk about the local rules of this Court, and

12 the civility and the professionalism which are required of

13 counsel who appear before this Court.  It's one thing to

14 advocate for your client, to make sure you're doing the best

15 you can; but it's another to demean another party's case in

16 such a way before the Court and to counsel.  And I can't even

17 count the number of times that -- when my (indiscernible)

18 Ms. Chovanes, in meet and confers, where she mentioned the case

19 being garbage, and it should never have been brought.

20   But your Honor has heard it several times as well,

21 and so there's no need for me to recount all of those.

22   There was a case that was actually in the Southern

23 District.  And it's *Lucas versus Bred*, (phonetic) 2016 Westlaw

24 2996843.  And, in that case, counsel made similar statements

25 about the opposing parties' case, such as:

1      "It appears you may be hallucinating by positing a

2      possibility that the defendants are going to win

3      this lawsuit."

4      That statement was made on the record.

5      And the court, in that case, said:

6      "Such commentary -- such commentary most certainly

7      does not exhibit the level of courteous and civil

8      communications the court expects from counsel who

9      practice before it."

10     It goes on to talk about how counsel should be

11     courteous in its communication with opposing counsel and before

12     the Court.

13     And so, here again, Ms. Chovanes exhibited the type

14     of conduct that is sanctionable.

15     Thank you, your Honor.

16     THE COURT:  Thank you.

17     MS. CHOVANES:  Your Honor, may I be heard on that

18     last point?

19     THE COURT:  Go ahead, Ms. Chovanes.

20     MS. CHOVANES:  I think -- I think it unfair to

21     present new material in the reply argument, including cases in

22     that (indiscernible).  It's totally out of context.  I have no

23     way to respond.

24     Thank you, sir.

25     THE COURT:  Thank you.

1    As I began this hearing 19 minutes ago, or so -- I've

2    read everything.  I've watched the video.  And I -- and I've

3    taken the liberty to read our local rules regarding

4    professional conduct expected of attorneys practicing before

5    this Court.

6    And I've read the rules of the courts of several

7    other jurisdictions:  Federal, state, across the country,

8    including from Ms. Chovanes's home state, Pennsylvania.

9    And, uniformly, these rules recognize the

10   (indiscernible) of attorneys conducting themselves, at all

11   times, with professional and personal courtesy and integrity.

12   Whether in court before a judge or -- certainly is expected, or

13   upon engaging with opposing counsel when a judge is not

14   present.

15   The integrity and the credibility of the judicial

16   system depends on that level of professional courtesy and

17   civility.

18   Uncivil, abrasive, abusive, hostile, or obstructive

19   conduct interferes with the orderly effective administration of

20   justice.

21   It can impede and even prevent the fundamental goal

22   of resolving litigation and disputes rationally, efficiently,

23   and economically.

24   Uncivil and abrasive behavior can, in fact, have the

25   opposite effect of creating disputes; disputes which could

1   otherwise have been avoided altogether simply by observing the

2   old rule:  Do unto others as you would have them do unto you.

3          I had the unpleasant experience of having to watch

4   and listen to each and every one of the video clips of this

5   deposition of Ms. Gardner, which was provided by the plaintiff

6   pursuant to this motion.  And what I observed was -- was

7   appalling, and it really exceeded the bounds of zealous

8   advocacy.

9          And I'm not talking about Mr. Ryan's conduct today.

10  I'm simply referring to the conduct and behavior of you,

11  Ms. Chovanes.

12         Mr. Ryan's conduct was, at all times during the

13  deposition -- at least the video clips that were provided to me

14  and from what I could tell from reading the transcript --

15  professional.  And he exercised remarkable restraint and

16  self-discipline in the face of this onslaught.

17         And I will assume that Mr. Ryan's conduct throughout

18  the entire deposition -- even those portions which were not

19  provided by the plaintiff on video -- was consistent with that

20  display on the video clip provided.

21         Ms. Chovanes, you had the opportunity to provide

22  video segments in rebuttal that might have cast a different

23  light on Mr. Ryan's conduct, but you did not.

