1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA
10
11  LA JOLLA SPA MD, INC,                    Case No.  3:17-CV-01124-MMA-WVG
12                           Plaintiff,
                                             **ORDER DENYING**
13  v.                                       **DEFENDANT'S MOTION TO**
                                             **DISMISS OR, IN THE**
14  AVIDAS PHARMACEUTICALS, LLC,             **ALTERNATIVE, FOR SUMMARY**
                                             **JUDGMENT**
15                           Defendant.
                                             Doc. No. 96
16
17
18
19
20        La Jolla Spa MD, Inc. ("Plaintiff") filed a Third Amended Complaint

21  ("Complaint") against Avidas Pharmaceuticals, LLC ("Defendant") for breach of

22  contract. *See* Doc. No. 87 ("Compl."). Defendant filed an Answer. *See* Doc. No. 90

23  ("Answer"). Defendant moves to dismiss Plaintiff's Complaint for lack of subject-matter

24  jurisdiction as well as for failure to state a claim under Federal Rules of Civil Procedure

25  12(b)(1) and 12(b)(6). *See* Doc. No. 96. Defendant moves in the alternative for

26  summary judgment under Federal Rule of Civil Procedure 56. *See id.* Plaintiff filed an

27  opposition to the motion, and Defendant replied. *See* Doc Nos. 97, 99. The Court found

28  the matter suitable for determination on the papers and without oral argument pursuant to

                                            1

Civil Local Rule 7.1.d.1.  *See* Doc. No. 101.  For the reasons set forth below, the Court **DENIES** Defendant's motion in its entirety.

### BACKGROUND[1]

This action arises out of a contractual relationship between the parties regarding Vitaphenol skincare products that the parties later terminated.  The central issues arise from actions after termination of the relationship.

Plaintiff and Defendant entered into two separate but related contracts on August 19, 2008, which were signed by both parties by October 14, 2008.  Compl. ¶ 2; Compl. Ex. 1, 2; Answer ¶ 2.  The first contract was the Sales and Distribution Agreement ("Sales Agreement").  Compl. ¶ 2; Compl. Ex. 1; Answer ¶ 2.  The second contract was the Know-How and Trademark License and Purchase Agreement, partially supplemented by the Modified Know-How and Trademark License and Purchase Agreement (collectively referred to as the "Know-How Agreement").  Compl. ¶ 2; Compl. Ex. 2.

## I. Sales Agreement Terms

Under the terms of the Sales Agreement, Defendant "was to pay Plaintiff for the cost of inventory sold plus a royalty of 8%."  Compl. ¶ 5.  Defendant had the power to terminate the agreement "upon sixty days prior written notice in the event it determines in its sole discretion that continuation of its efforts to promote and sell the Products is no longer in its best business interests."  Compl. Ex. 1 at 4(c).

---

[1] Regarding the motion to dismiss for lack of subject-matter jurisdiction, the Court analyzes a facial attack by accepting the allegations of the complaint as true and drawing all reasonable inferences in favor of Plaintiff.  *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (per curiam) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Because the Court construes the motion to dismiss for failure to state a claim as a motion for judgment on the pleadings, *see infra*, the Court must accept the complaint's allegations as true and the answer's allegations that contradict the complaint's allegations as false.  *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n.2 (9th Cir. 1992).

Regarding the motion for summary judgment, these material facts are taken from the parties' separate statements and responses thereto, as well as the supporting declarations and exhibits.  Where a material fact is in dispute, it will be so noted.  Particular disputed material facts that are not recited in this section may be discussed *infra*.  Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

Upon early termination, the agreement required the following:

> In the event of early termination in whole or in respect of any product, Avidas shall return all unsold inventory to YGE or unsold Inventory of terminated product(s) (SKUs) if the Agreement is terminated in respect of fewer than all products. Upon early termination of this Agreement Avidas shall immediately cease its promotional activities for the Vitaphenol Products and discontinue any use of the Vitaphenol and La Jolla Spa MD Trademarks. After any early termination of this Agreement YGB shall retain the right to the Vitaphenol Products but will remove any information bearing Avidas's Trademarks and logos from Product and Product materials.

*Id.* at 4(g). The agreement further specified payments and royalties concerning sold inventory by Defendant upon termination: "Upon termination, the provisions of this Agreement concerning payment and royalties on Inventory sold to Avidas's customers shall continue until such payments have been made." *Id.* at 4(h).

## II. Know-How Agreement Terms

Under the terms of the Know-How Agreement, Defendant was obligated to pay for the license of the "know-how" and trademark for Vitaphenol through an 8% royalty payment on all Vitaphenol products until the royalty payments totaled $1,500,000; thereafter, Defendant would then pay a 5% royalty. Compl. ¶¶ 5, 7, 13; Compl. Ex. 2 at 4(a)–(c). The Agreement allowed for Defendant to "transfer[] ownership of, or license[], the Know-How and Vitaphenol trademark," but required Defendant "to obligate the purchaser or licensee to continue paying such five percent (5%) royalty." Compl. ¶ 7; Compl. Ex. 2 at 4(b). As with the Sales Agreement, the Know-How Agreement gives Defendant the power to terminate the agreement "upon sixty days prior written notice in the event it determines in its sole discretion that continuation of its efforts to promote and sell the Products is no longer in its best business interest." Complaint Ex. 2 at 8(b).

Upon early termination, the Agreement stated that Defendant

> shall have the right to dispose of its stock of Product and shall have the right to manufacture such finished Product as may be necessary to balance out inventory or to convert raw materials, or goods in process, into finished

goods. All sales made pursuant to this section shall be subject to the payments of royalties as provided above.

*Id.* at 8(f). If Defendant provides the sixty-day notice of termination pursuant to Section 8(b) of the Agreement and has not met the $1,500,000 royalty payment threshold, Defendant "shall discontinue its use of the Vitaphenol trademark and the Know-How and all rights in respect of the Know-How and Vitaphenol trademark shall revert back to York-Goldman." *Id.* at 8(g). However, if the Defendant has met the $1,500,000 threshold, then Defendant "has no further obligation to York-Goldman unless Avidas resumes sale of the Vitaphenol Products or conveys or licenses the Know-How and, or Vitaphenol trademark to a third party in which case the obligations" regarding the transfer of ownership or license, *supra*, take effect. *Id.*

## III. Defendant's Agreement with a Third-Party

Around August 25, 2010, Defendant and SciDerma Medical, LLC ("SciDerma") entered into an Inventory and License Agreement. Compl. ¶ 11. Under the agreement, SciDerma "became the exclusive licensee of the Vitaphenol products in the United States . . . and Canada." *Id.* However, Defendant "did not pay Plaintiff pursuant to the Contract for the inventory purchased by SciDerma . . . in connection with the Inventory and License Agreement. Plaintiff was unaware of the existence and terms of the Inventory and License Agreement until Avidas disclosed it in a Court filing on December 3, 2018." *Id.* (citing Doc. No. 47-2 Ex. L.).