24         Your conduct and behavior was deplorable from start

25  to finish.  You were abusive, abrasive, insulting,

1   condescending, hostile, and obstructing.  At times your conduct

2   bordered on the bizarre.  Such as the time -- the time marked

3   11:36 on the video, when you jolted out of your chair and

4   screamed at Mr. Ryan for simply benignly and politely and

5   courteously asking if Ms. Gardner, the witness, would like a

6   break.  You accused Mr. Ryan of threatening your witness by

7   that simple, polite inquiry.

8           Mr. Ryan did no such thing.  His reply was harmless,

9   and it was genuine, and it was professional.

10          Your reaction was unnecessarily disproportionate to

11  any perceived infraction of having a direct communication with

12  the witness and only about which -- increasing, not decreasing

13  the tension among the participants in the deposition.  Not

14  least of which was Ms. Gardner, who seemed genuinely startled

15  and confused by your outburst.

16          While on the subject of taking breaks, as alluded to

17  today by Mr. Ryan, Ms. Chovanes, you pushed back quite a bit

18  about taking Ms. Gardner's deposition at all because of her

19  medical condition.  And Mr. Ryan is accurate in his

20  recollection.  There were requests to take her deposition.  A

21  suggestion that they occur out here at the same time, either

22  before or after the mandatory settlement conference.  The Court

23  received requests by the defendant, from Ms. Gardner not to

24  have to appear because of a medical condition and injury.

25          The Court asked to be seen in camera medical records

1    to support the request that she was either unable to travel or

2    to sit for extended periods.   That medical information was

3    provided to the Court in camera.   The Court granted the

4    defendant's request for Ms. Gardner not to travel to San Diego.

5          And then, relevant to this motion, also imposed

6    certain guidelines in the conducting of the deposition:   Two

7    hours on, a break; two hours on, a break.   And so on, until the

8    deposition was concluded.

9          And notwithstanding these purported health concerns,

10   Ms. Chovanes insisted on pushing through the deposition by

11   foregoing breaks and even insisting that there not be a lunch

12   period.

13         Mr. Ryan pushed back and said, "I'm going to have

14   lunch.   I'm hungry."   And wanted to have a sandwich.   And was

15   able to gobble it down in 20 minutes, or so, and get back at

16   it.

17         Ms. Chovanes, you began your verbal assaultive

18   behavior by exposing some -- espousing some distorted notion

19   that the plaintiff must produce a 30(b)(6) deposition notice

20   and the topics.   You threatened to walk out of the deposition

21   unless Mr. Ryan provided the notes -- a notice.   By the way,

22   which you had.   It was provided to you.   It's how this whole

23   thing got started.

24         You repeatedly objected to Mr. Ryan's questioning.

25   That it exceeded the scope of the topics in the deposition

1  notice.  His questions did not exceed the scope of any of those

2  topics.  They were appropriately foundation questions or well

3  within the reasonable boundaries of the noticed topics.

4       You had some misguided notice that Mr. Ryan should

5  have -- should have provided a verbatim script of every single

6  question that he intended to ask during the deposition.

7       Of course, this is not the rule, and it's not a

8  requirement.

9       As most courts across the country have recognized,

10  including this Court, the Rule 30(b)(6) notice sets the floor

11  of the inquiry, not the ceiling.  And while 30(b)(6) topics

12  cannot be vague, the reasonable particularity requirement of

13  the rule cannot be used to limit what is asked of the

14  designated witness.

15       Plaintiff's 30(b)(6) notice was not vague.  The

16  topics were described with reasonable particularity.

17       And, Ms. Chovanes, you were absolutely wrong to make

18  serial objections that Mr. Ryan's questions were either

19  irrelevant or beyond the scope of those topics.  They were not.

20       The deposition notice quite naturally covered many

21  topics about Avidas:  Its business dealings with the plaintiff,

22  La Jolla Spa, Syderma (phonetic), and others; and an inventory

23  of various products, among other topics.