## IV. Termination and Breach

Defendant stopped paying royalties "around mid-2014." Compl. ¶ 12. On May 8, 2014, Defendant wrote a letter indicating that it was terminating the contracts as of July 11, 2014, because of the death of the lead person for the Vitaphenol products. *Id.* Defendant elected not to replace the lead person and cease the sale and promotion of Vitaphenol. *Id.* Plaintiff alleges Defendant has not returned any unsold inventory to Plaintiff or the unsold inventory of remaining products under Sales Agreement 4(g). Compl. ¶ 13. Rather, Defendant, SciDerma, or both allegedly "authorized destruction of

4

unsold inventory" and "some or all of the unsold inventory . . . was allegedly destroyed." *Id.* ¶ 13.

Further, Plaintiff alleges Defendants or its licensees continued or are continuing to market or sell Vitaphenol despite the May 8 letter and its obligations under the Know-How Agreement to cease use of the Know-How and Vitaphenol trademark. *Id.* ¶ 14.

## DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION

### I. Legal Standard

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss allows for dismissal of a complaint for lack of subject-matter jurisdiction. Subject-matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Further, subject-matter jurisdiction may be raised "at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A party may properly challenge standing in a Rule 12(b)(1) motion given standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A *facial* attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction, whereas a *factual* attack disputes the truth of the allegations that would otherwise confer federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial challenge to jurisdiction, the Court accepts the allegations of the complaint as true and draws all reasonable inferences in favor of Plaintiff. *See Doe*, 557 F.3d at 1073 (citing *Wolfe*, 392 F.3d at 362. In resolving a factual attack, the Court may examine extrinsic evidence "without converting the motion to dismiss into a motion for summary judgment," and the Court need not accept the allegations as true. *Safe Air for Everyone*, 373 F.3d at 1039; *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District

Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

However, a Rule 12(b)(1) motion is "not appropriate for determining jurisdiction . . . where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). When there is an entanglement, determination of the jurisdictional issue should be determined "on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077. Unless the summary judgment standard is met, the disputed jurisdictional fact "must be determined at trial by the trier of fact." *Id.*

## II. Discussion

Defendant argues Plaintiff lacks standing to bring its breach of contract claim and, therefore, the Court lacks subject-matter jurisdiction.[2] Doc. No. 96-1 at 5–14. Defendant contends that Plaintiff "is not part of" the Sales Agreement, and thus there is no contract between Plaintiff and Defendant. *Id.* at 5, 9. Defendant argues that the Sales Agreement is between York-Goldman Enterprises, Inc.—a separate entity—and Defendant, and that York-Goldman Enterprises, Inc.— not Plaintiff—owned the inventory covered by the Agreement. *Id.* at 6, 9, 10. Plaintiff responds that the contract refers to the York-Goldman Enterprises entity and Plaintiff collectively under the term "YGE." Doc. No. 97 at 8. Moreover, Plaintiff highlights that Defendant admitted in its own Answer that "it entered into two separate agreements with Plaintiff, one entitled Sales and Distribution Agreement . . . and one agreement with Plaintiff entitled Know-How and Trademark License and Purchase Agreement." Answer ¶ 2; Doc. No. 97 at 8.

---

[2] Plaintiff notes that a Rule 12(b) motion is improper given that Defendant has already filed its Answer. Plaintiff asserts the motion should be treated as a motion for judgment on the pleadings. Doc. No. 97 at 6–7. Plaintiff is correct as to a motion brought under Rule 12(b)(6), *see infra*, but not as to a motion brought under Rule 12(b)(1), which can be brought "at any time." Fed. R. Civ. P 12(h)(3).

## A. Facial Attack

The Court finds Defendant's facial attack on subject-matter jurisdiction insufficient for several reasons.

First, Plaintiff alleged in its Complaint that it entered into both the Sales Agreement and the Know-How Agreement with Defendant. Compl. ¶ 2. By alleging its status as a contracting party under specific contracts and then attaching the referenced contracts, the Court accepts the allegations as true and Plaintiff overcomes the facial challenge. *See Doe*, 557 F.3d at 1073.

Second, the Sales Agreement attached to the Complaint suggests that Plaintiff is a party to the contract because the contract was made "by and between York-Goldman Enterprises, Inc. and La Jolla Spa MD, with a place of business at 7630 Fay Ave. La[ ]Jolla, CA (hereinafter referred to as 'YGE'), and Avidas Pharmaceuticals, LLC." Compl. Ex. 1, at p. 1. Given that the Court must "assume [plaintiff's] allegations to be true and draw all reasonable inferences in his favor," *Wolfe*, 392 F.3d at 362, the court can infer for the limited purposes of this motion that the Sales Agreement refers to both York-Goldman Enterprises, Inc. and Plaintiff collectively as "YGE," given the agreement's sentence structure. Similarly, because of the collective reference to "YGE" detailed in the first paragraph of the Sales Agreement, Compl. Ex. 1, at p. 1., the collective reference to "YGE" elsewhere in the Agreement rebuts Defendant's argument that Plaintiff lacks standing because it seeks to enforce York-Goldman Enterprises, Inc.'s rights and not its own.

Third, whereas Plaintiff alleges a breach of the Contract—where "Contract" jointly refers to both agreements, Compl. ¶¶ 2, 19—Defendant only challenges this Court's subject-matter jurisdiction over the Sales Agreement, not the Know-How Agreement. Thus, dismissal of Plaintiff's entire breach of contract action would not be appropriate because Defendant fails to challenge the validity of the Know-How Agreement and Plaintiff alleges breach of "two separate, but related agreements." *Id.* ¶ 2.

Additionally, Plaintiff argues the facial attack fails based on Defendant's admission that it entered into both agreements with Plaintiff. Doc. No. 97 at 8; *see also* Answer ¶ 2. Given the fact that a facial attack focuses on the complaint, *see Safe Air for Everyone*, 373 F.3d at 1039, any admission regarding the presence of a contract by Defendant is not looked at for the purpose of this analysis.