24       This is kind of how the questioning out of the chute

25  went from the very beginning:

1          Question by Mr. Ryan:

2          "Are you an employee of Avidas Pharmaceuticals?"

3          "Objection, irrelevant."

4          This simple, benign question and the objection that

5    it invoked resulted in over two pages of wasteful,

6    time-consuming, and unnecessary discussion.

7          This is at the very beginning of the deposition,

8    asking simple questions about the witness's status within the

9    company, the defendant company.

10         Next question:

11         "Are you an officer of Avidas Pharmaceuticals?"

12         "Objection.  Instruct not to answer."

13         "Are you a member of Avidas?"

14         "Objection."

15         "Are you a managing member of Avidas?"

16         "Objection."

17         "When was Avidas Pharmaceuticals formed?"

18         "Objection.  Instruction not to answer."

19         None of these questions were objectionable.

20         This all occurred in the opening minutes of the

21   deposition.  A deposition that was going to take another six or

22   seven hours, and regrettably was a (indiscernible) of things to

23   come.

24         Ms. Chovanes, you objected or injected your comments

25   to nearly every question or inappropriately instructed your

1    witness not to answer a question.   Smugly attempted to lecture

2    Mr. Ryan on how he should properly ask questions.

3         You were condescending in tone and language.   You

4    were rude and insulting.   Calling the (indiscernible)

5    plaintiff's case garbage.   And, here today, a nightmare case

6    and also a garbage case on several occasions.

7         And accusing Mr. Ryan of wasting everyone's time over

8    and over and over again.

9         You even went so far as to object to Mr. Ryan's

10   attempt to question Ms. Gardner about documents which were

11   provided by the defendant on the basis of relevancy and

12   fairness, surprise, or the document was subject to a

13   nonexistent protective order.

14        All of this conduct described clearly violates the

15   well-established rules of professional conduct of this Court

16   and many courts across the country.

17        In response, all you could muster in your defense was

18   that Mr. Ryan had the opportunity to ask all of the questions

19   that he wanted to ask after the call to the Court was made.

20   And that occurred at about 12:45 Eastern Time, which is about

21   almost three hours into the deposition.   That's it.   That's

22   your defense.   That he had the opportunity to ask the

23   questions.

24        And today you say that there are no objections.   He

25   asked everything he wanted to ask, and the deposition ended.

1          First, that's not the way I see it, and it's not a

2    defense at all; nor does it excuse your conduct before the call

3    was made to the Court, let alone afterwards.

4          If this was a defense to obstructive or hindering

5    behavior, then a bank robber who returns the money after

6    getting caught would be exonerated as if nothing happened at

7    all.  Asking for forgiveness instead of permission and would

8    not be held accountable for the initial criminal act.

9          And, secondly, the Court's admonition at 12:45 did

10   very little to curb your obstructive behavior as you continued

11   unabated to interpose frivolous and unjustified objections just

12   as much after the call as before.  I saw no difference.

13         And I learned today that you watched parts of the

14   video; not all of the video.  That might have been a

15   revelation, had you watched the entire video.  A little

16   self-reflection might have been important and helpful.

17         And not -- not in your papers and not today have I

18   seen one ounce of contrition or remorse for the conduct

19   displayed during that deposition.  Not even an acknowledgment

20   that possibly a third party, a mutual party viewing the video

21   and the conduct in the video could have a different view than

22   you might.  Not even -- not even that, is telling.

23         Your complaints that Mr. Ryan was wasting everyone's

24   time dragging out a deposition -- in reality it was you,

25   Ms. Chovanes, who was wasting everyone's time by unnecessarily

1    prolonging the deposition with these spurious objections,

2    inappropriate coaching of the witness, and ill-tempered

3    conduct.

4           You're licensed in Pennsylvania.  The rules of

5    professional conduct in that state proscribe the very behavior

6    exhibited by you and that I saw on the video.