## B. Factual Attack

The Court also finds Defendant's factual attack on subject-matter jurisdiction insufficient. In support, Defendant relies upon the Sales Agreement attached to the Complaint as well as a page from the Business Search function of the California Secretary of State's website that pertains to York-Goldman Enterprises, Inc. Doc. No 96-1 at 5–14; Doc. No. 96-3 Ex. A.[3] As previously discussed, the relevant terms of the Sales Agreement are insufficient to rebut Plaintiff's standing. *See supra*. The business record from the California Secretary of State's page for the suspended York-Goldman Enterprises, Inc. entity is simply irrelevant to whether the Court has subject-matter jurisdiction over Plaintiff. Thus, Defendant has not carried its burden to support a factual challenge to the Court's subject-matter jurisdiction.

## C. Entanglement

Moreover, Defendant's motion fails given that the issue involves an entanglement of jurisdiction and substance. Defendant starts with the premise that "[t]here is no 'contract'" and that "La[ ]Jolla is not a party to the Sales and Distribution Agreement."

---

[3] Defendant requests that the Court take judicial notice of the webpage from the California Secretary of State. Doc. No. 96-1 at 12. Plaintiff not does appear to object. "A court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotations omitted). Further, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Based on the webpage's status as a public record, the Court may take judicial notice that York-Goldman Enterprises, Inc. is suspended. *See Lee*, 250 F.3d at 689. However, because the status of York-Goldman Enterprises, Inc. is irrelevant to disposition of the motions before the Court, the Court **DENIES** Defendant's request for judicial notice. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 n.13 (9th Cir. 1998) (denying request for judicially notice of facts irrelevant to an issue).

Doc. No 96-1 at 5, 7 (emphasis omitted).  The first element for a breach of contract claim is "the existence of a contract."  *EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (Cal. 1968)).  Plaintiff's standing to assert a breach of contract claim is entangled with the merits of that claim, rendering the disposition of the matter under Rule 12(b)(1) inappropriate.

### D. Conclusion

Therefore, the Court **DENIES** Defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).  This action must be resolved either on summary judgment—discussed below—or at trial.

## MOTION FOR JUDGMENT ON THE PLEADINGS

## I. Legal Standard

"A Rule 12(b)(6) motion must be made before the responsive pleading."  *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004); *see also* Fed. R. Civ. P. 12(b) ("A motion asserting any of these [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed.").  When a party files a motion to dismiss for failure to state a claim after filing their answer, "the motion should have been treated as a motion for judgment on the pleadings, pursuant to Rule 12(c) or 12(h)(2)."  *Elvig*, 375 F.3d at 954 (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980)); *see also Hoeft*, 967 F.2d at 1301 n.2 ("The defendants moved to dismiss after answering the complaint, and we therefore construe their motions to dismiss as motions for judgment on the pleadings").

Here, Defendant answered the Complaint before filing the present motion.  *See* Answer; Doc. No. 96.  As such, Defendant should have brought a Rule 12(c) motion for judgment on the pleadings because the pleadings are closed.  *See Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) ("[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and Answer have been filed, assuming, as is the case here, that no counterclaim or cross-claim is made.").

However, this error is not procedurally fatal. Indeed, the Ninth Circuit has read Rules 12(c) and 12(h)(2) to mean that "if a motion to dismiss for failure to state a claim is made after the Answer is filed, the court can treat the motion as one for judgment on the pleadings pursuant to [Rule 12(c)]." *Aldabe*, 616 F.2d at 1093; *Hoeft*, 967 F.2d at 1301 n.2.[4] Given the lack of prejudice to the parties, Plaintiff's own argument that the motion should be treated as one under Rule 12(c), and the similar procedural posture, the Court converts the Rule 12(b)(6) motion to a Rule 12(c) motion. *See Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-00164-HSG, 2016 WL 520985, at *4 (N.D. Cal. Feb. 10, 2016); *Tautges v. Glob. Datacenter Mgmt., Inc.*, No. 09CV785 JLS (BLM), 2009 WL 10671734, at *1 n.2 (S.D. Cal. Nov. 13, 2009); Doc. No. 97 at 6–7.

In assessing a Rule 12(c) motion, the Court accepts the complaint's allegations *as true*, and the Court treats the answer's allegations that contradict the complaint's allegations *as false*. *Hoeft*, 967 F.2d at 1301 n.2. "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10–04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)).

---

[4] Under Rule 12(d), "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Given that the parties rely upon the pleadings and that the Court does not rely on any extrinsic evidence outside the pleadings, the Court does not treat the Defendant's failure to state a claim defense as one for summary judgment. *See Lee*, 250 F.3d at 688 ("[A] court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment."); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996) (noting that the court must also *rely* on the extraneous materials to convert the motion into a motion for summary judgment).

3:17-CV-01124-MMA-WVG

Noting the similarities between a Rule 12(c) and a Rule 12(b)(6) motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In determining the propriety of a dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## II. Discussion

Defendant argues that Plaintiff fails to state a claim for breach of contract.[5] A breach of contract claim under California law requires "(1) the existence of a contract, (2)

---

[5] Defendant focuses exclusively on the Sales Agreement and does not mention the Know-How Agreement. Defendant only references the Know-How Agreement with respect to its alternate request for summary judgment. *See* Doc. No. 96-1 at 20.

Given the existence of two separate agreements and the joint reference to both in the Complaint under the term "Contract," Compl. ¶ 2, the Court addresses whether Plaintiff states a claim for breaches of both agreements. The separateness of the two contracts is underscored by Plaintiff's Motion to Leave to File a Third Amended Complaint and the Court's subsequent Order. *See* Doc. Nos. 77, 86. In its motion, Plaintiff stated that "it has learned that [Defendant] has further breached the contract at issue in this case by not paying for inventory [Defendant] sold and destroying some or all of the unsold

3:17-CV-01124-MMA-WVG

plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff." *EPIS, Inc.*, 156 F. Supp. 2d at 1124 (citing *Reichert*, 68 Cal. 2d at 830).

## A. Existence of Contract

Referencing its previous argument on subject-matter jurisdiction, *see supra*, Defendant primarily argues that the parties did not enter into a contract and thus, Plaintiff has failed to state a valid breach of contract claim. Doc. No. 96-1 at 14. Plaintiff responds with its same objections to the subject-matter jurisdiction challenge, namely, that there is a contract between Plaintiff and Defendant. Plaintiff further argues that any contractual ambiguities should be resolved in the nonmoving party's favor. Doc. No. 97 at 9.