7           I conclude that plaintiff's motion was well-founded.

8    That you impeded, frustrated, and obstructed the deposition.

9    And that -- perhaps not necessary -- that you did that in bad

10   faith, and that you should be sanctioned accordingly

11          And although you had the opportunity to fully do so,

12   the only thing that you challenged -- the only thing that you

13   challenged was one entry of the plaintiff's claim for monetary

14   sanctions.  And that was in Ms. York's seemingly inconsistent

15   statements in her declaration that Mr. Ryan traveled to

16   Philadelphia on May 1st, not May 2nd.

17          This discrepancy is really immaterial.  There's no

18   dispute that Mr. Ryan traveled to Philadelphia.  He was there.

19   And whether he arrived on May 1st or May 2nd is

20   inconsequential.  And if that's all you have to rely on, it's a

21   desperate attempt to try to fix this situation.  You disputed

22   no entries -- no other entries of Ms. York's requests for

23   reimbursement of costs.

24          And I have some questions that I'm going to pose to

25   you here, in a moment.

1       And as to Mr. Ryan's declaration and -- and time

2  sheets, you didn't express any (indiscernible) to contest his

3  hourly rate or the time spent on a specific task.

4       And I'm going to ask you questions about the last

5  couple entries that you have mentioned which are tentative in

6  nature.

7       So as to Ms. York, she indicates in her declaration,

8  Ms. Ryan -- Mr. Ryan, (indiscernible) that she paid for

9  airlines with points that she had accumulated.  And then, when

10  flights were canceled, she lost those points.

11       Did she in fact use those points?  Were they never

12  restored to her?  Or would she have to buy them back if she

13  wanted them back?

14       MR. RYAN:  She would have to buy them back, if she

15  wanted them back.  Because of the way the points work, they

16  don't (indiscernible) back to your account.

17       THE COURT:  So if the flight's not taken, if it's

18  canceled for any reason other than because of the airline, then

19  those points don't get restored back to her frequent flyer

20  account, or whatever account she's using.  Is that correct?

21       MR. RYAN:  That's correct.

22       THE COURT:  Okay.  And then in your declaration,

23  you -- the last two entries indicate you anticipate three hours

24  to analyze the opposition and seven hours to prepare for and

25  travel to this hearing.

1          Can you give me an updated exact estimate of your

2     time spent on analyzing the opposition, research legal

3     authorities, and drafted reply?

4          MR. RYAN:  For the reply, it's exactly three hours.

5     I kept it to the number that I had.  So that number is

6     accurate.

7          In terms of the anticipated time for today's hearing,

8     it took me two hours and 45 minutes to get here last night.  I

9     prepared approximately 30 to 45 minutes, for here, at the

10    hearing.  And it will take me about three hours to go back to

11    Los Angeles today.

12         THE COURT:  So seven hours is --

13         MR. RYAN:  It's probably short.  But, yes.

14         THE COURT:  All right.  Ms. Chovanes, it gives me no

15    great pleasure.  I don't like this.  I find it to be very, very

16    displeasurable to have to witness this sort of behavior.  It

17    was unnecessary.  And you may win this lawsuit.  Maybe your

18    present motion to dismiss may be granted by Judge Anello.  And

19    if it isn't, maybe you'll win on the merits.  But that's not

20    why we're here.  We're here to judge whether your conduct at

21    that deposition was obstructive, vexatious.  And I find that it

22    was.

23         I expect attorneys to fight vigorously and zealously

24    for their clients, as I think all judges do.  But to do it

25    civilly and professionally.  That's the way it ought to be

1    done.  And when that happens, the bells in the courthouse are

2    ringing because there's two great attorneys practicing their

3    craft and doing so in a way that does justice to the legal

4    profession.  That isn't what happened here.

5            If this video was shown to the public, I think the

6    public would be equally appalled by what they saw.

7            So none of this conduct and behavior (indiscernible)

8    there's nothing to demonstrate otherwise, the responsibility of

9    the defendant, Avidas Pharmaceuticals or Ms. Gardner, who has

10   an important role in that company.  All of this conduct and the

11   behavior is accountable to you, Ms. Chovanes.