Taking Plaintiff's allegations as true, as the Court must, Plaintiff and Defendant entered into two Contracts, both attached to the Complaint. Compl. ¶ 2; *see also Frontier Contracting, Inc. v. Allen Eng'g Contractor, Inc.*, No. CV F 11-1590 LJO DLB, 2012 WL 1601659, at *4 (E.D. Cal. May 7, 2012) ("A written contract may be pleaded either by its terms-set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference-or by its legal effect." (quoting *McKell v. Washington Mutual, Inc.*, 49 Cal. Rptr. 3d 227, 253 (2006))). Further, the collective reference to Plaintiff and the suspended York-Goldman Enterprises, Inc. entity as "YGE," Compl. Ex. 1, at p. 1, must be viewed in Plaintiff's favor. *See Fleming*, 581 F.3d at 925 ("We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."); *see also Lloyd v. Navy Fed. Credit Union*, No. 17-CV-1280-BAS-RBB, 2018 WL 1757609, at *7 (S.D. Cal. Apr. 12, 2018) ("[A] breach of contract claim may not be dismissed for failure to state a claim if the contract's terms are ambiguous").

---

inventory after termination in violation of the Sales Agreement." Doc. No. 77-1 at 4. Thus, the motion practice in this case appears to further evidence the separateness of the contracts.

Not only does Plaintiff allege the existence of two contracts, but Defendant admits it entered into the two contracts at issue with Plaintiff. *Compare* Compl. ¶ 2 (noting that Defendant entered into "two separate, but related agreements" with Plaintiff), *with* Answer ¶ 2 ("Avidas further admits it entered into two separate agreements with Plaintiff, one entitled Sales and Distribution Agreement . . . and one agreement with Plaintiff entitled Know-How and Trademark License and Purchase Agreement."). The Court deems Defendant's acknowledgement of the two agreements as a judicial admission because "[j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (quoting *In re Fordson Eng'g Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)). Such admissions are "conclusively binding on the party who made them." *Id.* (noting that a statement in a complaint or answer is a judicial admission). Thus, Defendant's admission is determinative, and any argument to the contrary is not well-taken.

Moreover, as noted above, *see supra* note 5, Defendant's motion only challenges the existence of the Sales Agreement and is silent as to the existence of the Know-How Agreement—which Plaintiff alleges it entered into with Defendant and Defendant admits. Compl. ¶ 2; Answer ¶ 2.

### B. Additional Elements

Defendant vaguely claims that "the other elements [of Plaintiff's breach of contract claim] are missing." Doc. No. 96-1 at 14. Plaintiff, also without elaboration, responds that Defendant is wrong. Doc. No. 97 at 9. The Court agrees with Plaintiff.

First, Plaintiff alleges that it "sold and transferred all of its inventory to Avidas" under the Sales Agreement in exchange for Defendant paying the cost of the inventory plus an 8% royalty. Compl. ¶ 5. Thus, Plaintiff provides a sufficient plain statement of facts without relying on a mere "formalistic recitation of the element[]" that Plaintiff performed under the Sales Agreement. *Bell Atl. Corp.*, 550 U.S. at 555. It has shown that it performed by alleging *how* it performed.

As to the Know-How Agreement, Plaintiff alleges that Mitchel Goldman—who is a signatory under Plaintiff in the Agreement—fully complied with the requirements to "cooperate with Avidas as reasonably requested to provide Avidas with all relevant information contemplated by this Agreement . . . [and] to facilitate Avidas's development of its business utilizing the Know-How and Vitaphenol trademark." Compl. Ex. 2 at 6(a); Compl. ¶¶ 8–10. Thus, Plaintiff has shown performance by alleging its compliance with the Know-How Agreement.

Second, Plaintiff pleads breach of the Sales Agreement by alleging that Defendant did not pay for the cost of inventory sold when the Agreement required Defendant to pay for the cost of inventory sold to Defendant's consumers plus the 8% royalty on the profit of the inventory's sales. Compl. ¶ 5. Further, Plaintiff alleges Defendant was obligated to return unsold inventory if the contract was terminated. *Id.* ¶ 13. Additionally, Plaintiff further alleges unpaid royalties under the Sales Agreement. Compl. ¶¶ 12, 15, 19.

As to the Know-How Agreement, Plaintiff alleges that Defendant was obligated to pay for the ownership of the "know-how" and Vitaphenol with $1,500,000 from an 8% royalty on Vitaphenol profits. *Id.* ¶ 6. After payment of $1,500,000 in royalties, Defendant would then pay a 5% royalty. *Id.* ¶¶ 6–7. Plaintiff further alleges that the Agreement required Defendant—"[i]n the event Avidas subsequently transfers ownership of, or licenses, the Know-How and Vitaphenol trademark"—to require the third-party purchaser or licensee to continue payment of the 5% royalty. *Id.* ¶ 7; Compl. Ex. 2 at 4(b). Defendant entered into a contract with SciDerma in August 2010 where SciDerma "became the exclusive licensee of the Vitaphenol products in the United States . . . and Canada"; however, Plaintiff received no payments under Defendant's contract with SciDerma. Compl. ¶ 11. Moreover, Plaintiff was unaware of the Defendant-SciDerma contract until Defendant's court filing in December 2018. *Id.* As mentioned with the Sales Agreement, Plaintiff alleges Defendant did not pay for the cost of the inventory and stopped paying royalties in mid-2014. *Id.* ¶¶ 12, 15, 19. Plaintiff has sufficiently pleaded breach of both contracts.

14

Third, Defendant specifically argues that Plaintiff has not proved damages because the rights of the contract "are rights of YGE not La[ ]Jolla." Doc. No. 96-1 at 14. However, Plaintiff alleges that Defendant has continued to market or sell Vitaphenol, which violates the terms of the contract and has deprived Plaintiff of its royalties. Compl. ¶¶ 14, 15, 20. By stating the results of the breach in terms of lost royalties or unreturned inventory, Plaintiff has pleaded sufficient facts to show that it has suffered damages rather than mere boilerplate of suffering damages in vague, conclusory terms.

### C. Conclusion

In sum, the Court **DENIES** Defendant's motion for judgment on the pleadings.