12           So it's the judgment of this Court that you be

13   sanctioned in the amount of $7,142.03 to be payable to

14   Ms. York.  $21,360 to be paid to Mr. Ryan.  I find that the

15   hours spent on these various tasks were reasonable.  That his

16   hourly rate is reasonable.  And you are to pay Ms. York and

17   Mr. Ryan within 15 days of the written order coming out.  What

18   I've placed on the record here is not the written order.  A

19   written order will issue shortly.  Within 15 days of that

20   order, you are to pay those two individuals.  (Indiscernible)

21   seek relief through Judge Anello within the time frame allowed

22   for by the rules.

23           You're also to self-report to the Pennsylvania Bar

24   that you've been sanctioned for this conduct.  You're to

25   include in that self-reporting to the Pennsylvania Bar a

1   transcript of today's proceeding, a transcript of the

2   deposition and the video.  And you're to include the written

3   order which will issue.  And you're to file a declaration with

4   this Court that you have so notified the Pennsylvania Bar.

5           Do you have something to say, Ms. Chovanes?

6           MS. CHOVANES:  Excuse me, sir?

7           THE COURT:  Do you have anything else to say?

8           MS. CHOVANES:  If I may --

9           THE COURT:  It looks like you want to say something,

10  so I'm giving you the opportunity.

11          MS. CHOVANES:  If I may be heard, your Honor, what

12  date would the appeal run from?  The written order date?

13          THE COURT:  The written order date.  When the written

14  order comes out, that's when you -- the time would run.

15          MS. CHOVANES:  I would therefore ask that you keep

16  this matter under seal, in light of your language.

17  (Indiscernible.)

18          THE COURT:  Well, I'm not -- there's nothing --

19          MS. CHOVANES:  Excuse me.  May I finish, your Honor?

20          THE COURT:  Go ahead.

21          MS. CHOVANES:  I have just been excoriated by you.  I

22  feel like a criminal defendant.  I think it's not unreasonable

23  for me to finish what I have said.

24          And to that, I would ask, again, that this Court seal

25  the record because this could be damaging to me personally.

```
 1    And I think that is extremely unfair because I don't think, as

 2    I've said, that this case has been handled professionally from

 3    the first instance.  And professionalism goes both ways.  And

 4    if you have a fraudulent case, it starts on that side, not on

 5    my side.

 6          Thank you, sir.

 7          THE COURT:  Thank you.

 8          The request to seal the transcript of today's

 9    proceeding is denied.  This is an open proceeding.  So that

10    request is -- is hereby denied.

11          You may renew that request with Judge Anello.  He may

12    agree with you.  And I encourage you to do that if you think --

13          MS. CHOVANES:  I shall do that, sir.

14          THE COURT:  All right.  Anything else, Mr. Ryan?

15          MR. RYAN:  No, your Honor.

16          THE COURT:  Anything else, Ms. Chovanes?

17          MS. CHOVANES:  I would just ask that the minute entry

18    be sealed or anonymized, or whatever, until I can do that with

19    the judge -- with the judge.  Because I am literally on the run

20    here today in coming from Philadelphia to this hearing.

21          I will not have the ability to file anything with him

22    until Monday.

23          THE COURT:  All right.  I will give you until the

24    close of business Monday.

25          MS. CHOVANES:  Thank you.
```

1          THE COURT:  All right.  That's all.

2          MR. RYAN:  Thank you, your Honor.

3          (Conclusion of proceedings.)

4

5                         --oOo--

6    I certify, by signing below, that the foregoing is a correct

7    stenographic transcript, to the best of my ability, of the

8    digital recording of the audio proceedings had in the

9    above-entitled matter this 13th day of September, 2019.  A

10   transcript without an original signature or conformed signature

11   is not certified.  I further certify that the transcript fees

12   and format comply with those prescribed by the Court and the

13   Judicial Conference of the United States.

14

15          /S/ Amanda M. LeGore
          _____

16          AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CACSR 14290

17

18

19

20

21

22

23

24

25