**MOTION FOR SUMMARY JUDGMENT**

## I. Legal Standard

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Id.* at 323; *see also Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000) ("A moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence."). The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

If the moving party meets its initial burden, the burden then shifts to the nonmoving party to present specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). When a party fails to properly address another party's assertions of fact, a court may consider these facts as undisputed. Fed. R. Civ. P. 56(e)(2). If the motion and supporting materials, including facts considered undisputed, show the movant is entitled to summary judgment, the court may grant the motion. Fed. R. Civ. P. 56(e)(3). Summary judgment is not appropriate, however, if the nonmoving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in his or her favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*; *see also Demers v. Austin*, 746 F.3d 402, 409 (9th Cir. 2014). Accordingly, "[s]ummary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the [nonmoving party] is entitled to a favorable verdict." *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).

## II. Evidentiary Objections

As an initial matter, the parties object to various items of evidence. The Court considers each party's objections in turn.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(c). However, courts will consider evidence with *content* that would be admissible at trial even if the *form* of the evidence would be inadmissible. *See Celotex Corp.*, 477 U.S. at 324; *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) (admitting a diary in considering summary judgment where its contents were within the author's personal knowledge and could be admitted in several ways at trial despite a hearsay objection). Authentication is a "condition precedent to admissibility." *Orr*, 285 F.3d at 773. Documents authenticated through personal knowledge must be

"attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure 56(c)] *and* the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 774 (emphasis added) (quotation omitted). Foundation does not require personal knowledge where it can be based on the methods permitted by Federal Rules of Evidence 901(b) or 902. *Id.* at 774. Furthermore, "'objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself' and unnecessary to consider here." *Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)).

### A. Plaintiff's Objections[6]

First, Plaintiff objects to sixty-five documents produced in discovery by Defendants—identified with bates stamps A_001001 and A_001003 to A_001066— contained within Exhibit J to the Chovanes Declaration in Support of Defendant's Motion of Summary Judgment. Doc. No. 97-2 at 2; *see also* Doc. No. 96-5 Ex. J. The documents appear to be business record accounting summaries pertaining to product sales. Doc. No. 97-2 at 2. Plaintiff asserts that the offered evidence cannot be introduced in an admissible form at trial pursuant to Rule 56(c)(2). Plaintiff also argues the documents lack foundation because they have not been authenticated by someone with personal knowledge and instead have been authenticated by Ms. Chovenes, who neither created nor originally received the documents. *Id.* Further, Plaintiff objects to handwriting on the documents on hearsay grounds. *Id.*

The sixty-five documents appear to be Defendant's records pertaining to its relationship with Plaintiff, including a total summary chart as well as monthly records

---

[6] The Court notes that Defendant fails to specifically address Plaintiff's evidentiary objections. Irrespective of Defendant's lack of response, the Court has an affirmative obligation to determine the admissibility and propriety of the evidence before it.

with attached checks and some additional handwriting. Advidas's records are authenticated by a declaration from its attorney, who fails to convey the necessary "personal knowledge and competence" to testify to the foundation of the produced discovery. *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990); *Clark v. Cty. of Tulare*, 755 F. Supp. 2d 1075, 1083 (E.D. Cal. 2010) ("An attorney may submit a declaration as evidence to a motion for summary judgment. However, the declaration must be made upon personal knowledge and sets forth fact that would admissible in evidence if the attorney were testifying at trial"). The total summary and monthly records do not indicate who created and maintained the documents or what the charts purport to show. *See Clark*, 755 F. Supp. 2d at 1084 (holding documents produced inadmissible when produced in discovery that had foundation only merely established by attorney declaration).

Where a declaration is used to support a motion for summary judgment, the declarant generally "must be a person through whom the exhibits could be admitted into evidence." *Orr*, 285 F.3d at 774 (citing *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)). *But see Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (deeming discovery documents offered by the *party-opponent* as authentic); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006) (deeming authentication satisfied by judicial admission); 31 Federal Practice & Procedure: Evidence § 7105, at 39 (same). Defense counsel does not appear to have the requisite personal knowledge required under Rule 56(c)(4) to authenticate the documents. Although the rule requires that the declaration merely "set out *facts* that *would be* admissible in evidence," the rule also requires that the declarant have personal knowledge. Fed. R. Civ P. 56(c)(4) (emphasis added). Further, because the records were produced by Avidas—not its party opponent—and were not on company letterhead or otherwise coupled with similar identifying information, these facts are distinguishable from those in *Maljack*. *See Maljack Prods., Inc.*, 81 F.3d at 889 n.12 (deeming documents authenticated when offered by the party opponent, were on

letterhead of the producing party, and their authenticity was not questioned).  Thus, even if the facts of the summaries would be admissible, Defendant lacks proper personal knowledge for the records.

Additionally, no information is provided as to who made the handwritten annotations on several of the monthly records.  However, the checks produced on several of the pages are admissible for summary judgment purposes because the contents of the checks appear to be "sufficiently genuine."  *Orr*, 285 F.3d at 778 n.24; see also Fed. R. Evid.  901(b)(4) (stating that authentication is satisfied by "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances").

As to the objection on hearsay grounds, the objection fails for two reasons.  First, overall summary and monthly summaries appear to be business records kept in the regular course of business.  *See* Fed. R. Evid. 803(6).  Second, even if the overall summary and monthly summaries are in an inadmissible hearsay form, they contain admissible content and, thus, may be considered for the purpose of summary judgment.  *See Fraser*, 342 F.3d at 1037.  For example, the records could be admitted perhaps through refreshing a witness's recollection, evidence of a recorded recollection, or direct testimony.  *See, e.g.*, *id.*

Therefore, to the extent the Court relies on the information, the Court **SUSTAINS** Plaintiff's objections to the summary chart, monthly records, and handwritten annotations but **OVERRULES** Plaintiff's objections to the checks.

Second, Plaintiff objects to a letter from the Defendant's President to Dianne York dated June 10, 2014, contained within Exhibit P to the Chovanes Declaration in Support of Defendant's Motion of Summary Judgment.  Doc. No. 97-2 at 3; *see also* Doc. No. 96-5 Ex. P.  Plaintiff again argues that the letter lacks foundation and proper authentication, and contains inadmissible hearsay.  Doc. No. 97-2 at 3.

Unlike the above authentication issues, the letter does not raise the same concerns because—even though Defense counsel does not have personal knowledge sufficient to

authenticate the document—personal knowledge of the declarant is not necessary where evidence is self-authenticating.  *See* Fed. R. Evid. 902.  Here, the letter from Avidas's President is on Avidas letterhead with its logo that falls within the trade inscription self-authentication category because the logo indicates "origin."  *Id.* at 902(7) ("An inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control."); *see also Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935 (9th Cir. 2002), *opinion amended on denial of reh'g*, 313 F.3d 1093 (9th Cir. 2002) (finding a news clip and its identifying broadcast slate properly self-authenticated because the "slate itself provides prima facie evidence of its own authenticity").

As to the hearsay grounds, Plaintiff's objection again fails regardless of whether the letter itself is admissible.  Even if the form of the letter constitutes inadmissible hearsay, which is debatable because it is arguably a business record, the content is admissible because it appears to contain information within the personal knowledge of an agent of Defendant.  *Fraser*, 342 F.3d at 1036–37.

Therefore, to the extent the Court relies on the information, the Court **OVERRULES** Plaintiff's objections to the letter.

Third, Plaintiff objects to two accounting summaries for Vitaphenol products contained within Exhibit Q to the Chovanes Declaration in Support of Defendant's Motion of Summary Judgment.  Doc. No. 97-2 at 4; *see also* Doc. No. 96-5 Ex. Q. Plaintiff argues that the documents lack foundation and authentication, and are inadmissible double hearsay.  Doc. No. 97-2 at 4.

These accounting summaries are of the same variety from the first objection.  *See supra*.  Given the similarities, the same analysis follows for both the objections on authentication and hearsay grounds.   Therefore, to the extent the Court relies on the information, the Court **SUSTAINS** Plaintiff's objection to the two accounting summaries.

Fourth, Plaintiff objects to e-mails between Joe Kuchta and Defendant's President contained within Exhibit T to the Chovanes Declaration in Support of Defendant's Motion of Summary Judgment. Doc. No. 97-2 at 5; *see also* Doc. No. 96-5 Ex. T. Plaintiff asserts the same objections as the above objections: authentication and hearsay—hearsay pertaining to the e-mails by Mr. Kuchta. Doc. No. 97-2 at 5.

The e-mails provide several indications of reliability and genuineness as to pass muster under authentication. Rather than the e-mails having generic addresses from publicly available e-mail providers, the addresses here appear to be issued from an employer and contain the employee's name in the address. *See Jimena v. UBS AG Bank*, Inc., No. 1:07-CV-00367 OWW, 2011 WL 2551413, at *6 (E.D. Cal. June 27, 2011), *aff'd sub nom. Jimena v. Standish*, 504 F. App'x 632 (9th Cir. 2013). Moreover, the several e-mails cover an identifiable matter common to both participants in the conversation and refer to nonpublic information regarding their agreement and termination of sales of Vitaphenol. *See Jimena*, 2011 WL 2551413, at *6–7 (holding e-mails were not admissible where the e-mails in question were not work e-mails provided by an employer, included the employee's name in the address, or indicated substantive and unique information pertaining to the subject matter before the court). The totality of the circumstances surrounding the emails indicate sufficient distinctive characteristics to sustain authentication under Rule 901(b)(4). Therefore, the Court **OVERRULES** Plaintiff's objection to the e-mail correspondence.

### B. Defendant's Objections

Defendant generally argues that Plaintiff's evidence is "attorney argument and expert declarations—inadmissible hearsay." Doc. No. 99 at 2.

As to Defendant's objection regarding "attorney argument," the objection is improper given it is duplicative of the summary judgment standard and thus redundant. *See Holt*, 370 F. Supp. 3d at 1164. Furthermore, Defendant's objections are "boilerplate and devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded." *Ferguson v. United States*, No.

15CV1253 JM (MDD), 2018 WL 3570283, at *2 (S.D. Cal. July 25, 2018) (quoting *United States v. HVI Cat Canyon, Inc.*, 213 F. Supp. 3d 1249, 1257 (C.D. Cal. 2016)). Therefore, the Court **OVERRULES** Defendant's general objection to Plaintiff's evidence.

As to Defendant's objection regarding "expert declarations," without more information, the Court can only infer Defendant refers to Robert Taylor's expert witness report submitted by Plaintiff. *See* Doc. No 97-4. Given that Taylor's expert report is attached to a declaration signed by Taylor, and that the content of his expert opinion would be admissible as an opinion within his own personal knowledge, any issue as to whether the form of the report is admissible is immaterial at the summary judgment stage. *See Fraser*, 342 F.3d at 1036–37. Moreover, Defendant does not object to Taylor's status as an expert witness, and the Court otherwise finds Defendant's objection to be mere boilerplate. *See Ferguson*, 2018 WL 3570283, at *2. Therefore, the Court **OVERRULES** Defendant's objection to Plaintiff's "expert declaration."

## III. Discussion

As mentioned above, to establish liability for breach of contract, a plaintiff must prove "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff." *EPIS, Inc.*, 156 F. Supp. 2d at 1124 (citing *Reichert*, 68 Cal. 2d at 830). The Court considers whether a genuine issue of material fact precludes summary judgment by examining each element in turn.

### A. Existence of Contract

Defendant once again argues that there is no contract between the parties. Doc. No. 96-1 at 23. Defendant does not clearly differentiate between the Sales Agreement and the Know-How Agreement.[7] Plaintiff again argues it is a party to the Sales

---

[7] As noted above, Plaintiff's allegations regarding the two contracts—albeit two related contracts—require the Court to address each breach of contract claim on its own merits.

Agreement as confirmed by the face of the Agreement itself. Plaintiff also highlights that Defendant fails to address whether the Know-How Agreement is a valid contract between the parties. Doc. No. 97 at 11.

Defendant is not entitled to judgment in its favor because it fails to demonstrate as a matter of law that no contract existed. To carry its burden, Defendant offers the Sales Agreement itself and emphasizes that the contract is between it and York-Goldman Enterprises, Inc. Doc. No. 96-1 at 10. It points to the specific language in the Agreement that "YGE has inventory of some of the products . . . and Avidas desires to purchase such Inventory" and that

> "YGE[] has the complete authority to enter into this Agreement and its affiliated company La Jolla Spa MD, Inc. has the authority to negotiate and execute the agreement conveying the Vitaphenol trademark and licensing the use of the La Jolla Spa MD trademark on packaging and/or promotion of the Vitaphenol Products."

Doc. No. 96-1 at 6; Compl. Ex. 1 at p. 1. Defendant argues this language underscores that Plaintiff is not party to the Sales Agreement and Plaintiff was not the owner of the Agreement's inventory. Doc. No. 96-1 at 6–7. However, Defendant overlooks key aspects of the same evidence upon which it relies. The Sales Agreement in the first paragraph appears to define the term "YGE" to encompass more than only York-Goldman Enterprises, Inc. Again, the opening paragraph states:

> THIS SALES AND DISTIBUTION AGREEMENT is made and entered into on this 19th[] day of August 2008 by and between York-Goldman Enterprises, Inc. and La Jolla Spa MD, with a place of business at 7630 Fay Ave. La[ ]Jolla, CA (*hereinafter referred to as "YGE"*), and Avidas Pharmaceuticals, LLC, a limited liability Corporation with a place of business at 196 West Ashland Street, Doylestown, PA 18901, USA (hereinafter referred to as "Avidas")."

Compl. Ex. 1 at p. 1 (emphasis added). Given this definitional language coupled with the Court's duty to view the evidence in the light most favorable to the nonmoving party,

*T.W. Elec. Serv., Inc*, 809 F.2d at 630–31, the Court cannot find that Defendant has carried its initial burden. Moreover, Defendant has not provided evidence outside the pleadings to meet its burden. Thus, given that a "trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied" on the language of the contract alone. *Id.* (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 287–88 (1968)).

At best, Defendant could argue that the Sales Agreement is ambiguous; however, this argument still precludes summary judgment. "Whether a contract is ambiguous is a question of law." *U.S. v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1343–33 (9th Cir. 1981). "[A]mbiguity in a contract raises a question of fact precluding summary judgment" because it "raises a question of intent." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Allstate Ins. Co.*, 29 F. Supp. 2d 1129, 1139 (C.D. Cal. 1998) (citing *National Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983)); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 701 F.2d at 97. Here, the use of the defined term "YGE" is ambiguous when applied in specific sections of the Sales Agreement. *See SDR Capital Mgmt., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 320 F. Supp. 2d 1043, 1046 (S.D. Cal. 2004) (citing *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (Cal. 2003)) ("A contract provision is considered ambiguous when the provision is susceptible to more than one reasonable interpretation."). For example, although the first paragraph appears to define York-Goldman Enterprises, Inc. and Plaintiff collectively as "YGE," there are several times when the Agreement refers to both YGE and Plaintiff in the same sentence. *See*, *e.g.*, Compl. Ex. 1 at 1(a), 1(d). This phrasing opens the contract to more than one reasonable interpretation because—depending on the parties' intent—Plaintiff is either a party or not a party under the Agreement. This question of fact forecloses summary judgment.

However, even more problematic is Defendant's judicial admission in its own Answer as well as in its other representations. Elsewhere in the record, Defendant plainly "admits it entered into two separate agreements with Plaintiff, one entitled Sales and

Distribution Agreement . . . and one agreement with Plaintiff entitled Know-How and Trademark License and Purchase Agreement." Answer ¶ 2. As discussed *supra*, the Court deems the admission as a formal admission with "the effect of withdrawing a fact from issue." *Am. Title Ins. Co.*, 861 F.2d at 226 (quoting *In re Fordson Eng'g Corp.*, 25 B.R. at 509). Plaintiff notes Defendant's apparent contradiction in its opposition to the instant motion. Doc. No. 97 at 5. Plaintiff also highlights two other instances where Defendant admits entering into the Sales Agreement with Plaintiff. First, Defendant's President Margaret Gardner testified during deposition that Defendant entered into the Sales Agreement with Plaintiff. Doc. No. 97-6 at 35:9–15. Second, Defendant made the same claim in its Opposition to Plaintiff's Motion to Leave to File a Third Amended Complaint. *See* Doc. No. 47 at 4. Defendant fails to address its previous representations, to which the Court will hold Defendant accountable.

Therefore, the Court determines that Defendant has failed to demonstrate that no reasonable jury would find the existence of a Sales Agreement between Defendant and Plaintiff. In light of Defendant's judicial admission in its Answer, as well as the ambiguous nature of the contract, a reasonable jury could conclude that there was a Sales Agreement between the parties.

As to the Know-How Agreement, Defendant does not contest that it entered into the Agreement with Plaintiff. Accordingly, the Court finds that Defendant has not carried its burden of summary judgment on this element as to the Know-How Agreement.

**B. Performance or Excuse**

Defendant argues this element could not have been satisfied with respect to the Sales Agreement given the lack of a contract between Plaintiff and Defendant. Doc. No. 96-1 at 23. However, Defendant provides the termination notice sent from Defendant to Plaintiff, which suggests at minimum some performance has been rendered pursuant to an unspecified "Agreement." Furthermore, because of the relatedness in terms and subject-matter of the two agreements, there is a degree of uncertainty as to what "Agreement" the termination notice refers. Viewing the evidence in the light most

3:17-CV-01124-MMA-WVG

favorable to the nonmoving party, the Court finds there is a disputed material fact as to the element of performance of the terms of the Sales Agreement.

As to the Know-How Agreement, Defendant fails to "inform[] the court of the basis for the motion" or "demonstrate the absence of a triable issue of material fact" as to performance. *Celotex*, 477 U.S. at 323–24. As such, Defendant has not met its burden under Rule 56 as to the performance or excuse element of the Know-How Agreement.

### C. Breach

Defendant argues that no reasonable jury could find a breach of the agreements occurred because it has not been selling Vitaphenol products or licensing rights. Doc. No. 96-1 at 19, 23. Plaintiff argues that a genuine issue of fact exists regarding whether Defendant (1) failed to pay Plaintiff the cost of inventory and royalties for Defendant's sales to SciDerma in August 2010 *before* the contracted terminated, (2) failed to return unsold inventory under the Sales Agreement upon termination, and (3) failed to pay Plaintiff the cost of inventory and royalties for Defendant's sales *after* the contracted terminated. Doc. No. 97 at 12–14; Complaint ¶¶ 12–15, 17.[8]

As to the cost of inventory and royalties before termination, Defendant provides miscellaneous accounting summaries and checks contained within Exhibit J to the Chovanes Declaration in Support of Defendant's Motion of Summary Judgment. Doc. No. 96-1 at 18, 19, 20, 24, 25, 26; Doc. No. 96-5 Ex. J. As mentioned *supra*, the financial summaries in Defendant's Exhibit J—proffered to show sufficient payment from Defendant—are inadmissible for the purposes of summary judgment. Defendant

---

[8] The Court again notes that both parties are unclear when referring to the different contract breach elements that correspond to each particular contract. As to the breach element, both parties do not cleanly differentiate between the two agreements—an issue compounded by the fact that both agreements have similar, overlapping sections. Given that the moving party carries the burden and all reasonable inferences are viewed in nonmoving party's benefit, any imprecision on the part of the moving party in informing the court of the basis for the motion and clearly tying its argument to the cause of action before the court acts to the detriment of the moving party in meeting its burden. *See Celotex*, 477 U.S. at 323–24; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31.

also attaches copies of the checks to the summaries to support its claim that it paid royalties for SciDerma's sales under the sublicense agreement. These checks are sufficient to show that Defendant made payments to Plaintiff under both agreements because they tend to suggest payment during the 2010 through 2014 period.

To support its assertion that Defendant did not make full payments before termination, Plaintiff supplies the expert report of Robert Taylor. *See* Doc. No. 97-7. Taylor's financial accounting details that Defendant has not paid Plaintiff royalties and product cost associated with the Vitaphenol inventory sold to SciDerma. Doc. No 97-4 at 11, 14. Based on the financial accounting and expert opinion of Taylor, there is a genuine dispute such that a reasonable jury could find in Plaintiff's favor regarding pre-termination payments.

As to the unreturned inventory, it is undisputed that Defendant did not return the remaining unsold Vitaphenol inventory. Compl. ¶ 13; Answer ¶ 12–13; Doc. No. 97-3 at 12–13 (admitting the retention of the unsold Vitaphenol products given Defendant untimely served its responses for requests for admission in light of the Magistrate Judge's scheduling order for discovery and Rule 36(a)(6)); Doc. No. 97-6 at 262:8–264:11 (deposition of Defendant). However, the parties dispute whether return of the unsold inventory was required under the agreements. In admitting it did not return the inventory, Defendant—in its Answer—focuses on language in the Know-How Agreement:

> In the event of early termination, *Avidas shall have the right to dispose of its stock of Product and shall have the right to manufacture such finished Product as may be necessary to balance out inventory or to convert raw materials, or goods in process, into finished goods.* All sales made pursuant to this section shall be subject to the payments of royalties as provided above.

Compl. Ex. 2 at 8(f) (emphasis added); Answer ¶ 12–13. However, Plaintiff emphasizes language in the Sales Agreement:

> *In the event of early termination in whole or in respect of any product, Avidas shall return all unsold inventory to YGE* or unsold Inventory of

27

terminated product(s) (SKUs) if the Agreement is terminated in respect of fewer than all products. Upon early termination of this Agreement Avidas shall immediately cease its promotional activities for the Vitaphenol Products and discontinue any use of the Vitaphenol and La Jolla Spa MD Trademarks. After any early termination of this Agreement YGE shall retain the right to the Vitaphenol Products but will remove any information bearing Avidas's Trademarks and logos from Product and Product materials.

Compl. Ex. 1 at 4(g) (emphasis added); Compl. ¶ 13. Both parties fail to address one another's emphasis on the different contract provisions that appear to govern the same question: what happens to the inventory when the contract is terminated early? The Know-How Agreement's terms appear to allow Defendant to dispose of the Vitaphenol products—subject to the royalty payments. The Sales Agreement's terms require returning unsold inventory. The Court finds an ambiguity in interpreting Defendant's obligation given the differing requirements provided in the Sales Agreement and Know-How Agreement. The ambiguity presents an issue of fact foreclosing summary judgment. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 701 F.2d at 97.

As to cost of inventory and royalties after the contract terminated in July 2014, Defendant argues it made no further sales and has paid all royalties—appearing to rely on the various accounting documents in Exhibit J. Doc. No. 96-1 at 19, 20; Doc. No. 96-5 Ex. J. Plaintiff responds that there is a genuine issue of material fact. The parties reference ten bottles and cartons of the Vitaphenol product purchased from the Internet by Plaintiff, with Plaintiff claiming these are proof of further sales by Defendant. Doc. No. 96-1 at 23–24; Doc No. 97 at 14. Defendant claims the ten units all have the Plaintiff's "markings and information." Doc. No. 96-1 at 24. Defendant claims this proves the units are from its inventory sold before November 15, 2012, and asserts that full royalties were paid. *Id.* Plaintiff correctly notes that Defendant fails to provide evidence or facts regarding the bottles. Doc. No. 97 at 14. The arguments of counsel are insufficient to carry Defendant's burden to show the absence of a dispute of material fact as to whether there were sales of Vitaphenol after contract termination. *See* Fed. R. Civ.

P. 56(c)(1).  Additionally, Plaintiff produces deposition testimony from EPI Printers—which produced Vitaphenol packaging at SciDerma's request and then shipped the orders to SciDerma customers—that illustrates EPI Printers last shipped a specific Vitaphenol product in June 2016.  Doc. No 97-12 at 37:12–38:3.  Thus, as with cost of inventory and royalties before termination, a genuine dispute of material fact exists as to whether Defendant satisfied its payment obligations after termination and whether there were Vitaphenol sales after contract termination.

### D. Damages

Defendant argues Plaintiff is not entitled to damages as a matter of law.  *See* Doc. No. 91-1 at 23, 22.  Plaintiff counters that because of Defendant's breaches, there are ascertainable damages, which a jury must determine at trial.  Doc. No. 97 at 12–14.  Defendant relies on financial summaries that the Court has declared inadmissible for examination in this motion.  Moreover, Plaintiff supplies an expert report indicating that Defendant has not made all required inventory and royalty payments owed to Plaintiff and provides estimates for calculated damages resulting from the alleged breach.  Doc. No. 97-4 at 7, 14–15.  Therefore, Defendant has not met its initial burden to show an absence of disputed material facts.  Even if it had, Plaintiff's estimated damages constitute sufficient evidence of a factual dispute when viewed in the light most favorable to Plaintiff.

### E. Conclusion

In sum, Defendant has not met its burden of demonstrating the absence of a genuine dispute of material fact as to Plaintiff's breach of contract claim.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

3:17-CV-01124-MMA-WVG

Based on the foregoing, the Court finds that Defendant is not entitled to dismissal of Plaintiff's claims or summary judgment in its favor. Accordingly, the Court **DENIES** Defendant's motion in its entirety. The Court will issue a pretrial scheduling order forthwith.

**IT IS SO ORDERED**.

Dated: October 4, 2019

Hon. Michael M. Anello
United States District Judge

3:17-CV-01124-MMA-WVG